APPENDIX

TAB A

**EMERGENCY RELIEF REQUESTED**

**No.** _____

---

**IN THE COURT OF
CRIMINAL APPEALS, TEXAS**

---

**IN RE JASON CHILDRESS,**

**PETITIONER**

---

**PETITON FOR WRIT OF HABEAS CORPUS**

---

**On Petition For A Writ Of Habeas Corpus
To The Texas Court of Criminal Appeals From Cause No. 2014CR1548
From The Comal County Court At Law #2 of Comal County, Texas
(Charles A. Stephens II)**

## IDENTITY OF PARTIES

Petitioner, Jason Childress, certifies that the following is a complete list of the names and addresses of all parties.

Petitioner:                                              Jason Childress

Sui Juris in Trial Court,

9141 Gristmill Ct.
Fort Worth, Texas

Respondent:                                             Charles A. Stephens II
County Court At Law #2
Comal County Courthouse Annex
150 N. Seguin, Ste. 301
New Braunfels, TX 78130

Interested Party:                                       Abigail Whitaker
Comal County District Attorney's Office
Comal County Courthouse Annex
150 N. Seguin Ave. Ste. 307
New Braunfels, Texas 78130

## TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES.............................................................................................. ii

TABLE OF CONTENTS............................................................................................. iii

INDEX OF AUTHORITIES........................................................................................ iv

STATEMENT OF THE CASE..................................................................................... ix

STATEMENT OF JURISDICTION........................................................................... ix

ISSUES PRESENTED................................................................................................ ix

STATEMENT OF FACTS........................................................................................... 1

ARGUMENT................................................................................................................ 2

      HABEAS RELIEF IS PROPER........................................................................ 2

I.  POWER TO RESTRAIN....................................................................... 2

II.  MANNER OF RESTRAINT.................................................................. 3

III. ISSUES THAT BAR PROSECUTION AND CONVICTION............... 9

     A.  Sec. 38.02 IS INAPPLICABLE UNDER THE CIRCUMSTANCES......... 9

     B.  WITNESSES DISQUALIFIED........................................................ 12

REQUEST FOR RELIEF........................................................................................... 14

VERIFICATION........................................................................................................ 15

CERTIFICATE OF SERVICE................................................................................... 16

APPENDICES ........................................................................................................... 17

(Appendix is separate, incorporated herein in its entirety for all purposes, and is being used as an Appendix for this Petition for Writ of Hebeas Corpus and Petition for Writ of Mandamus)

# INDEX OF AUTHORITIES

## Legal Maxims & Doctrines

Doctrine of Acquiescence.................................................................................. 3

Ejusdem Generis.............................................................................................. 11

Expressio unius est exclusio alterius................................................................ 11

Jus ex injuria non oritur.................................................................................. 14

Lex citius tolerare vult privatum damnum quam publicum malum............................. 14

Nemo punitur pro alieno delicto........................................................................ 7, 14

Noscitur a Sociis............................................................................................. 11

Nullus commodum capere potest de injuri su propri............................................... 8, 14

Ubicunque est injuria, ibi damnum sequitur......................................................... 8, 14

Qui non negat, fatetur...................................................................................... 3

## Legal Encyclopedia

Corpus Juris Secundum,
     2d Vol. 7 section 25................................................................................ 13

## Federal Cases

Armstrong v. Manzo,
     380 U.S. 545 (1965).............................................................................. 8

Central Pacific Railway Co. v. Alameda County,
     284 U.S. 463 (1932).............................................................................. 4

Conley v. Gibson,
     355 U.S. 41 at 48 (1957)........................................................................ 13, 14

Davis v. Wechler,
     263 U.S. 22......................................................................................... 13

Georgia v. South Carolina,

497 U.S. 376 (1990)............................................................................................ 4

Goldsmith v. U. S.,
  C.C.A.N.Y., 42 F.2d 133............................................................................ 11

Grannis v. Ordean,
  234 U.S. 385, 394......................................................................................... 9

Haines v Kerner,
  404 U.S. 519 (1972)..................................................................................... 13

In re Eagle Bus Mfg.,
  62 F.3d. 730, 735 (5th Cir. 1995).............................................................. 7

In re Gault,
  387 U.S. 1 (1967)......................................................................................... 8

Jenkins v. McKeithen,
  395 U.S. 411, 421 (1959)............................................................................ 13

Maty v. Grasselli Chemical Co.,
  303 U.S. 197 (1938)..................................................................................... 13

Medical Center, Inc.,
  485 U.S. 80 (1988)....................................................................................... 9

Mullane v. Central Hanover Bank & Trust Co.,
  339 U.S. 306, 314 (1950)............................................................................ 8

NAACP v. Alabama,
  375 U.S. 449................................................................................................. 13

Peralta v. Heights Medical Center, Inc.,
  485 U.S. 80 (1988)....................................................................................... 9

Picking v. Pennsylvania Railway,
  151 F.2d. 240, Third Circuit Court of Appeals...................................... 13

Plaskey v. CIA,
  953 F.2nd 25................................................................................................. 13

Puckett v. Cox,
  456 F. 2d 233 (1972) (6th Cir. USCA)..................................................... 13

Robinson v. Hanrahan,
    490 U.S. 38 (1972)...................................................................................... 7

Stromberb v. California,
    283 U.S. 359.............................................................................................. 13

**State Cases**

Aleksich v. Industrial Accident Fund,
    116 Mont. 69, 151 P.2d 1016...................................................................... 11

Browning v. Placke,
    698 S.W.2d. 362 (Tex. 1985) (orig. proceeding)....................................... 10

Bruneio v. Bruneio,
    890 S.W.2d 150, 155 (Tex. Civ. App. 1994, no writ)................................. 6

Burgin v. Forbes,
    293 Ky. 456, 169 S.W.2d 321..................................................................... 11

Cliff v. Huggins,
    724 S.W.2d 778, 780 (Tex.1987).............................................................. 6, 7

DeLeon v, Periman,
    530 S.W.2d 174 (Tex. Civ. App. 1975)...................................................... 4

Delgado v. Hernandez,
    951 S.W.2d 97, 99 (Tex. Civ. App. 1997, no writ).......................................

Dunham v. State,
    140 Fla. 754, 192 So. 324, 325, 326........................................................... 11

Ex parte Gordon,
    584 S.W.2d. 686, 688 (Tex. 1979).............................................................. 5

Ex parte Smith,
    178 S.W.3d 797 (Tex. Crim. App. 2005).................................................... 3

Fazio v. Pittsburgh Rys. Co.,
    321 Pa. 7, 182 A. 696................................................................................. 11

Hidalgo County Water Improvement District No.2 v. Blalock,
    301 S.W.2d 593 (1957).............................................................................. 4

In re Aguilera,
    37 S.W.3d. 43, 47 (Tex. Civ. App. 2000, no pet.)...................................................................... 5

IN RE BOURG,
    Tex. Civ. App. (2008).......................................................................................................... 5

In re Castro,
    998 S.W.2d. 925, 927 (Tex.Civ. App. 1999. no pet.).............................................................. 5

Little v. Town of Conway,
    171 S.C. 27, 170 S.E. 447.................................................................................................... 11

Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland,
    223 Ala. 385, 136 So. 800, 801........................................................................................... 11

Mapco, Inc. v. Forrest,
    795 S.W.2d 700 (Tex. 1990  orig. proceeding)..................................................................... 9

Morecock v. Hood,
    202 N.C. 321, 162 S.E. 730................................................................................................. 11

Newblock v. Bowles,
    170 Oki. 487, 40 P.2d 1097................................................................................................. 11

People v. One 1941 Ford 8 Stake Truck, Engine No. 99T370053, License No. P.8410, Cal.,
    159 P.2d 641....................................................................................................................... 12

Platt v. Platt,
    991 S.W.2d. 481 (Tex. Civ. App. 1999)............................................................................. 5, 6

Rozsa v. Jenkinson,
    754 S.W.2d. 507, (Tex. Civ. App. 1988).............................................................................. 7

Sanchez v. Hester,
    911 S.W.2d. 173 – Tex. Civ. App. (1995)......................................................................... 9, 10

Saslaw v. Weiss,
    133 Ohio St. 496, 14 N.E.2d 930......................................................................................... 11

State v. Owens,
    907 S.W.2d. 484 (Tex. 1995) (per curiam).......................................................................... 10

State v. Western Union Telegraph Co.,
    196 Ala. 570, 72 So. 99, 100............................................................................................... 11

Thomas v. Miller,
    906 S.W.2d. 260 (Tex.App.-Texarkana 1995) (orig. proceeding)................................... 10

Thomas v. Ray,
    889 S.W.2d 237, 238 (Tex.1994)....................................................................................... 6

Withrow v. Schou,
    13 S.W.3d. 37 (Tex. Civ. App. 1999)................................................................................ 7

## State Constitution and Rules

Texas Code of Criminal Procedure,
    Art. 4.04................................................................................................................................ x

Texas Code of Criminal Procedure,
    Art. 11.01.............................................................................................................................. x

Texas Code of Criminal Procedure
    Art. 11.05.............................................................................................................................. x

Texas Code of Criminal Procedure,
    Art. 14.01............................................................................................................................ 12

Texas Code of Criminal Procedure,
    Art. 14.03............................................................................................................................ 12

Texas Constitution
    Art. V, Sec. V (c)................................................................................................................ x

Texas Penal Code,
    Sec. 1.07 (a) (38)............................................................................................................... 11

Texas Penal Code,
    Sec. 38.01 (5)..................................................................................................................... 12

Texas Penal Code,
    Sec. 38.02 (a) (d) (1)............................................................................................ 10, 11, 12, 13

**STATEMENT OF THE CASE**

**Underlying Proceeding**:
    A criminal action brought against Petitioner by IDA PANIAGUA for the alleged offense "INTENTIONALLY REFUSE TO GIVE HIS NAME, DATE OF BIRTH AND ADDRESS TO JAMES BELL."

**Respondent**:
    Charles A. Stephens II, Comal County Court At Law 2, of COMAL COUNTY, TEXAS.

**Respondent's Action For Which Petitioner Seeks Relief**:
    Charles A. Stephens II, entered an order instructing the clerk of the Comal County Court At Law 2 to issues a capias warrant, which has been issued, for Petitioner in absence of Due Process, unconstitutionally restraining him.

**Prior Petitions**:
    This is an Original Proceeding.


**STATEMENT OF JURISDICTION**

This court, pursuant to the Texas Constitution Art. V, Sec. V (c) and the Texas Code of Criminal Procedure, Ch. 4, Art. 4.04 and Ch. 11., Art. 11.01 and 11.05 has jurisdiction to consider and grant this Petition and to issue a Writ of Habeas Corpus.


**ISSUES PRESENTED**

1.  Does the trial court have power to restrain Petitioner? (No)

2.  Has the manner of restraint of Petitioner occurred in absence of Due Process? (Yes)

3.  Are there issue which bar prosecution and conviction of Petitioner for the alleged criminal charge against him? (Yes)

**STATEMENT OF FACTS**

On September 4, 2014, Petitioner was unlawfully arrested, unlawful searched and had his property seized unlawfully by officers of/for the NEW BRAUNFELS POLICE DEPARTMENT (NBPD).

On September 12, 2014, Petitioner was coerced into signing a "PR BOND" (**Apx. Tab B**) displaying an incorrect address for Petitioner. Petitioner was coerced in that the jailer whom presented the "PR BOND" threatened to leave Petitioner in jail for another two weeks if he refused to sign. Petitioner signed the "PR BOND" in order to expedite his release from his unlawful imprisonment, as Petitioner could inform the trial court that the address displayed on the "PR BOND" is incorrect and provide it with a correct one for purposes of service of notice or any other correspondences.

On September 29, 2014, via letter **(Apx. Tab C)**, Petitioner informed the trial court that it had an incorrect address for Petitioner on file and provided it with both Petitioner's current location and address to which notices of any hearings or any other correspondences should be sent to in order for him to receive them.

On March 3, 2015, Petitioner began checking the online records for the trial court because he had received no correspondences or notices of hearings. On that same day, Petitioner discovered via online records that the trial court had failed or neglected to correct the incorrect address it had on file (**Apx. Tab D**), that a "COMPLAINT (OCA)" (**Apx. Tab E**) and a "NOTICE RETURNED" (Notice) (**Apx. Tab F**) had been filed into the trial court on December 15, 2014 and January 26, 2015, respectively, and than an "Arraignment" (see **Apx. Tab D**) had taken place circa February 3, 2015. Petitioner further discovered than an "AFFIDAVIT/FAILURE TO APPEAR" (**Apx. Tab G**), an "ORDER FOR ARREST-FAILURE

TO APPEAR" (Order) (**Apx. Tab H**) and a "CAPIAS-FAILURE TO APPEAR" (Capias) (**Apx. Tab I**) had also been filed into the trial court on February 20, 2015, February 26, 2015, and March 2, 2015, respectively.

## ARGUMENT

"A [petitioner] may use a pretrial writ of habeas corpus only in very limited circumstances. First, the accused may challenge the State's power to restrain him at all. Second, the accused may challenge the manner of his pretrial restraint []. Third, the accused may raise certain issues which, if meritorious, would bar prosecution or conviction. *Ex parte Smith*, 178 S.W.3d 797 (2005).

## I. POWER TO RESTRAIN

The trial court is without subject matter, personal, political or civil contractual jurisdiction over the underlying cause to the instance case, therefore, is without power to restrain Petitioner. The lack of the aforementioned jurisdictions are set forth, challenged, and explained in further detailed in Petitioner's "AFFIDAVIT OF COUNTERCOMPLAINT," (Countercomplaint) (see **Apx. Tab K**) attached hereto and incorporated herein it its entirety for all purposes. The lack of the aforementioned jurisdictions are set out and explained in detail specifically in Sections IV. – VIII. of Petitioner's Countercomplaint (**Apx. Tab K**). Petitioner's averments have been received by all involved and interested parties, evidenced by Return Receipts (see **Apx. Tab N, O, P, & Q**) attached hereto and incorporated herein for all purposes and said Receipts have been filed into the trial court's record. Petitioner's sworn averments within his Countercomplaint are unchallenged, unrebutted and unrefutted, and pursuant to the Doctrine of Acquiescence, silence by the involved and interested parties constitutes their agreement with Petitioner's sworn averments.

### Doctrine of Acquiescence

Under the Doctrine of Acquiescence as well as the Maxim in Law which states

that "silence shows consent" 6 Barb. [N.Y.] 2B, 35. Qui non negat, fatetur and "He who does not deny, agrees," (Trayner, Maxim 503), the Appellee's silence constituted their agreement with the Appellants' arbitration proposal terms and conditions under the legal Doctrine of Tacit Procuration.

The common law doctrine of estoppel by acquiescence is applied when one party gives legal notice to a second party of a fact or claim, and the second party fails to challenge or refute that claim within a reasonable time. The second party is said to have acquiesced to the claim, and is estopped from later challenging it, or making a counterclaim. The doctrine is similar to, and often applied with, estoppel by laches

This occurred in the second Georgia v. South Carolina[1] case before the U.S. Supreme Court in 1990, when it was ruled that Georgia could no longer make any claim to an island in the Savannah River, despite the 1787 Treaty of Beaufort's assignment to the contrary. The court said that the state had knowingly allowed South Carolina to join the island as a peninsula to its own coast by dumping sand from dredging, and to then levy property taxes on it for decades. Georgia thereby lost the island-turned-peninsula by its own acquiescence, even though the treaty had given it all of the islands in the river (see adverse possession

Silence is acquiescence (aka. silent acquiescence and acquiescence by silence) is a related doctrine that can mean, and have the legal effect, that when confronted with a wrong or an act that can be considered a tortuous act, where one's silence may mean that one accepts or permits such acts without protest or claim thereby loses rights to a claim of any loss or damage.[2]

Further, pursuant to the Doctrine of Stare Decisis, Petitioner's "...unchallenged averments are accepted as true." *DeLeon v. Periman*, 530 S.W.2d 174 (Tex.App.-Amarillo (1975)); quoting *Hidalgo County Water Improvement District No.2 v. Blalock*, 157 Tex. 206, 301 S.W.2d 593, 596 (1957). Petitioner's averments that the trial court is without jurisdiction have been agreed to by all involved and interested parties and are accepted as true under Texas Common Law. In absence of the subject matter, personal, political and civil contractual jurisdiction, the trial court is without power to restrain Petitioner in relation to the underlying case to the instant case.

## II. MANNER OF RESTRAINT

---

1 Georgia v. South Carolina - 497 U.S. 376 (1990)
2 U.S. Supreme Court Central Pacific Railway Co. v. Alameda County, 284 U.S. 463 (1932)

Even if the trial court had jurisdiction over the underlying cause to the instant case and power to restrain Petitioner, the manner in which his restraint has taken place has clearly manifested through a denial of due process, in that Petitioner was not provided notice of the hearing from which his restraint stems from.

An Order (**Apx. Tab H**) for "FAILURE TO APPEAR" was issued by Respondent on February 26, 2015. On March 2, 2015, the Clerk or a deputy therefor, of/for the trial court issued a Capias (**Apx. Tab I**) for Petitioner. "Issuance of a capias is a sufficient restraint of liberty to justify habeas corpus relief." *In re Aguilera*, 37 S.W.3d. 43, 47 (Tex.App.-El Paso 2000, no pet.) As of yet, Petitioner has not been taken taken into custody pursuant to Order and Capias.

"A habeas corpus petition is a collateral attack on a judgment, the purpose of which is not to determine the final guilt or innocence of the [petitioner], but to ascertain whether the [petitioner] has been [restrained] unlawfully. *Ex parte Gordon*, 584 S.W.2d. 686, 688 (Tex. 1979). The restraint of Petitioner by the trial court is unlawful due to the fact that the Order was made and the Capias was issued in absence of due process. "A writ of habeas corpus will issue if [] the court deprives the [petitioner] of liberty without due process of law." *In re Castro*, 998 S.W.2d. 925, 927 (Tex.App.-Houston [1st Dist.] 1999. no pet.). A writ of habeas corpus is proper and should issue due to the fact that Petitioner is being deprived of his liberty without due process of law.

> "A [petitioner] bears the burden of showing that []he is entitled to relief." Turner,
> 177 S.W.3d at 288 (citing Occhipenti, 796 S.W.2d. At 808-09.)" *IN RE BOURG*,
> Tex: Court of Appeals, 1st Dist. 2008.

The court administrator of/for the trial court erred by mailing the notice of the hearing from which the Order and Capias stem to the wrong address even though the court had been notified before the notice was sent, that the address it had on file was incorrect and had been

provided with, and was in possession of, Petitioner's exact location and correct address. "[T]he trial court erred when it [] failed to send notice of the hearing to [Petitioner's] address on file with the court." *Platt v. Platt*, 991 S.W.2d. 481 (1999).

Petitioner had notified the court via letter (see **Apx. Tab C**) sent on September 19, 2014, which was received and filed into the trial court record on October 3, 2014, as a part of the "MEMORANDUM (see **Apx. Tab D**) that the address it had on file (see **Apx. Tab B** and **E**) was incorrect; that Petitioner had not lived at the incorrect address in a number of years; and, he provided not only his current location– DALLAS COUNTY JAIL, but also the address to which notice should be sent in order for him to receive it, if notice was not sent directly to the DALLAS COUNTY JAIL.

"[T]the law presumes that a trial court will hear a case only after proper notice to the parties. To rebut this presumption, [petitioner] has the burden to affirmatively show a lack of notice by affidavit or other competent evidence." *Bruneio v. Bruneio*, 890 S.W.2d 150, 155 (Tex.App.-Corpus Christi 1994, no writ). Petitioner has shown to the trial court, and now shows this court, via affidavit (see **Apx. Tab J**, pg.5, #100. and **Apx. Tab K**, p.34 - 35, #77. - 78.) that he was not provided notice of the hearing from which the Order and Capias stem. Further, Petitioner provides this court with competent evidence (see **Apx. Tab C & F**) that he was not provided notice of the hearing from which the Order and Capias stem.

"In the instant case, the record shows that notice of [the] hearing [] was mailed to the wrong address. That a document was mailed creates a rebuttable presumption that it was received." *Platt v. Platt*, 991 S.W.2d 481 (1999) quoting *Thomas v. Ray*, 889 S.W.2d 237, 238 (Tex.1994). Similarly, in the underlying cause to the instance case, the trial court's record shows that notice was mailed to the wrong address (see **Apx. Tab C & F**). "When [Petitioner] filed [his]

affidavit stating that []he did not receive the notice, the presumption was rebutted." (see **Apx. Tab K**, p. 34 – 35, #77. – 78.) "The presumption of receipt is not evidence and vanishes when opposing evidence is introduced showing that the notice was not received." <u>Cliff v. Huggins</u>, 724 S.W.2d 778, 780 (Tex.1987).

> "The error and invalidity of the trial court's judgment affirmatively appears on the face of the record [see **Apx. Tab D & F**] in the that wrong address for [Petitioner] is typed on the notice []. Additionally, the records shows that [the trial court] had access to [Petitioner's] correct address [] [see **Apx. Tab C**]. Therefore, the notice was not sent to [Petitioner's] "last known address. <u>Rozsa v. Jenkinson</u>, 754 S.W.2d. 507 (Tex.App.-San Antonio 1988)

> "The [trial court] mailed notice of the pending [] proceeding, not to the jail facility [or the address provided by Petitioner], but to [an incorrect] address [] listed in the records of the [trial court]." <u>Robinson v. Hanrahan</u>, 490 U.S. 38 (1972) "[T]he manner of notice did not comport with the requirements of the Due Process Clause of the Fourteenth Amendment. (<u>Id.</u>) "The [trial court] knew that [petitioner] was not at the address to which notice was mailed and, moreover, knew also that [petitioner] could not get to that address since he [no longer lived there]. Under these circumstances, it cannot be said the the [trial court] made any effort to provide notice which was 'reasonably calculated" to apprise [petitioner] of the pendency of the [] proceedings." (<u>Id.</u>)

Either the Clerk or a deputy therefor, failed to correct the mistake in the court's files or the court administrator intentionally sent notice to the wrong address.

> "The notice was returned undelivered to the trial court on [or about January 27, 2015], with the notation "Return to Sender [Not Delivered As Addressed Unable To Forward (see **Apx. Tab F**)]" <u>Withrow v. Schou</u>, 13 S.W.3d. 37 (Tex.App.-Houston 1999). "[I]f [Petitioner] [had failed] to notify the clerk in writing of a [correct] address, [] then there is no 'due process' argument..." (<u>Id.</u>) "Federal courts have held in various contexts that mailing notice of settings by first-class mail is constitutionally sufficient as long as the government acts reasonable under the circumstances, even if the intended recipient of the notice never receives it. See In re Eagle Bus Mfg., 62 F.3d. 730, 735 (5th Cir. 1995)" (<u>Id.</u>) "There is imposed 'a responsibility on the [party] to be notified to keep the court and parties apprised of their correct and current address.'" [T]he record indicates [Petitioner] notified the court of [the correct] address." (<u>Id.</u>)

The trial court had been notified that the address it had on file (see **Apx. Tab B**) was

incorrect and it was in fact notified and in possession of the correct address (see **Apx. Tab C**) to which service was to be made, therefore, Petitioner cannot be faulted and restrained in his liberty for the mistakes or wrongs of the clerk or deputy therefor, or court administrator; *Nemo punitur pro alieno delicto.* "No one is to be punished for the crime or wrong of another."; *Nullus commodum capere potest de injuri su propri*. "No one shall take advantage of his own wrong. Co. Litt. 148.'" *Ubicunque est injuria, ibi damnum sequitur.* Where ever there is a wrong, there damages follow. 10 Co. 116." Petitioner has been denied due process in that he was not provided notice of the hearing from which the Order and Capias stem.

> "It is clear that failure to give the petitioner notice of the pending proceedings violates the most rudimentary demands of due process of law. Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require the deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. Mullane v. Central Hanover Tr. Co., 339 U.S. 306, at 313." <u>*Armstrong v. Manzo*</u>, 380 U.S. 5454 – Supreme Court 1965.

As has been stated and demonstrated by Petitioner herein, and the Appendices attached hereto and incorporated herein, he has denied due process in that he was not given notice of the hearing from which the Order and Capias stem. Further, even if Petitioner had received notice, it does not set out the alleged misconduct with particularity specifically pertaining to the alleged offense alleged to have been committed by Petitioner which made basis for his arrest and creating an obligation to provide any information to the officers of/for the NBPD. In absence of the alleged misconduct, even if Petitioner would have received the notice it would not have been in compliance with due process requirements.

> "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.' " <u>*In re Gault*</u>, 387 U.S. 1, Supreme Court 1967. Due process of law requires notice

of the sort we have described – that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which [] freedom [is] at stake without giving [] timely notice, in advance of the hearing, of the specific issues that must be met. Nor, in the circumstances of this case, can it reasonable be said that the requirement of notice was waived. (Id.)

Petitioner was neither given notice, nor afforded opportunity to present objections to the allegation(s) made against him. Petitioner cannot be expected to be able object to allegations not made known to him.

"Service of process is the way in which the defendant gets notice of the claim against him and its allegations. The Supreme Court has held that due process requires "notice reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

As a result of Petitioner not being provided notice of the hearing from which the Order and Capias stem, the Order is constitutionally infirm, invalid and null and void, likewise is the Capias. Further, a failure to set forth the alleged misconduct with particularity in said notice (see **Apx. Tab F**), the Order and Capias are constitutionally infirm, invalid and null and void.

"'[U]nder our cases, a judgment entered without notice or service is constitutionally infirm.' An elementary and fundamental requirement of due process in any proceeding is notice reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988)); quoting Mullane v. Central Hanover Bank & Trust Co. "Failure to give notice violates the most rudimentary demands of due process" (Id.)

Petitioner was further denied due process in that he was denied the opportunity to be heard, as a result of not being provided notice of the hearing from which the Order and Capias stem. "A fundamental requirement of due process is the 'opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394.

[V]oid orders may be circumvented by collateral attack[]. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding)." <u>*Sanchez v. Hester*</u>, 911 S.W.2d. 173 – Tex: Court of Appeals, 13th Dist. 1995. As stated supra, this petition is, inter alia, a collateral attack on the Order and Capias, and same are void as a result of Petitioner being denied Due Process resulting from a failure to provide notice and to set forth therein with particularity the alleged misconduct, resulting in the court failing to secure personal jurisdiction over Petitioner for purposes of the hearing from which the Order and Capias stem. "[T]he position adopted by the Texas Supreme Court reflects the principle under Texas law that the orders of a court with no jurisdiction over the parties or property are void." See *State v. Owens*, 907 S.W.2d. 484, 485 (Tex. 1995) (per curiam); *Thomas v. Miller*, 906 S.W.2d. 260 (Tex.App.-Texarkana 1995) (orig. proceeding); see also *Browning v. Placke*, 698 S.W.2d. 362, 363 (Tex. 1985) (orig. proceeding) (comparing void and voidable judgments) <u>*Sanchez v. Hester*</u>, supra.

## II. ISSUES THAT BAR PROSECTION AND CONVICTION

As stated and demonstrated supra, and by the Appendices attached hereto, and by the silence of all involved and interested parties thereto, the trial court is without jurisdiction over the underlying cause to the instant case. Without jurisdiction, the trial court is without power to hear the underlying cause to the instant case and the prosecutor for the state and,or county, ABIGAIL WHITAKER (Whitaker), is barred form prosecution and conviction of Petitioner for the criminal allegation and cause against him. Even if the trial court had jurisdiction, the allegation made against Petitioner is inapplicable thereto, under the circumstances.

### A. Sec. 38.02. IS INAPPLICABLE UNDER THE CIRCUMSTANCES

T.P.C. Sec. 38.02. FAILURE TO IDENTIFY.

(a) A "**person**" commits an offense if he intentionally refuses to give his name,

residence address, or date of birth to a peace officer who has <u>lawfully arrested</u> the "**person**" and requested the information.

(d) If it is shown on the trial of an offense under this section that the defendant was a "**fugitive from justice**" at the time of the offense, the offense is:
(1) a Class B misdemeanor if the offense is committed under Subsection (a); or

T.P.C. Sec. 1.07. DEFINITIONS. (a) In this code:
(38) "Person" means an individual, corporation, or association.

The legal term "Person" falls under the following Doctrines of Statutory Interpretation used by both the federal congress and state legislatures in drafting legislation, as well as the federal and state judiciary departments to interpret legislation passed into law by the federal congress and state legislatures:

> **Ejusdem Generis**: Of the same kind, class, or nature. In the <u>construction of laws,</u> wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U. S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69, 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention. The maxim "ejusdem generis," is only an illustration of the broader maxim, "noscitur a sod's." State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100. Black's Law, 4th Ed.

> **Noscitur a Sociis**: It is known from its associates. 1 Vent. 225. The meaning of a word is or may be known from the accompanying words. 3 Term R. 87; Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730, 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800, 801. The doctrine means that <u>general and specific words are associated with and take color from each other</u>, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325, 326. Black's Law, 4th Ed.

> **Expressio unius est exclusio alterius**: <u>Expression of one thing is the exclusion of another</u>. Co.Litt. 210a; Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325; Newblock v. Bowles, 170 Oki. 487, 40 P.2d 1097, 1100. <u>Mention of one thing</u>

Fazio v. Pittsburgh Rys. Co., 321 Pa. 7, 182 A. 696, 698; Saslaw v. Weiss, 133 Ohio St. 496, 14 N.E.2d 930, 932. <u>When certain persons or things are specified, in a law</u>, contract, or will, <u>an intention to exclude all others from its operation may be inferred</u>. Little v. Town of Conway, 171 S.C. 27, 170 S.E. 447, 448. Under this maxim, if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded, People v. One 1941 Ford 8 Stake Truck, Engine No. 99T370053, License No. P.8410, Cal., 159 P.2d 641, 642. Black's Law, 4th Ed.

Sec. 38.01. DEFINITIONS. In this chapter:
(5) "Fugitive from justice" means a person for whom a valid arrest warrant has been issued.

As stated in Petitioners Countercomplaint (see **Apx. Tab K** pg.73 - 76, #168. - 171.), he is not a "Person," rather, he is a member of the people. Petitioner is neither a "Person," nor was he a "Fugitive from justice" and there is no evidence to the contrary.

In order for Sec. 38.02 (a) to be applicable, a "person" must first be "lawfully arrested" before the "person" is required to "give his name, residence address, or date of birth." Petitioner is not a "person," even if he is or was at the time, he was not lawfully arrested as he had not committed an offense classed as a felony or as an offense against the public peace, or any other offense, in the presence or within view of any of the officers (see Tex. C. Crim. Proc., Art. 14.01 & 14.03) of/for the NBPD involved in Petitioner's unlawful arrest. In fact, when the officers of/for the NBPD arrived, Petitioner was being assaulted (see **Apx. Tab J**). Without committing the aforementioned offenses in the presence or within view of those officers, Petitioner's arrest was unlawful. Being that Petitioner had committed no offense and was unlawfully arrested, he was not required to provide any identifying information contemplated within Sec. 38.02 to any of the officers of/for the NBPD involved in his unlawful arrest, therefore, Sec. 38.02 is inapplicable to Petitioner under the circumstances. Further, Whitaker cannot prove beyond a reasonable doubt that the alleged offense Petitioner is accused of occurred while the officers of/for the NBPD were

in the lawful discharge of their official duties. Considering all the evidence and lack thereof, it follows that there is no proof that the officers were authorized to arrest Petitioner. Without such evidence, the Whitaker cannot establish that the officers of/for the NBPD were lawfully discharging their official duties. As there is no evidence showing Petitioner's arrest was lawful, he had the right to refuse to provide any information to the officers of/for the NBPD involved in his unlawful arrest. Accordingly, the conviction of Petitioner for the alleged offense is not authorized by the evidence. The officers of/for the NBPD, as well as the prosecutor, would have it believed that a "person," or anyone for that matter, can be arrested without having committed an offense, in absence of any warrant, and then be required to provide information to the arresting officer(s). Such an event is not contemplated or condoned by Sec. 38.02.

In order for Sec. 38.02 (d) (1) to be applicable, it must be "shown on the trial of an offense under [] section [38.02] that the defendant was a "fugitive from justice" at the time of the offense." A "trial" has not shown the Petitioner was "a fugitive from justice." Further, and again, there is no mention or evidence of an offense which Petitioner had committed giving rise to or providing cause for his arrest, nor is there any evidence Petitioner was a "fugitive from justice," in fact, the record is bereft of any warrant for Petitioner, save the Capias challenged herein and hereby. Furthermore, even if Petitioner had committed some offense and was lawfully arrested by the officers of/for the NBPD, application of Sec. 38.02 (d) (1) would be premature in absence of a "trial" to show that Petitioner was "a fugitive from justice."

## B. WITNESSES DISQUALIFIED

As demonstrated supra, and within the documents attached hereto, the officers of/for the NBPD are disqualified as witnesses due to noncompliance and misconduct, false arrest and violations of procedural due process and due course of law, as well as dishonesty and deceit by

claiming Petitioner had been lawfully arrested while either failing or intentionally neglecting to state for what offense Petitioner had been arrested for, in addition to, illegal seizure of property, to wit: a video recording camera used by Petitioner to record the events leading up to his false, unlawful arrest, which evidences Petitioner was unlawfully arrested and a false report had been made against Petitioner: *Jus ex injuria non oritur.* "A right cannot arise from a wrong." 4 Bing. 639.; *Nemo punitur pro alieno delicto.* "No one is to be punished for the crime or wrong of another."; *Nullus commodum capere potest de injuri su propri.* "No one shall take advantage of his own wrong. Co. Litt. 148."; *Ubicunque est injuria, ibi damnum sequitur.* "Where ever there is a wrong, there damages follow." 10 Co. 116.; *Lex citius tolerare vult privatum damnum quam publicum malum.* "The law would rather tolerate a private wrong than a public evil." Co. Litt. 152; see also **Apx. Tab K** pg.15 - 18, #31.

Pursuant to the federal and state Rules of Evidence (see **Apx. Tab K** pg.36 - 37, #81. - 84.) and case law (see **Apx. Tab K** pg.37 - 39, #85. - 86.), Whitaker is not a competent and qualified witness due a lack of personal knowledge and status as a prosecutor. Ida Paniagua is not a competent or qualified witness pursuant to the federal and state Rules of Evidence due to a lack of personal knowledge (see **Apx. Tab K** pg.36 - 37, #83.). Whitaker, is barred from prosecution of the allegation and charge against Petitioner, due the trial court's lack of jurisdiction, lack of evidence that Petitioner had committed any crime, inapplicability of Sec. 38.02 to Petitioner and a lack of any credible witnesses thereagainstr, and conviction of him for the alleged offense is barred as a result of a bar to prosecution.

## PLEADING SHALL BE CONSTRUED TO DO JUSTICE

"Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome

and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. *Conley v. Gibson*, 355 U.S. 41 at 48 (1957)

"The assertion of federal rights, when plainly and reasonably made, are not to be defeated under the name of local practice. *Davis v. Wechler*, 263 U.S. 22, 24; *Stromberb v. California*, 283 U.S. 359; *NAACP v. Alabama*, 375 U.S. 449

Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v. Pennsylvania R. Co.*, 151 Fed 2nd 240; *Pucket v. Cox*, 456 2nd 233

"Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938)

The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities. *Picking v. Pennsylvania Railway*, 151 F.2d. 240, Third Circuit Court of Appeals

It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in *Conley v. Gibson* (see case listed above, Pro Se Rights Section). *Puckett v. Cox*, 456 F. 2d 233 (1972) (6th Cir. USCA)

"... allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers... ". *Haines v Kerner*, 404 U.S. 519 – 521, (1972)

"Court errs if court dismisses pro se litigant without instructions of how pleadings are deficient and how to repair pleadings." *Plaskey v. CIA*, 953 F.2nd 25

Nowhere can be found a competent attorney that is able to execute the proper remedy without embarrassing the Court, *Corpus Juris Secundum* 2d Vol. 7 section 25.

## <u>REQUEST FOR RELIEF</u>

For the reasons set forth herein, Petitioner, Jason Childress, requests that this Court grant his Petition for Writ of Habeas Corpus and relieve Petitioner of his unlawful restraint resulting from the void Capias.

Respectfully submitted,

/s/: Jason Childress
Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas
jchildress1980@gmail.com

## **VERIFICATION**

Executed without the United States:

      Pursuant to 28 U.S. Code § 1746 (a): I, Jason Truman Childress, Petitioner herein, **in lieu of Notarization of this document due to an inability to pay therefor**, do declare, certify, verify and state under penalty of perjury under the laws of the United States of America that I am a living man, of lawful age and competent to testify to the facts stated herein, and that the facts and statements made herein by me are true and correct.

                                /s/: Jason Childress

Executed on this __3rd_ day of __August__, 2015.

<u>**CERTIFICAT E OF SERVICE**</u>

   I, Jason Childress, Petitioner herein, hereby certify that a true and correct copy of this Petition for Writ of Mandamus is being sent via email on this  3rd  day of  August , 2015 to the following:


   Charles A. Stephens
   Comal County Court at Law 2
   Comal County Courthouse Annex
   150 N. Seguin, Ste. 301
   New Braunfels, Texas 78130

   Abigail Whitaker
   Comal County District Attorney's Office
   Comal County Courthouse Annex
   150 N. Seguin Ave. Ste. 307
   New Braunfels, Texas 78130


            /s/: Jason Childress   
               Jason Childress
               9141 Gristmill Ct.
               Fort Worth, Texas


Submitting this  3rd  day of  August , 2015.

# NO. _____

## In Re Jason Childress,

### Petitioner

---

## APPENDIX TO AND FOR PETITIONER'S PETITIONS
## FOR WRIT OF HABEAS CORPUS AND WRIT OF MANDAMUS

---

### List of Documents

1.  "PR BOND"............................................................................................ Tab B

2.  Petitioner's Letter to Trial Court.......................................................... Tab C

3.  Trial Court Online Record Screenshot.................................................. Tab D

4.  "COMPLAINT (OCA)"........................................................................ Tab E

5.  RETURNED NOTICE........................................................................... Tab F

6.  "AFFIDAVIT/FAILURE TO APPEAR".............................................. Tab G

7.  "ORDER FOR ARREST-FAILURE TO APPEAR"............................. Tab H

8.  "CAPIAS-FAILURE TO APPEAR"..................................................... Tab I

9.  Affidavit for Countercomplaint............................................................ Tab J

10. AFFIDAVIT OF COUNTERCOMPLAINT.......................................... Tab K

11. TABLE OF AUTHORITIES: POLICE REPORTS ARE HEARSAY................. Tab L

12. TABLE OF AUTHORITIES: LAW OF VOIDS IN TEXAS........................... Tab M

13. Return Receipt: BOBBIE KOEPP......................................................... Tab N

14. Return Receipt: Kevin M. Schoch........................................................ Tab O

15. Return Receipt: TOM WIBERT............................................................ Tab P

16. Return Receipt: ABIGAIL WHITAKER............................................... Tab Q

17. DEMAND FOR DISMISSAL................................................................. Tab R

APPENDIX

TAB B

# BAIL BOND 2014CCR 1548 Q2

**Court:** CCAL
**FILED FOR RECORD** Date: Instanter To Be Set
Time: _____
Cause No: Complaint

**2014 SEP 16 PM 1:16**

Wendy Martin
JOY STREATER
COUNTY CLERK COMAL COUNTY

**Type of Bond:** PR-Salyers
**SPN:** 628912
**Receipt No.** _____

TRN 9213066511
A001

### KNOW ALL MEN BY THESE PRESENTS:

_____ Jason Childress _____, as principal, and the undersigned
PR-($3000) AUTH ELLEN SALYERS, as sureties,
are held and firmly bound unto the STATE OF TEXAS, in the penal sum of
Three Thousand ($3000) Dollars
and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums will and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators, jointly and severally.

The condition of this bond is that the Defendant has been charged with Fail to ID Fugitive from Justice a ~~Felony~~ Misdemeanor offense and to secure his release from custody is entering into this obligation binding him to appear before County Court, as shown above, of Comal County, City of New Braunfels Texas.

Now therefore, if the said Principal shall well and truly make his personal appearance before said Court Instanter as well as before any other court to which the same may be transferred and for any and all subsequent proceedings that may be had relative to said charge in the court of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharge by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

Taken and Approved this day of Sept 12, 20 14
By Bob Holder _____, Sheriff
By J. Hunter _____, Deputy
_____, Surety
_____
_____ ADDRESS
_____, Surety
_____ ADDRESS

OATH OF SURETIES
STATE OF TEXAS
COUNTY OF _____

Signed and Dated Sept 12, 20 14
J. Comal _____, County, Texas
_____, Principal
461 Co. Rd. 309
MAILING ADDRESS
Valley View TX 76272
CITY AND STATE
Race W Sex M HT 505 WT 135
DOB 7-14-80 Hair Bro Eyes Grn
DL# 170533435 State TX
NOK: Stephanie Burney (Sis)
Same (817) 938 0467
MAILING ADDRESS

We, each of us, PR-($3000) AUTH ELLEN SALYERS
Do wear that we are worth in our own right, at least the sum of 3000 _____ Dollars,
After deduction from our property all that which is exempt by the Constitution Laws of the STATE OF TEXAS from forced sale,
and after satisfying all encumbrances upon our property which are known to us;
and that we reside in the County of Comal and have property in the STATE OF TEXAS
Liable to execution worth:
The Said _____ Sum of _____ Dollars
The Said _____ Sum of _____ Dollars
_____ Surety _____ Surety
SIGNATURE SIGNATURE

Subscribed and Swore to before me this 12 day of Sept A.D. 20 14
_____
NOTARY PUBLIC STATE OF TEXAS
April 12 2015
EXPIRATION DATE OF NOTARY

LENDA MC KAY
Notary Public, State of Texas
My Commission Expires
APRIL 12, 2015

CERTIFIED TO BE A TRUE AND CORRECT COPY.
Bobbie Koepp
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE 4 OF 11

APPENDIX

TAB C

Jason I Childress
9141 Gristmill Ct.
Ft. Worth, Tx

unfiled

FILED

At _____ O'clock _____ M

OCT 03 2014

JOY STREATER
County Clerk · Comal County, Texas
By _____
September 29, 2014

Clerk of Court
Comal County Court at Law
3005 W. San Antonio, St.
New Braunfels, Tex 78130

Clerk of Court:

I, Jason Childress, hereby state the following:

I am currently being held at the Dallas County Jail, awaiting release of a "P.R. Bond". Until such release occurs, I cannot make an appearance in the above stated Court at Law. I have been informed by the Dallas County 204th District Court, that my release is to occur soon, expected with this current week or the following. Please, send any correspondence, either to the Lew Sterret County Jail, at 133 Commerce, Dallas, Texas 75246, or to the above stated address, as the address listed on the "P.R. Bond" via Comal County, to wit: 461 CR 309, Valley View, Texas 76272, is incorrect - I have not lived at that address since 2009. Thank you.

X _____
Jason Childress

CERTIFIED TO BE A TRUE AND
CORRECT COPY.

Bobbie Koepp
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE 5 OF 11

FIRST CLASS

UNITED STATES POSTAGE
$ 00.48°
PITNEY BOWES
SEP 30 2014
02 1R
0002010665
MAILED FROM ZIP CODE 75202

Sosa Childress #14054900
P3 Commerce
Dallas, Texas 75244;
9141 Gristmill Ct.
F. Worth, Tx 76179

Clerk of Court
Comal County District Court
3205 ___ Drive B
New Braunfels, ___ 78130

78130×5555

CERTIFIED TO BE A TRUE AND CORRECT COPY.



BOBBIE KOEPP
COMAL COUNTY CLERK
COUNTY CLERK OF COMAL COUNTY TEXAS
PAGE 6 OF 11

APPENDIX

TAB D

# REGISTER OF ACTIONS
## CASE NO. 2014CR1548

State of Texas vs. JASON TRUMAN CHILDRESS

§
§
§
§
§

Case Type:  **Adult Misdemeanor**
Date Filed:  **12/15/2014**
Location:  **County Court at Law 2**

---

### PARTY INFORMATION

|  |  |  | **Attorneys** |
|---|---|---|---|
| **Defendant** | CHILDRESS, JASON TRUMAN<br>461 CO ROAD 309<br>VALLEY VIEW, TX 76272 | Male White<br>DOB: 07/14/1980 |  |
| **State** | State of Texas<br>3005 W San Antonio St<br>New Braunfels, TX 78130 | Other | **ABIGAIL L. WHITAKER**<br>830-221-1300(W) |

---

### CHARGE INFORMATION

| Charges: CHILDRESS, JASON TRUMAN | Statute | Level | Date |
|---|---|---|---|
| 1.  FAIL TO IDENTIFY FUGITIVE FROM JUSTICE | 38.02(d) PC | Class B Misdemeanor | 09/04/2014 |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 09/16/2014 | **BOND** |
| 12/15/2014 | **Complaint (OCA)** |
| 12/18/2014 | **MEMORANDUM** |
| 12/22/2014 | **LIST TO COORDINATOR** |
| 01/26/2015 | **NOTICE RETURNED** |
| 02/03/2015 | **Arraignment**  (8:30 AM) (Judicial Officer Stephens, Charles A., II) |
| 02/20/2015 | **AFFIDAVIT/FAILURE TO APPEAR** |
| 02/26/2015 | **ORDER FOR ARREST-FAILURE TO APPEAR** |
| 03/02/2015 | **CAPIAS-FAILURE TO APPEAR** |
| 03/25/2015 | **MISCELLANEOUS** |
| 03/25/2015 | **MISCELLANEOUS** |
| 03/26/2015 | **MISCELLANEOUS** |
| 03/26/2015 | **MISCELLANEOUS** |
| 04/14/2015 | **MISCELLANEOUS** |
| 05/15/2015 | **DISMISSAL REQUEST** |
| 06/08/2015 | **NOTICE** |
| 06/08/2015 | **REQUEST** |
| 06/09/2015 | **LETTER** |

APPENDIX

TAB E

# IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

I, IDA PANIAGUA, BEING DULY SWORN, DO STATE UPON MY OATH THAT I HAVE GOOD REASON TO BELIEVE AND DO BELIEVE BASED UPON THE INFORMATION SUPPLIED BY JAMES BELL AND I CHARGE THAT BEFORE THE MAKING AND FILING OF THIS COMPLAINT, ON OR ABOUT THE 4TH DAY OF SEPTEMBER, 2014, IN THE COUNTY OF COMAL AND STATE OF TEXAS, **JASON TRUMAN CHILDRESS**, DID THEN AND THERE, KNOWING THAT JAMES BELL WAS A PEACE OFFICER, INTENTIONALLY REFUSE TO GIVE HIS NAME, DATE OF BIRTH, AND ADDRESS TO JAMES BELL, A PEACE OFFICER WHO HAD LAWFULLY ARRESTED THE DEFENDANT AND REQUESTED THE INFORMATION, AND THE DEFENDANT WAS THEN AND THERE A FUGITIVE FROM JUSTICE.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_____
COMPLAINANT

CHARGES:    **FAILURE TO IDENTIFY FUGITIVE**
            **CLASS A**

SWORN TO AND SUBSCRIBED BEFORE ME BY IDA PANIAGUA, A CREDIBLE PERSON, THIS _15_ DAY OF _____, A.D., 2014.

_____
JENNIFER A. THARP
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY

FOR JENNIFER A. THARP BY:        _____
                                 ASSISTANT CRIMINAL DISTRICT ATTORNEY

07/14/1980     14-43028
ARREST DATE: 09/04/2014
BOND AMOUNT:  $3,000.00
TRN: 9213066511   TRS: A001



CERTIFIED TO BE A TRUE AND CORRECT COPY.
BOBBIE KOEPP
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE _1_ OF _11_

FILED FOR RECORD
2014 DEC 15 AM 10: 23
COUNTY CLERK COMAL COUNTY
JOY STREATER
BY:

2014CR1548

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

I, THE UNDERSIGNED AUTHORITY REPRESENTING THE OFFICE OF THE CRIMINAL DISTRICT ATTORNEY OF COMAL COUNTY, IN SAID STATE, ON THE WRITTEN AFFIDAVIT OF IDA PANIAGUA, A COMPETENT AND CREDIBLE PERSON HEREWITH FILED IN THE COUNTY COURT AT LAW DO PRESENT IN AND TO SAID COURT THAT ON OR ABOUT THE **4TH DAY OF SEPTEMBER, 2014,** AND BEFORE THE MAKING AND FILING OF THIS INFORMATION, IN THE COUNTY OF COMAL AND THE STATE OF TEXAS, **JASON TRUMAN CHILDRESS**, DID THEN AND THERE, KNOWING THAT JAMES BELL WAS A PEACE OFFICER, INTENTIONALLY REFUSE TO GIVE HIS NAME, DATE OF BIRTH, AND ADDRESS TO JAMES BELL, A PEACE OFFICER WHO HAD LAWFULLY ARRESTED THE DEFENDANT AND REQUESTED THE INFORMATION, AND THE DEFENDANT WAS THEN AND THERE A FUGITIVE FROM JUSTICE.

AGAINST THE PEACE AND DIGNITY OF THE STATE

JENNIFER A. THARP
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY

FOR JENNIFER A. THARP BY:

ASSISTANT CRIMINAL DISTRICT ATTORNEY

07/14/1980      14-43028



FILED FOR RECORD
2014 DEC 15 AM 10: 23
COUNTY JOY STREATER
COUNTY CLERK COMAL COUNTY
BY _____

CERTIFIED TO BE A TRUE AND CORRECT COPY.
Bobbie Koepp
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE 2 OF 11

APPENDIX

TAB F

CAUSE NO. 2014CR1548



CHARGE: FAIL TO IDENTIFY FUGITIVE FROM JUSTICE

THE STATE OF TEXAS

VS.

JASON TRUMAN CHILDRESS
461 CO ROAD 309
VALLEY VIEW TX  76272

## NOTICE OF COURT APPEARANCE

BY ORDER OF THE COURT, notice is hereby given that the above entitled and numbered cause is set for hearing at the Comal County Courthouse Annex 3rd Floor, 150 North Seguin Ave., Suite 301, New Braunfels, Texas 78130 on the **February 03, 2015  8:30 AM**   The purpose of the hearing will be for **Arraignment.**

1) FAILURE TO APPEAR BY THE DEFENDANT WILL RESULT IN HIS/HER BOND BEING FORFEITED AND A WARRANT ISSUED FOR HIS/HER ARREST.
2) **COURT COSTS OF APPROXIMATELY $250.00** ARE DUE AT THE CONCLUSION OF YOUR CASE - CASH, MONEY ORDER OR CREDIT CARD;
3) DRESS APPROPRIATELY – SHORTS ARE NOT ALLOWED IN THE COURTROOM.  TANK TOPS, HALTER TOPS, T-SHIRTS WITH ANY OBSCENE, VULGAR, DRUG OR ALCOHOL RELATED PICTURES, PROMOTIONS OR WORDING, WILL NOT BE ALLOWED IN THE COURTROOM.
4) HATS, CAPS AND/OR BANDANNAS WILL BE REMOVED FROM THE HEAD.
5) MOBILE PHONES MUST BE TURNED OFF OR ON VIBRATE.
6) LOUD TALKING OR DISRESPECTFUL BEHAVIOR IS NOT TOLERATED IN THE COURTHOUSE. CHILDREN ARE NOT ALLOWED IN THE COURTROOM AT ANY TIME.
7) ALL PIERCINGS (EXCEPT FOR WOMEN'S EARRINGS) WILL BE REMOVED OR COVERED.

BY THE AUTHORITY OF THE COUNTY COURT AT LAW #2 JUDGE:

Comal County Court at Law #2
Ashley Evans, Court Administrator
150 North Seguin Ave., 301
New Braunfels, Texas  78130
(830) 221-1180

ATTORNEY FOR DEFENDANT:

CERTIFIED TO BE A TRUE AND CORRECT COPY.

Bobbie Koepp
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE 7 of 11



**COMAL COUNTY COURT AT LAW #2**
Office of the Judge
150 N. Seguin, Suite 301
New Braunfels, Texas 78130

Cause #: 2019CR1545

Last Name: Childress

Date Returned: 1-26

By: [signature]

FILED FOR RECORD
2024 JAN 27 AM 10: 29

US POSTAGE $000.48

UTF

CERTIFIED TO BE A TRUE AND
CORRECT COPY.

*Bobbie Koepf*
BOBBIE KOEPP
COMAL COUNTY CLERK

PAGE 8 OF 11

APPENDIX

TAB G

## CAUSE NO. 2014CR1548

THE STATE OF TEXAS
VS.
JASON TRUMAN CHILDRESS

COUNTY COURT AT
LAW OF
COMAL COUNTY, TEXAS

### AFFIDAVIT

This is to certify that I, PRESTON DAVIS ,THE COURT BAILIFF, in and for Comal County, Texas on or after February 03, 2015, pursuant to the Order of the County Court at Law in and for Comal County, Texas, did distinctly, at the door of Comal County Court at Law in Comal County, Texas, call the name of the defendant, **JASON TRUMAN CHILDRESS**, in the above styled and numbered cause, and a reasonable time was given said Defendant after such call was made in which to appear, yet the said Defendant came not, but wholly made default.

_____
Affiant

SUBSCRIBED AND SWORN TO before me, the undersigned authority by the said COURT BAILIFF, on February 20, 2015.



**BOBBIE KOEPP, County Clerk**
County Court at Law

By _____
Deputy Clerk

BOND DATE: September 12, 2014
CASE FILED DATE:12/15/2014
SID NUMBER:

CERTIFIED TO BE A TRUE AND CORRECT COPY.

*Bobbie Koepp*
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE 9 OF 11



APPENDIX

TAB H

## CAUSE NO. 2014CR1548

**THE STATE OF TEXAS**　　　　　　　　　　**COUNTY COURT**

**VS**　　　　　　　　　　　　　　　　　　　**AT LAW NO. 2**

**JASON TRUMAN CHILDRESS**　　　　　　　**COMAL COUNTY, TEXAS**

### ORDER FOR ARREST
### FAILURE TO APPEAR

On February 03, 2015, it appearing to the court that JASON TRUMAN CHILDRESS, has FAILED TO APPEAR, it is HEREBY ORDERED by the Court that said Defendant, JASON TRUMAN CHILDRESS, be arrested and detained in the Comal County Jail or other appropriate facility of detention until he can be brought before this Court.

The Clerk of this Court is directed to issue a Capias directing the proper officer to arrest JASON TRUMAN CHILDRESS, in accordance with this order.

Signed this the ____ day of _____, 20__.

_____
**PRESIDING JUDGE**

**BOND AMOUNT: $ 3,500** ____ **CASH OR SURETY ONLY**

CERTIFIED TO BE A TRUE AND CORRECT COPY.

*Bobbie Koepp*
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE 10 OF 11



APPENDIX

TAB I

CAUSE NO. <u>2014CR1548</u>
ALIAS CAPIAS

**THE STATE OF TEXAS**          **FILE COPY**          IN THE COUNTY COURT AT
VS.                                                    LAW OF
**JASON TRUMAN CHILDRESS**                             COMAL COUNTY, TEXAS

The State of Texas, To any Peace Officer of the State of Texas, Greetings:
YOU ARE HEREBY COMMANDED to take the body of

**JASON TRUMAN CHILDRESS**
**461 CO ROAD 309**
**VALLEY VIEW TX 76272**

if found in your County, and him safely keep, or so provide that you have him before the
Honorable County Court at Law of COMAL County, at the courthouse of said county, in the City
of NEW BRAUNFELS, immediately then and there to answer the State of Texas upon information
charging him with Violation of Promise to Appear on February 03, 2015 for the Charge of

**VIOLATION OF PROMISE TO APPEAR/ FAIL TO IDENTIFY FUGITIVE FROM JUSTICE**

a misdemeanor, filed in our said Court on December 15, 2014

Herein Fail Not, and make due return of this writ.
WITNESS: BOBBIE KOEPP, Clerk of said County Court, and the seal thereof on this the 2nd day
of March, 2015

Attest:

**BOBBIE KOEPP, County Clerk**
COMAL COUNTY TEXAS

By:_____
Deputy Clerk

---

SHERIFF'S RETURN

Received this writ on the _____ day of _____, 20_____, and I executed the same on the
_____ day of _____, 20_____, by taking the body of the within named
Defendant_____



BOB HOLDER, SHERIFF
COMAL COUNTY, TEXAS

By_____Deputy

**BOND $3,500.00 CASH OR SURETY ONLY**

**RACE WHITE**
**SEX: MALE**
**DOB: 07/14/1980**
**DL NO: 17055435**
**PID NO: 1747793**
**OFFENSE DATE: September 04, 2014**
**TRN: 9213066511**

STATE OF TEXAS
COUNTY OF COMAL
I certify this to be a true and correct
copy of the record FILED in the
Official Court records of County Court
at law on this date and time stamped
thereon.

*Bobbie Koepp*
Bobbie Koepp
County Clerk
By:_____

CERTIFIED TO BE A TRUE AND
CORRECT COPY.

*Bobbie Koepp*
BOBBIE KOEPP
COMAL COUNTY CLERK
PAGE _11_ OF_11_

ENTERED



APPENDIX

TAB J

# Affidavit for Countercomplaint

I, Jason Truman Childress, hereinafter, Affiant, declare, certify, verify, and state that I am a living man of lawful age and competent to testify, and that I have personal knowledge of the following facts which are true and correct based upon my knowledge and belief, which knowledge and belief I believe to be true:

1. On September 4, 2014 at around 6:00 p.m., an unknown Individual, hereafter referred to as Intruder, entered a home Affiant was house-sitting for its owner Jay Goodfriend, at 567 Avenue A, on New Braunfels, Comal County, Texas.
2. Intruder, by intrusion of its entire body entered inside the home without effective consent from either Jay Goodfriend or Affiant.
3. Intruder, was later identified via documents produced by the New Braunfels Police Department in Response to an Open Records / Public Information Request, as either Kevin M. Schoch / Kevin Shock (documents produced refer to Intruder as both Kevin Schoch and Kevin Shock).
4. Intruder is an ex-Dallas County Deputy Constable fired in 2011 for committing the offense, Driving While Intoxicated.
5. Affiant gave "notice" to Intruder through use of oral communication for it to exit and leave the home.
6. Intruder refused to exit and leave the home.
7. Affiant attempted to remove Intruder from the home by forcing it out of the home through the front door by pushing Intruder through the front doorway.
8. Intruder, after being removed from the home blocked Affiant from closing the door thereto, by placing its foot in between the door and door frame, thereby, preventing Affiant from closing the door and securing the home.
9. Intruder stated it was an OFFICER FOR DALLAS COUNTY.
10. Intruder stated it was in possession of a warrant.
11. Intruder stated the alleged warrant was in connection with a pending case in DALLAS COUNTY.
12. Affiant stated to Intruder that litigation and testimony pertaining to the alleged pending case in DALLAS COUNTY were pending in federal court, in the district court of the United States, WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION.
13. Affiant stated to Intruder, Affiant is a witness involved in the pending litigation and testimony in the federal court.
14. Affiant stated to Intruder that it did not possess any warrant.
15. Affiant stated to Intruder that there was no warrant in the court record of arrest of any party involved with the alleged pending case in DALLAS COUNTY.
16. Affiant stated to Intruder that it was tampering with a witness by and through coercion to secret Affiant to a jail in order to prevent Affiant from testifying in the pending federal court proceedings. [Tampering with a witness]
17. Affiant demanded Intruder identify himself by producing a badge, photo identification and business card, as well as, the warrant Intruder claimed was in his possession.
18. Affiant demanded the aforementioned identification due to the fact there was no marked police vehicle in front of the home, or any car for that matter, and Intruder was not in police uniform, rather, blue jeans and gray shirt.
19. Intruder refused to produce any form of identification.

20. Intruder refused to produce the warrant Intruder claimed to be in possession of.
21. Affiant demanded Intruder either leave the home or that Intruder produce the aforementioned identification and the warrant Intruder claimed to be in possession of.
22. Intruder continued to identify itself as an OFFICER of and for DALLAS COUNTY.
23. Intruder continued to refuse to produce any form identification. [Impersonating Pub. Servant]
24. Intruder knew it was not an OFFICER for or of DALLAS COUNTY.
25. Intruder intended to induce Affiant to submit to its pretended official authority.
26. Intruder continued to refuse to produce the warrant Intruder claimed to be in possession of.
27. Affiant commanded Intruder through oral communication to remove its foot and to leave the home.
28. Intruder refused to remove its foot and leave the home. [Criminal Trespass]
29. Affiant then kicked Intruder's foot, thereby, removing it from between the door and door frame allowing Affiant to close and lock the front door.
30. Intruder began threatening Affiant.
31. Intruder began stating it was going to call the U.S. Marshalls service and local tactical team to "storm the house."
32. Affiant again demanded the aforementioned identification and warrant Intruder claimed to be in possession of, be produced.
33. Intruder stated to Affiant that it was "sick of Affiant's games" and was now calling the U.S. Marshalls service and local tactical team to "storm the house" and remove Affiant therefrom. [Obstruction or Retaliation – unlawful act of false arrest, unlawful restraint and unlawful imprisonment]
34. Intruder exited the porch area of the home and headed towards the south side of the front of the home.
35. Affiant obtained a video camcorder that was within the home and headed to the front-corner bedroom having a clear view of the south side of the home and began recording Intruder.
36. Affiant recorded Intruder open a door to a black SUV parked at the south side of the home in front of the neighboring home.
37. Intruder was recorded removing a firearm and bullet proof vest and affixing the vest to Intruder's torso.
38. Intruder was recorded using its cell phone.
39. It was later determined through documents produced by the New Braunfels police department Intruder was contacting and requesting aid of officers of and for the New Braunfels police department.
40. Intruder was then recorded entering into the back yard of the home through a fence gate thereto. [Criminal Trespass, Second Count]
41. Intruder was recorded entering into the enclosed back porch of the home.
42. Affiant opened the back door slightly and allowed Intruder to see that it was now being recorded.
43. Intruder began stating that it was not at the home to make an arrest.
44. Intruder began stating that it was there in order to gain a signature to a "PR Bond." [Attempted Simulated Legal Process]

45. Affiant again demanded the aforementioned identification be produced, as well as, the warrant Intruder claimed to be in possession of and the alleged "PR Bond."
46. Intruder stated that it would produce its identification, the alleged warrant and alleged "PR Bond", if Affiant would meet Intruder back at the front door.
47. Affiant stated that he would meet Intruder and would receive the demanded identification, alleged warrant and alleged "PR Bond."
48. Affiant recorded the aforementioned conversation and further recorded Intruder leave the enclosed back porch of the home.
49. Affiant went to the front door of the home.
50. Affiant opened the front door to receive Intruder's identification, alleged warrant and alleged "PR Bond."
51. Affiant was dragged out of the home and thrown down on to the front porch.
52. Intruder, now, and hereafter referred to as, Assailant, climbed onto the back of Affiant, intentionally and knowingly restraining Affiant by force so as to interfere substantially with the Affiant's liberty.
53. Assailant began hitting Affiant on and about the back of his head. [Assault, displaying weapon; Agg. Assault]
54. Assailant began to choke Affiant, preventing Affiant from nasal or oral breathing, thereby creating a substantial risk that causes death.
55. During the commission of Intruder's assault on Affiant, Intruder was exhibiting a deadly weapon, i.e., "pistol in a holster."
56. Assailant placed its forearm over the mouth and nose of Affiant and placed a call to 9-1-1.
57. Affiant, in an attempt to breath, bit Assailant.
58. When the 9-1-1 operator answered the Assailant's call, Affiant began yelling and screaming for help, stating that Affiant was being attacked by an unknown individual claiming to be an OFFICER of DALLAS COUNTY.
59. Affiant was told by the 9-1-1 operator to calm down and remain quiet.
60. Affiant continued his plea for aid and assistance.
61. Moments later, Affiant could hear sirens.
62. And moments after hearing said sirens, Affiant observed several police vehicles arrive at the home.
63. Three individuals in police uniforms ran up and on to the front porch and began hitting and kicking Affiant.
64. Affiant's hand were then placed behind his back and handcuffed.
65. Affiant was picked up by his cuffed arms and sat forcefully down on to the front porch steps.
66. Affiant was questioned, without being marandized and was commanded by an unknown New Braunfels police officer to be witness against himself by giving his name.
67. Affiant refused to give his name.
68. All individuals present at the home were in absence of any warrant.
69. Affiant had not committed any crime in the presence or view of any individual present at the home.
70. Affiant, pursuant to Bill of Rights and pertinent to the constitution for the united states fifth (5th) Amendment and fourteenth (14th) amendment, and United States Supreme

Court rulings in *Brown v. Texas*, 443 U.S. 47 (1979) and *Koelander v. Lawson*, 461 U.S. 352 (1983) was not required to provide his name or any form of identification.

71. Affiant began stating that Assailant had entered the home without consent and had removed Affiant therefrom, and began attacking Affiant.

72. Affiant stated that when the officers arrived, they had a duty to prevent said attack and not to aid therein.

73. Other unknown New Braunfels police officers began demanding Affiant to be a witness against himself by providing his name and identification.

74. Affiant refused to be a witness against himself.

75. Affiant was threatened with being placed in jail if Affiant refused to be a witness against himself by providing his name.

76. Affiant refused to be a witness against himself.

77. An unknown New Braunfels police officer placed shackles upon Affiant's ankles and placed Affiant in a New Braunfels police vehicle.

78. Affiant was transported directly to the Comal County jail by an unknown New Braunfels police officer.

79. When Affiant arrived at Comal County jail, Affiant was threatened by jailers, thereof, to withhold Affiant from the magistrate unless and until Affiant gave witness against himself by providing his name.

80. Affiant refused to be a witness against himself.

81. Affiant was placed in a cell.

82. Affiant was awoken by being kicked by an unknown jailer who commanded Affiant to be a witness against himself and proved Affiant's name.

83. Affiant refused to be a witness against himself and was placed back into the cell.

84. Affiant was again awoken by being kicked by the same unknown jailer who again commanded Affiant to be a witness against himself and provide Affiant's name.

85. Affiant refused to be a witness against himself.

86. Affiant was again awoken by another unknown jailer who commanded Affiant to exit the cell in order to be photographed and fingerprinted.

87. Affiant was taken into a room by the unknown jailer.

88. Affiant began stating that the New Braunfels police officers present at the home had committed crimes against Affiant and that the unknown jailer was now aiding them and was also committing the offense of THEFT OF IDENTITY by taking Affiant's photo and fingerprints without his consent and for no legal or lawful purpose, and only in order to compel Affiant to be a witness against himself.

89. Affiant was physically threatened and placed back in the cell.

90. Affiant was again removed by the unknown jailer that had kicked and physically threatened Affiant and took Affiant's photograph and finger prints.

91. Affiant was commanded to sign his name on the fingerprint card.

92. Affiant signed the card under duress and through coercion and stated same by writing "under D on C" upon and fingerprint card.

93. Affiant was brought before an unknown individual alleging to be magistrate.

94. The alleged magistrate informed Affiant of the bail set.

95. Affiant presented questions to the alleged magistrate.

96. Alleged magistrate responded by preventing Affiant from being heard by commanding an unknown jailer present to keep Affiant quiet.
97. Affiant was placed back in a cell.
98. Affiant was released on September 14, 2014 and transported to Dallas County.
99. Affiant is under current threat of being Maliciously Prosecuted by an unknown "prosecutor" in an unknown County Court AT Law of and in, Comal County, Texas.
100. Threat of Prosecution of Affiant is Malicious as Affiant has received no Summons or Service of Process, or any Process, or any proper or efficient Pleading.
101. Affiant has been harmed by the acts of Assailant, as well as, acts and omissions of the New Braunfels Police Department officers, jailers of and for Comal County Jail and unknown alleged magistrate.

**Affidavit for Countercomplaint**

## VERIFICATION

Executed without the United States:

I, Jason Truman Childress, do declare, certify, verify and state under penalty of perjury under the laws of the United States of America that I am a living man, of lawful age and competent to testify, and that I have personal knowledge of the foregoing facts which are true and correct, based upon my knowledge and belief, which knowledge and belief I believe to be true.

Pursuant to 28 U.S. Code § 1746 (a)

Executed on this **23rd** day of ___March___ of 20**15**.

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas

## CERTIFICATE OF SERVICE

I, Jason Truman Childress, Sui Juris (not Pro Se), hereby certify, under penalty of perjury, under the laws of the United States of America, without the federal corporation, "United States", 28 U.S.C. § 3002 (15), that I am at least 18 years of age, a Denizen to the United States of America, and that I personally served the following document(s):

1. **Affidavit for Countercomplaint**
2. **AFFIDAVIT OF COUNTERCOMPLAINT**
3. **TABLE OF AUTHORITIES: POLICE REPORTS ARE HEARSAY**
4. **TABLE OF AUTHORITIES: LAW OF VOIDS IN TEXAS**

by placing one true and correct copy of said document(s) via Register Mail, Return Receipt to the following:

Kevin M. Schoch
3619 Hawthorne Trl.
Rockwall, TX 75032

*Notice to Principal is Notice to Agent;
Notice to Agent is Notice to Principal.*
Tom Wibert, Chief of Police,
Principal to & Respondeat
Superior for, NBPD Defendants
1488 South Seguin Avenue
New Braunfels, TX 78130

Abigail Lane Whitaker
Comal County Courthouse Annex
150 N. Seguin Ave., Ste. 307

Executed on this **23rd** day of ___March___ of 2015.

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas

APPENDIX

TAB K

**AFFIDAVIT OF COUNTERCOMPLAINT**

## COUNTY COURT
## AT LAW #2
## COMAL COUNTY TEXAS

| | | |
|---|---|---|
| Jason Truman Childress,<br>        Plaintiff,<br><br>   v.<br><br>KEVIN M. SCHOCH, a.k.a., KEVIN SHOCK<br>            Defendant,<br>        and<br><br>JAMES L. BELL, a.k.a, James L. Bell,<br>            Defendant,<br>        and<br><br>JOSEPH R. ROBLES, a.k.a, Joseph R. Robles,<br>            Defendant,<br>        and<br><br>JOHN M. MAHONEY, a.k.a, John M. Mahoney,<br>            Defendant,<br>        and<br><br>BRIAN W.  TURNER, a.k.a, Brian W. Turner,<br>            Defendant,<br>        and<br><br>HECTOR G. PARRA, JR., a.k.a, Hector G. Parra, Jr.,<br>            Defendant, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **Cause No.** 2014CR1548<br><br>**AFFIDAVIT OF COUNTERCOMPLAINT** |

**Page 1 of 89**

# AFFIDAVIT OF COUNTERCOMPLAINT

GARRISON D. HAYS, a.k.a, Garrison      §
D. Hays      §
     §
          Defendant,      §
     §
    and      §
     §
CHRISTOPHER M. SCOTT, a.k.a,      §
Christopher M. Scott,      §
     §
          Defendant,      §
     §
    and      §
     §
Jane Does #1 - #15      §
     §
As yet to be discovered;      §
     §
          Defendant,      §
     §
    and      §
     §
John Does #1 - #15      §
     §
As yet to be discovered;      §
     §
          Defendant,      §

## ADMINISTRATIVE NOTICE

*63C Am. Jur. 2d., Public Officers and Employees, §247* "As expressed otherwise, the powers delegated to a public officer are held in trust for the people and are to be exercised in behalf of the government or of all citizens who may need the intervention of the officer. [1]Furthermore, the view has been expressed that all public officers, within whatever branch and whatever level of government, and whatever be their private vocations, are trustees of the people, and accordingly labor under every disability and prohibition imposed by law upon trustees relative to the making of personal financial gain from a discharge of their trusts. [2]That is, a public officer occupies a fiduciary relationship to the political entity on whose behalf he or she serves. [3]and owes a fiduciary duty to the public. [4]It has been said that the fiduciary responsibilities of a public officer cannot be less than those of a private individual. [5]Furthermore, it has been stated that any enterprise undertaken by the public official who tends to weaken public confidence and undermine the sense of security for individual rights is against public policy. Fraud in its elementary common law sense of deceit –and this is one of the meanings that fraud bears [483 U.S. 372] in the statute (See, *United States v. Dial*, 757 F.2d 163, 168 (7th Cir1985)), includes the deliberate

**Page 2 of 89**

concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, including, in the case of a judge, the litigants who appear before him and if he deliberately conceals material information from them, he is guilty of fraud. *McNally v United States*, 483 U.S. 350 (1987).

COMES NOW, Plaintiff, Jason Truman Childress, and hereby states the following:

## I. <u>PRELIMINARY STATEMENT</u>

I, Jason Truman Childress, hereafter "Childress," am a living man of lawful age who is competent to testify and state that I have first hand personal knowledge of the following facts:

## II. <u>PARTIES</u>

1.      All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

2.      Childress, at all times relevant herein, lived on Texas at 567 Avenue A., New Braunfels, Texas. Childress is now living on Texas at 9141 Girstmill Ct., Fort Worth, Texas. Childress has lived on Texas for 34 years.

3.      Defendant, KEVIN M. SCHOCH, a.k.a., KEVIN SHOCK, hereafter, Schoch, at all times relevant herein, is an ex-Dallas County Deputy Constable, fired in 2011 for committing the offense Driving While Intoxicated, and is employed and, or contracted by CMMM MANAGEMENT INC, a.k.a., d.b.a., DELTA BAIL BONDS. Schoch is also currently employed, and,or contracted with, or by, E.J.R. AGENCY INC.; MJB GROUP; A CONSULTING, SECURITY, & INVESTITGATIONS, LLC; OFF DUTY SERVICES, INC.; STRIKE FORCE SECURITY; TACTICAL SYSTEMS NETWORK, LLC. Schoch's residential address is presently unknown, however, it is believed to be at, and at which Service will be made, 3619

## AFFIDAVIT OF COUNTERCOMPLAINT

Hawthorne Trl., Rockwall, Texas 75032 and Schoch is being sued in his individual capacity and official capacity.

4.      Defendants, JAMES L. BELL, JOSPEH R. ROBLES, JOHN M. MAHONEY, BRIAN W. TURNER, HECTOR G. PARRA, J.R., GARRISON D. HAYS, and CHRISTOPHER M. SCOTT, hereafter, referred to as Bell, Robles, Mahoney, Turner, Parra, Hays, and Scott, and referred to collectively as NBPD Defendants, at all times relevant herein, are Individual Persons employed and,or contracted with the NEW BRAUNFELS POLICE DEPARTMENT, a private security agency, subsidiary of NEW BRAUNFELS, CITY OF. NBPD Defendants work at 1488 South Seguin Ave, New Braunfels, Comal County, Texas 78130 and are being sued in their individual capacity and official capacity.

5.      Defendants, Jane Doe #1 − #15, at all times relevant to this Complaint are employees, agents, or private contractors of the NEW BRAUNFELS POLICE DEPARTMENT, or the Municipal Corporation NEW BRAUNFELS, CITY OF, or are employees, agents, or private contractors of the agency COMAL, COUNTY OF, or are employees, agents, or private contractors of the corporation STATE OF, TEXAS. Jane Does 1- 10, will be further identified as information becomes available. Jane Doe 1 − 10 is being sued in her individual and official capacity.

6.      Defendants, John Doe #1 − #15, at all times relevant to this Complaint are employees, agents, or private contractors of the NEW BRAUNFELS POLICE DEPARTMENT, or the Municipal Corporation NEW BRAUNFELS, CITY OF, or are employees, agents, or private contractors of the agency COMAL, COUNTY OF, or are employees, agents, or private

contractors of the corporation STATE OF, TEXAS. John Does 1- 10, will be further identified as information becomes available. John Doe 1 – 10 is being sued in his individual and official capacity.

## III. RESPONSE TO ALLEGATIONS

7.      All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

8.      Childress denies any and all allegations made against him by Defendants and further denies that this court has Personal, Political, or Subject-Matter Jurisdiction to hear matters in the above referenced Cause, or to issue any Process, warrants or otherwise, or render any judgment against Childress, in the above referenced Cause.

## IV. COURT LACKS SUBJECT MATTER AND PERSONAL JURISDICTION

9.      All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

10.     This court is, and has been since the onset, without subject matter and personal jurisdiction and "There is no discretion to ignore that lack of jurisdiction." Joyce v. US, 474 F2d 215.

> "a void judgment, order or decree may be attacked at any time or in any court, either directly or collaterally." Evans v. Corporate Services, 207 Ill.App.3d 297, 565 N.E.2d 724 (2nd Dist. 1990)
>
> "A judgment or order is void where it is entered by a court which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular order or judgment, or where the order is procured by fraud..." (Id.)
>
> "If the initial judgment was one which the trial court had no power to enter, that judgment is void and may be attacked at any time in the same or any other court,

by the parties or by any other person who is affected thereby." Oak Park Nat. Bank v. Peoples Gas Light & Coke Col, 46 Ill.App.2d 385, 197 N.E.2d 73, 77 (1st Dist. 1964)

"A void judgment may be attacked at any time, either directly or collaterally." In re Marriage of Macino, 236 Ill.App.3d 886 (2nd Dist. 1992)

"A void judgment is one entered by a court without jurisdiction of the parties or the subject matter or that lacks "the inherent power to make or enter the particular order involved... A void judgment may be attacked at any time, either directly or collaterally" People v. Wade, 116 Ill.2d 1, 506 N.E.2d 954 (1987)

"Courts are constituted by authority and they can not go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are 354*354 not voidable, but simply void, and this even prior to reversal." Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 41 S.Ct. 116 (1920)

"[a] court ha[s] no jurisdiction to proceed if the judgment it rendered was void for the want of the due process of law required by the Fourteenth Amendment. If the defendant had no such actual, legal notice [the] court was without jurisdiction; [judgment] was void as wanting in due process of law." Old Wayne Mut. L. Assoc. v. McDonough, 204 U.S. 8, 27 S.Ct. 236 (1907)

"...[it is a] well-established rule that a void judgment may be attacked directly or collaterally in any court at any time so long as the party is properly before the court. That rule allows courts to protect their integrity, to guard against fraud, and to prevent or correct the entry of judgments made, in fact, without authority." People ex rel. Brzica v. Village of Lake Barrington, 644 N.E.2d 66 (Ill.App. 2 Dist. 1994).

11.     Jurisdiction is a prerequisite for a court to have official authority and power to decide matters in cases, issue subpoenas, summons, warrants, orders and judgments, etc.. To decide a case, a court must have a combination of subject (subjectam) and either personal (personam) or territorial (locum) jurisdiction.

"A judgment rendered by a court without personal jurisdiction over the defendant is void. It is a nullity. [A judgment shown to be void for lack of personal service on the defendant is a nullity.]" Sramek v. Sramek, 17 Kan. App. 2d 573, 576-77,

840 P.2d 553 (1992), rev. denied 252 Kan. 1093 (1993).

"A universal principle as old as the law is that a proceedings of a court without jurisdiction are a nullity and its judgment therein without effect either on person or property." Norwood v. Renfield, 34 C 329; Ex parte Giambonini, 49 P. 732.

"Jurisdiction is fundamental and a judgment rendered by a court that does not have jurisdiction to hear is void ab initio." In Re Application of Wyatt, 300 P. 132; Re Cavitt, 118 P2d 846.

"Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term." Dillon v. Dillon, 187 P 27.

12.     Childress is now challenging this court's jurisdiction. (see, Joyce v. US, supra).

"The [state[ trial court, by reason of [defendant's] failure to exhaust [their] administrative remedies, acquired no jurisdiction over the [their] claim. When it clearly appears that the court lacks jurisdiction, the court ha[d] no authority to reach the merits... the action should [have] be[en] dismissed for want of jurisdiction." Melo v. US, 505 F2d 1026.

"Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted." Latana v. Hopper, 102 F. 2d 188; Chicago v. New York, 37 F Supp. 150.

"Once challenged, jurisdiction cannot be assumed, it must be proved to exist." Stuck v. Medical Examiners, 94 Ca 2d 751. 211 P2d 389.

"The burden shifts to the court to prove jurisdiction." Rosemond v. Lambert, 469 F2d 416.

"A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance." Rescue Army v. Municipal Court of Los Angeles, 171 P2d 8; 331 US 549, 91 L. ed. 1666, 67 S.Ct. 1409.

13.     This court is, and has been since the onset, without jurisdiction as a result of actions by the Defendants, and the magistrate.

## A. NO REASON TO FEAR FROM CHILDRESS

**AFFIDAVIT OF COUNTERCOMPLAINT**

14.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

15.    Childress, at the time of arrest, gave neither Defendant Schoch, nor NBPD Defendants any reason to fear for their safety from him. Childress made no attempts to escape or indicated verbally or physically he would attempt to escape. A search, in absence of a Fourth (4th) Amendment warrant, of Childress was made subsequent to arrest where no weapons were found; Childress's hands and ankles were cuffed with no effort to resist; Childress did not offer any verbal threat of physical resistance or retaliation. When directed to the police car, Childress complied without physical resistance.

> "But a constable cannot justify handcuffing a prisoner unless he has attempted to escape, or unless it be necessary in order to prevent his doing so." 51 L.R.A. 216.

> "The handcuffing was utterly unlawful." Osborn v. Veitch, Foster & Fin Eng Rep 317 (1858).

## B. NO INTERVENING CIRCUMSTANCES NECESSITATING DELAY

16.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

17.    There was no flood, storm, riot, or any other intervening circumstance to necessitate NBPD Defendant's immediate attention, which would justify a delay in bringing Childress before a magistrate. Childress did not observe NBPD Defendants, through the use of police radio or cell phone, make any attempt to locate a magistrate for the purpose of securing jurisdiction to continue to hold Childress.

> "In endeavoring to take the arrested person before the magistrate, the officer must expend all the effort that a highly cautious person would employ in the same

circumstances." [FN85] <u>Robinson v. Lovell</u>, 238 S.W.2d 294 (Tex. Civ. App. Galveston 1951), writ refused n.r.e.

18.     NBPD Defendants should have exercised caution in this regard, as failure to do so could lead to personal criminal and civil liability, and has led to the latter.

> **<u>13 Am Jru Proof of Facts 3d, 21</u>**
> "Without having been directly authorized, tacitly encouraged, or even inadequately trained, police officers, like other public employees, may fall into patterns of unconstitutional conduct. This can result from a variety of factors not sufficiently traceable in origin to any fault of "municipal policy" in the Monell sense (*Monell v Dept. of Social Services*, (1978) 436 US 658, and *Soell v McDaniel*, (1987 CA4 NC) 824 F2d 1380). If these unconstitutional practices become sufficiently widespread, however, they may assume the quality of "custom or usage" which has the force of law…"

19.     If such a thing were to happen, officers might fail to exercise the necessary caution of learning the law for themselves and, thereby, be influenced to follow flawed policy. Such is the case in regard to the actions of NBPD Defendants on September 4, 2014.

> "To detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal." <u>Kominsky v. Durand</u>, 12 Atl. 2D 654 (1940).

> "But the power of detaining the person so arrested, or restraining him of his liberty, in such a case is not a matter within the discretion of the officer making the arrest. He cannot legally hold the person arrested in custody for a longer period of time than is reasonably necessary under all of the circumstances of the case, to obtain a proper warrant or order for his further detention from some tribunal or officer authorized under the law to issue such a warrant or order. If the person arrested is detained or held by the officer for a longer period of time than is required, under the circumstances without such warrant authority, he will have a cause of action for false imprisonment against the officer and all others by whom he has been unlawfully detained or held." <u>Harness v. Steele</u>, 159 Ind. 286, 64 N. E. 875.

> "Any undue delay is unlawful and wrongful, and renders the officer himself and all persons aiding and abetting therein wrongdoers from the beginning." <u>Ulvestad v. Dolphin</u>, 278 Pac. 684 (1929).

**AFFIDAVIT OF COUNTERCOMPLAINT**

20.     The law is not lacking in this matter. The requirement Childress is speaking of has been standard practice since before the Magna Carta. It can hardly be construed that NBPD Defendants, with the power to arrest a citizen, can be ignorant of this basic principal of law.

21.     NBPD Defendants did not make any effort to locate a magistrate, but rather, acted in furtherance of standing policy which directs officers to secret persons arrested, with or without a warrant, from the nearest magistrate and take them directly to jail.

## C. DUTY TO TAKE BEFORE MAGISTRATE WITHOUT UNNECESSARY DELAY

22.     All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

23.     Art. 14.06 Tex.C.Crim.Pro., directs arresting officers to take, or have taken, the arrested, with or without a warrant to the nearest magistrate.

> ART. 14.06.MUST TAKE OFFENDER BEFORE MAGISTRATE
> Except as provided by Subsection (b), in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, if necessary to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in a county bordering the county in which the arrest was made. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.

24.     Without considering the lawfulness of the warrantless arrest, for the purpose and demonstration of jurisdiction, Childress will consider and address the actions subsequent to arrest. The immediate issue addresses the duty of an arresting officer to take the accused before a magistrate to secure jurisdiction such that the State may rightfully continue to restrict the accused

at liberty.

> "[28] Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, Beck v. Ohio, at 96; Wong Sun v. United States, 371 U.S. 471, 479-482 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See, Ker v. California, 374 U.S. 23 (1963); Draper v. United States, 358 U.S. 307 (1959); Trupiano v. United States, 334 U.S. 699, 705 (1948).

> [29] Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice Is the Crime 51-62 (1972. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, e. g., 18 U. S. C. 3146 (a)(2)(5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Gerstein V. Pugh Et Al, 95 S. Ct. 854, 420 U.S. 103, 43 L. Ed. 2D 54, 1975. SCT.40602.

25.    NBPD Defendants failed to take, or to have Childress taken, directly to and before the nearest magistrate. While certain delays can be expected in certain circumstances, simple failure to seek the authority envisioned by Gerstien v. Pugh above, may not be construed as a proximate cause of reasonable delay. The seminal case on this falls under Texas State Law,  Heath v. Boyd, 141 Tex. 569; 175 S.W.2d 214; 1943 Tex. LEXIS 370.

"Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded proved would make a case of false imprisonment against Boyd. The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse, followed by Boyd. There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by telephone as to what to do, in the face of a plain statutory command as to [***13] what must be done in all cases of arrest without warrant. Art. 217, C.C.P., 1925, provides, "I each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested * * before the nearest magistrate where the arrest was made without an order." Substantially the same requirement appears in Art. 325, C.C.P., 1925, and Art. 487, P.C., 1925. Presumably, there was a magistrate in Mertzon, the county seat. Yet Boyd offers no reason why he did not take Heath before that official. Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon. If he had taken Heath to that official, he could have gotten the information and assistance he was seeking by telephone. He was under no obligation to seek advice or aid from Johnson. He was under a positive duty immediately to seek a magistrate. That such failure, unexcused, makes a case of false imprisonment, as a matter of law, is held by all the authorities. Newby v. Gunn et al, 74 Texas, 455, 12 S.W. 67; McBeath v. Campbell, 12 S.W. (2d) 118; Alamo Downs, Inc., et [***14] al v. Briggs (Civ. App.), 106 S.W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S.W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S.W. 414 (er. ref.); [**218] Karner et al v. Stump (Civ. App.), 34 S.W. 656; Petty v. Morganet al (Civ. App.), 116 S.W. 141; Bishop v. Lucy et al (Civ. App.) 50 S.W. 1029; 35 C.J.S., p. 546, sec. 31." Heath v. Boyd, 141 Tex. 569; 175 S.W.2d 214; 1943 Tex. LEXIS 370.

26.    NBPD Defendants made no due diligent effort to locate any magistrate.

"Although the failure to take the plaintiff before a magistrate would have been excused if good grounds had existed for the belief that a magistrate was not available, such was not the case since the officers made no attempt to determine whether the magistrate was or would make himself available." Roberts v Bohac, 574 F.2d 1232.

27.    Irrespective of any other states, Texas has specific legislation concerning this requirement to take the accused before a magistrate. Not only must the arresting officer exhaust the available magistrates in the county, the consideration of the availability of a magistrate must be extended

to include every surrounding county (See, Tex.Crim.Pro., Article 14.06, supra).

> The record offers, as the government's only justification, evidence that the magistrate, who issued the warrants, advised of his unavailability after the early evening of Friday, September 8, 1989. There are three other magistrates in the District. The record is bereft of any evidence as to their availability. Likewise, the record is bereft of any evidence as to the availability of any of the district Judges. N5 Absent evidence of other than the unavailability of the duty magistrate (the propriety of which is not here questioned), there is no basis to find that the delay for the entire period from [*20] the arrest to presentment was necessary. To be sure, it was a weekend. The court was closed. But those facts do not entitle the government to presume the absence of an obligation to try to arrange the appearance of an arrestee before one of the other possible judicial officers. The law remains a force in life even outside usual business hours and all judicial officers have the obligation to respond to the needs of parties as they are mandated by the law. Defendant to their reasonable non-judicial activities, all judicial officers stand ready to fulfill that obligation. Here, the government has not shown the unavailability of all the possible judicial officers. The obligation of complying with the law lies with the government, which thus has the burden of proving that an arrestee was brought before a judicial officer without unnecessary delay. Its proof of the unavailability of one judicial officer does not prove that the delay to the next regular business hours, some sixty to sixty-five hours later, did not constitute unnecessary delay if it does not exhaust the possibility of an appearance before one of the other judicial officers in the district. See United States v. Colon, 835 [*21] F.2d 27, 30-31 (2d Cir. 1987). *United States v. Morgan*, et al. 1990 U.S. Dist. LEXIS 6206.

28.     NBPD Defendants, acting in accordance with established police policy, took Childress directly to jail, having made no effort to locate a magistrate for the purposes stipulated by Art. 14.06 and the federal requirement articulated by Gerstien v. Pugh, supra.

> "The power to arrest does not confer upon the arresting officer the power to detain a prisoner for other purposes." Geldon v. Finnegan, 252 N.W. 372 (1934).

> "The taking of plaintiff's picture before conviction was an illegal act." Hawkins v. Kuhne, 137 NY Supp 1090, 153 App Div 216 (1912).

> "Compulsory fingerprinting before conviction is an unlawful encroachment... [and] involves prohibited compulsory self-incrimination." People v. Helvern, 215 N.Y. Supp 417 (1926).

**Page 13 of 89**

## D. NO DUE DILIGENT EFFORT TO LOCATE MAGISTRATE

29.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

30.    For the purpose of argument, even if the arrest had been proper and lawful, Defendant Schoch and NBPD Defendants became trespassers *ab inito* by violating laws relating to their occupations and office subsequent to arrest. Defendant Schoch, in absence of a warrant, entered the home Childress was within without consent from Childress or the owner of the home, coerced Childress therefrom, and assaulted him. Defendant Schoch became a criminal trespasser on the rights of Childress by violating state laws (See, Tex. Occupations Code, Sec. 1702.3867. EXECUTION OF CAPIAS OR ARREST WARRANT; OFFENSE; Tex.Pen.C., Sec. 30.05. CRIMINAL TRESPASS, Sec. 20.02. UNLAWFUL RESTRAINT, and Sec. 22.02. AGGRAVATED ASSAULT.) NBPD Defendants, after securing Childress in custody, made no due diligent effort to locate a magistrate. After securing Childress such that there was no personal safety threat to NBPD Defendants from Childress and no threat of escape, any authority of NBPD Defendants, to continue to hold Childress evaporated (See, <u>Gerstien v. Pugh</u>, supra) and NBPD Defendants had a duty to make a due diligent effort to locate a magistrate in the county in which Childress was arrested, failing that, to make an effort to locate a magistrate within an adjoining county for the purpose of securing authority to continue to hold Childress in the form of a warrant issued by an examining magistrate under Art. 16.17 Tex.Crim.Pro.. Having made no such effort, and being without any warrant, NBPD Defendants became criminal trespassers on the rights of Childress, and therefore, violated a law relating to their office (See, Tex.Pen.Code,

Sec. 39.03. OFFICIAL OPPRESSION). Even if the original arrest were proper, Defendant

Schoch and NBPD Defendants became trespassers *ab inito*.

> "Under the doctrine of trespass ab inito, where a party exceeds an authority given by law, the party loses the benefit of the justification and is considered a trespasser ab inito, although to a certain extent the party followed the authority given. The law will then operate retrospectively to defeat all acts done under the color of lawful authority. American Mortg. Corp. v. Wyman 41 S.W.2d 270 (Tex. Civ. App. Austin 1931). Thus, a person who enters on real property lawfully pursuant to a conditional or restricted consent and remains after his or her right to possession terminates and demand is made for his or her removal becomes a trespasser from the beginning, and the law will then operate retrospectively to defeat all acts done by him under color of lawful authority. Williams v. Garnett, 608 S.W.2d 794 (Tex. Civ. App. Waco 1980).

> "The rule applies to the acts of sheriffs and other officers, as well as to the conduct of private individuals." American Mortg. Corp. v. Wyman, 41 S.W.2d 270 (Tex. Civ. App. Austin 1931).

31.    As there is no false imprisonment statute in Texas, the appropriate statute is titled

Kidnapping (See, Tex.Pen.Code, Section 20.03). In as much as the act of Kidnapping was

committed while the Defendant Schoch and NBPD Defendants were displaying deadly weapons,

Defendants Schoch's and NBPD Defendant's acts were aggravated. Further, in as much as

Defendant Schoch and NBPD Defendants, the perpetrators of the act of Kidnapping, were

displaying deadly weapons at the time, the act must be considered an act in violation of Sec.

20.04 Tex.Pen.Code, titled Aggravated Kidnapping.

> "It will be an evil day for American Liberty if the theory of a government outside supreme law finds lodgement in our constitutional jurisprudence. No higher duty rests upon this Court than to exert its full authority to prevent all violations of the principles of the Constitution. *Downs v. Bidwell*, 182 U.S. 244 (1901).

> "No man or woman in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound

to obey it." *Butz v. Economou*, 98 S. Ct. 2894 (1978); *United States v. Lee*, 106 U.S. at 220, 1 S. Ct. at 261 (1882).

"Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that, in the administration of the criminal law, the end justifies the means -- to declare that the Government may commit crimes in order to secure the conviction of a private criminal -- would bring terrible retribution" *Olmstead v. United States*, 277 U.S. 438 (1928).

"The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury." *Owen v. City of Independence*, 445 U.S. 622 (1980).

"I do not understand the government to contend that it is any less bound by the obligation than a private individual would be..." "It is not the function of our government to keep the citizen from falling into error; it is the function of the citizen to keep the government from falling into error." *Perry v. United States*, 204 U.S. 330, 358.

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance, with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law are bound to obey it." *U.S. v. Lee*, 106 U.S. 196, 220 1 S. Ct. 240, 261, 27 L. Ed 171 (1882).

"Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." *Brenninger v. U.S.*, 338 US 160.

T"he Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 US 347, 357.

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring

that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Terry v. Ohio*, 392 US 1, 34 (1968).

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Id.

"Where property or evidence has been obtained through unconstitutional search and seizure, failure to return the same and to suppress the evidence learned thereby constitutes reversible error. - Boyd v. United States, 116 US 616; Weeks v. United States, 232 US 383; *Silverthorne Lumber Co. v. United States*, 251 US 385; *Gouled v. United States*, 255 US 298; *Amos v. United States*, 255 US 313.

When officers detained defendant for the purpose of requiring him to identify himself, they performed a "seizure" of his person subject to the requirements of the Fourth Amendment." *Brown v. Texas*, 443 US at 47.

"The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence. *Kurtz v. Moffitt*, 115 US 487; Elk v. U.S., 117 US 529. The rule is sometimes expressed as follows:

> "In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of the peace is about to be committed or renewed in his presence." Halsbury's Laws of England, Vol. 9 part III, 612. The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace, 1 Stephen, History of Criminal Law, 193..." *Carrol v. U.S.*, 267 US 132, 157.

"It is monstrous that courts should aid or abet the lawbreaking police officer. It is abiding truth that '[n]othing can destroy a government more quickly than its own failure to observe its own laws or worse, its disregard of the charter of its own existence.'" Justice Brennan quoting Mapp v. Ohio, 367 US 643, 659 (1961) in *Harris v. New York*, 401 US 222, 232. (1971).

"Constitutional provisions for the security of person and property should be liberally construed." *Boyd v. U.S.*, 116 US 616 (1886).

"...and it is the duty of the courts to be watchful for the constitutional rights of the

citizen, and against any stealthy encroachments thereon." *Byars v. U.S.*, 273 US 28 (1927).

"Where rights secured by the Constitution are involved, there can be no 'rule making' or legislation which would abrogate them." *Miranda v. Arizona*, 384 U.S. 426, 491; 86 S. Ct. 1603.

## E. COURT PROCEEDINGS HELD IN SECRET

32.     All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

33.     Childress, after being arrested and booked into the jail, was eventually brought before a magistrate the next morning. At said appearance criminal accusations were read to Childress wherein he was officially charged with committing criminal acts against the laws of the State of Texas. Then, Childress was notified of the amount of bail which had been set. At said hearing, when Childress first observed magistrate, the court was in possession of a file from which the magistrate read the allegations against Childress. This raises a question: Where, how, and by what legal mechanism did the court accept into evidence, allegations against Childress outside the presence of Childress who was under the absolute control of the State at the time?

> The Texas Code of Judicial Conduct further provides that, except as authorized by law, a judge shall not directly or indirectly initiate, [**46] permit, or consider *ex parte* or other private communications concerning the merits of a pending or impending judicial proceeding. TEXAS SUPREME COURT, *CODE OF JUDICIAL CONDUCT,* Canon *3A (5). Ex parte* communications are "those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter. They are barred in order to ensure that 'every person who is legally interested in a proceeding [is given the] full right to be heard according to law'." JEFFREY M. SHAMAN, ET AL., JUDICIAL CONDUCT AND ETHICS, § 6.01 at 145 (1990). The principle underlying such prohibition, as it regards the disposition of criminal matters is quite simple: the disposition of criminal matters is the public's business and ought to be conducted in public in open court. See, *Tamminen v. State,* 644 S.W.2d 209; 217 (Tex.App.--San Antonio

1982), aff'd in part and rev'd in part, 653 S.W.2d 799 (Tex.Crim.App. 1983); TEX. CODE CRIM. PROC. ANN. art. 1.24 (Vernon 1977).

Private adjudications fly in the face of our judicial system's abiding commitment to providing public access to civil and criminal proceedings and records. See, *Gannett Co. v. DePasquale,* 443 U.S. 368, 61 L. Ed. 2d 608, 99 S. Ct. 2898 (1979). Our form of government is rooted in a recognition of the importance of open and public proceedings. Subjecting judicial proceedings to public scrutiny accomplishes two important goals. First, it provides the public with an opportunity to exercise its right to monitor and evaluate its judicial system. Second, and equally important, a judge's knowledge that his or her actions are not shrouded in secrecy fosters a stronger commitment to strict conscientiousness in the performance of judicial duties. Our courts have recognized that secret tribunals exhibit abuses that are absent when the public has access to judicial proceedings and records. See, *Express-News Corp. v. Spears,* 766 S.W.2d 885, 890 (Tex.App.--San Antonio 1989, orig. proceeding [leave denied]) Cadena, C.J. dissenting. The judiciary has no special privilege to suppress or conduct in private proceedings involving the adjudication of causes before it. [**48] In fact, such secrecy frustrates the judiciary's responsibility to promote and provide fair and equal treatment to all parties. Individual Judges are charged with the task of adjudicating claims in a manner that protects the rights of both parties. A judge's private [*497] communications with either party undermine the public's right to evaluate whether justice is being done and removes an important incentive to the efficient resolution of cases. *In Re, John M. Thoma, Judge, County Court At Law No. 1 Galveston County, Texas, Respondent,* 873 S.W.2d 477; 1994 Tex. LEXIS 159.

## F. EXAMINING TRIALS REQUIRED BY TEXAS LAW

34. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

35. In Texas, notwithstanding practices in other states, probable cause is only found and bail set by a magistrate through an examining trial, the procedures for which are laid down in Ch. 16, Tex.Crim.Pro.. The chapter has been carefully crafted by the Texas Legislature to install safeguards so as to insure the rights of the accused are upheld and that the accused is protected from abuses by the governmental, corporate instruments The People have created to enforce the

criminal laws. Nothing in Ch. 16, or any other chapter of the Tex.C.Crim.Proc., authorizes examining trials to be held in secret.

36.     The first thing that must happen in the convening of a hearing by a magistrate is that all parties must be present. In order for the magistrate to be in possession of a file containing details of a criminal allegation against Childress, the magistrate had to receive that file from somewhere. So, where and how did the magistrate get the file, and how did the documents in the file get entered into evidence against Childress if not in a public hearing?

> **Art. 16.07. SAME RULES OF EVIDENCE AS ON FINAL TRIAL**
> The same rules of evidence shall apply to and govern a trial before an examining court that apply to and govern a final trial.

37.     Either there are some secret practices and procedures not codified, or the magistrate came into possession of evidence outside the legal structures put in place to safeguard and to protect the accused from just the sort of abuse perpetrated in the magistrate court.

## G. SPECIFIC RIGHTS DENIED AS DELIBERATE CONTRIVANCE

38.     All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

39.     At the hearing wherein bail was set, no plea was requested or accepted by the court, Childress was never given opportunity to be faced with his accuser(s), nor was Childress afforded opportunity to present exculpatory evidence and Childress was not present at the hearing where probable cause was determined. Evidence was presented to the court, accepted into evidence, and a probable cause determination made in secret.

> **OVERVIEW:** Defendant was convicted of aggravated rape by a jury, based on evidence that included the testimony of the victim and her companion, who were

held at gunpoint, raped, and beaten by Defendant and other members of a motorcycle gang. During trial, the prosecutor gave the sentencing judge a "secret" police intelligence report about the gang, ex parte. Defense counsel was not allowed to see it. The court affirmed the conviction, finding that the evidence was overwhelming. Most errors were not preserved, either by failure to object in a timely manner or by objection on a ground different from that raised on appeal. The court vacated the sentence because the ex parte tender of the report violated Defendant's rights to confrontation and due process under U.S. Const. amend. VI and U.S. Const. amend. VI. The ex parte tender also constituted prosecutorial misconduct in violation of *Tex. Code Crim. Proc. Ann. art. 2.01* and the state ethics rules, judicial misconduct under the Rules and Code of Judicial Conduct, and deprived Defendant of a public trial under *Tex. Code Crim. Proc. Ann. art. 1.24* (1977). *Tamminen v. State*, 644 S.W.2d 209; 1982 Tex. App. LEXIS 5561.

40. The above is neither a difficult concept, nor is it an obscure consideration. Evidence presented *ex parte* while a party is being physically restrained from appearance, determinations made in secret, confrontation denied, and opportunity to rebut not availed goes to the heart of our legal system and directly influences the judicial machinery. No right-minded magistrate, in good faith, can consider such behavior anything but egregious and the most outrageous abuse.

## H. ARTICLE 15.17 AND SHARP PRACTICE TO BYPASS OF DUE COURSE

41. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

42. Tex.Crim.Pro., Art. 14.06, supra, refers to Art. 15.17 which I have outlined below. The paragraph outlined below is (a) of Tex.Crim.Pro., Art. 15.17:

**Art. 15.17. DUTIES OF ARRESTING OFFICER AND MAGISTRATE**
In each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall without unnecessary delay, but not later than 48 hours after the person is arrested,
(a) take the person arrested or have him taken before some magistrate of the county where the accused was arrested or, to provide more expeditiously to the person arrested the warnings described by this article, before a magistrate in any other county of this state.

(b) The arrested person may be taken before the magistrate in person or the image of the arrested person may be presented to the magistrate by means of an electronic broadcast system.

(c) The magistrate shall inform in clear language the person arrested, either in person or through the electronic broadcast system, of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial.

(d) The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel.

(e) The magistrate shall inform the person arrested of the procedures for requesting appointment of counsel. If the person does not speak and understand the English language or is deaf, the magistrate shall inform the person in a manner consistent with Articles 38.30 and 38.31, as appropriate.

(f) The magistrate shall ensure that reasonable assistance in completing the necessary forms for requesting appointment of counsel is provided to the person at the same time counsel and if the magistrate is authorized under Article 26.04 to appoint counsel for indigent Defendants in the county, the magistrate shall appoint counsel in accordance with Article 1.051.

(g) If the magistrate is not authorized to appoint counsel, the magistrate shall without unnecessary delay, but not later than 24 hours after the person arrested requests appointment of counsel, transmit, or cause to be transmitted to the court or to the courts' designee authorized under Article 26.04 to appoint counsel in the county, the forms requesting the appointment of counsel.

(h) The magistrate shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him.

(i) The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall, after determining whether the person is currently on bail for a separate criminal offense, admit the person arrested to bail **if allowed by law.**

(j) A recording of the communication between the arrested person and the magistrate shall be made. The recording shall be preserved until the earlier of the following dates:

    (1) the date on which the pretrial hearing ends;  or

    (2) the 91st day after the date on which the recording is made if the person is charged with a misdemeanor or the 120th day after the date on which the recording is made if the person is charged with a felony.

(k) The counsel for the Defendant may obtain a copy of the recording on payment of a reasonable amount to cover costs of reproduction.

(l) For purposes of this subsection, "electronic broadcast system" means a two-way electronic communication of image and sound between the arrested person

and the magistrate and includes secure Internet videoconferencing.

43.     Art. 15.17 gives the impression of covering all those things which must be done subsequent to the arrest of an accused. However, Art. 15.17 is a special statute, intended to apply to a special and relatively rare circumstance, not to the general procedures subsequent to arrest.

> "Article 15.17, V.A.C.C.P., contemplates [**33] that there will be occasions where no formal charges have been filed when the accused is taken before the magistrate." Harris v. State, 457 S.W. 2d 903; 1970 Tex. Crim. App. LEXIS 1304.

44.     Please notice Paragraph (i), and the highlighted section where it speaks of setting bail "if allowed by law."

45.     When a someone is arrested on a formal criminal allegation, bail may not be set unless there is a finding of probable cause. If no probable cause is found in the examining trail under the provisions of Ch. 16 Tex.Crim.Pro., the magistrate will have no jurisdiction over the accused and my not set bail, but rather, must release the accused at his/her liberty. If probable cause is found, a warrant must be issued and bail set.

46.     Art. 15.17 supra, for all its confusing language, provides no legal procedure for setting bail. However, the procedure prescribed for setting bail is well established. Ch. 17 Tex.Crim.Pro. at Art. 17.05 clearly states the Legislative intent in these matters:

> **Article 17.05  WHEN BAIL IS TAKEN**
> A bail bond is entered into either before a magistrate, upon an examination of a criminal accusation, or before a judge upon an application under habeas corpus;
> or is taken from the Defendant by a peace officer if authorized by ''Article 17.20, 17.21, or 17.22.

47.     Childress was not arrested on suspicion; neither was Childress being held as a material witness. Even if such were the case, before the magistrate could set bail, an examining trial must

be held.

48.     Childress had been arrested subsequent to a formal criminal allegation, booked and placed in jail, and then brought before a magistrate. This circumstance is contemplated by Article 2.11 Tex. Crim. Pro.:

> **Art. 2.11. Examining court**
> When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court.

49.     Art. 15.17, supra, may seem long, however, it is an attempt to cover those things that are normally covered in an examining trial. In one statute the Texas Legislature tried to cover those things covered in a whole chapter dedicated to examining trials. While I will refrain from quoting the whole chapter here, it is enough that Ch. 16 Tex.Crim.Pro. titled, "COMMITMENT OR DISCHARGE OF THE ACCUSED," is in place.

50.     While the magistrate had a duty to read Childress his rights under Art. 15.17, there was no provision therein, to determine probable cause, which would render lawful the setting of bail. Absent a finding of probable cause, bail could not be set.

51.     Now, back to the question: How did the criminal allegations against Childress get submitted to the magistrate outside a proper examining trial before which Childress, subsequent to the immediate restraint on his liberty, had a right to attend?

## I. PROBABLE CAUSE DETERMINATION MADE BY INFORMAL METHOD

52.     All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

53.     The magistrate accepted into evidence allegations of criminal wrongdoing against

Childress while he was being held without warrant in jail. Some person appeared before the magistrate and presented the court with evidence apparently sufficient to give a reasonable person cause to believe Childress had committed the crimes alleged, although, Childress notes and points out, that no arrest warrant from the magistrate ever issued, as the court record is void of any such warrant.

54.    Assuming Defendant Schoch and, or NBPD Defendants went before some magistrate and presented that magistrate with a criminal allegation against Childress, under what provision of law was this done? This would assume the magistrate was present the night before, before the arresting officer left for the day. If that was not the case, then who presented evidence to the court in the accuser's stead and what legal authority did that person have to present hearsay evidence to the court?

55.    While a third party may have authority to present the complaint to the court notifying same that a crime had been committed, at the examination into the sufficiency held by the magistrate subsequent to the arrest of the accused, any supporting testimony as to the facts supporting the criminal allegation had to be presented in accordance with the Tex.R.Evid.. Said testimony also had to be reduced to writing and certified by the court.

> **Art. 16.09. TESTIMONY REDUCED TO WRITING.**
> The testimony of each witness shall be reduced to writing by or under the direction of the magistrate, and shall then be read over to the witness, or he may read it over himself. Such corrections shall be made in the same as the witness may direct; and he shall then sign the same by affixing thereto his name or mark. All the testimony thus taken shall be certified to by the magistrate. In lieu of the above provision, a statement of facts authenticated by State and defense counsel and approved by the presiding magistrate may be used to preserve the testimony of witnesses.

56.     Nothing exists in the court record to authenticate testimony of a complainant to support the criminal allegation made against Childress, and any testimony within the court record is insufficient on its face for lack of verified supporting affidavit. In fact, the court record is void of any proper complaint made from a complainant with personal first hand knowledge of the entirety of the events which took place on September 4, 2014.

> "In an examining trial, the truth of the accusation may not be based on the accusation alone; such conclusion, if valid, would render the examining trial a useless thing, a mere re-enactment of the earlier determination of whether an arrest warrant should issue. Ex parte Garcia, *547 S.W.2d 271 (Tex. Crim. App. 1977).* Rather, the state must show that there is a reason to believe that an indictment will be preferred for some violation of the law. Ex parte Martin, *119 Tex. Crim. 141, 45 S.W.2d 965 (1932).* Thus, the state has the burden of proving that there is probable cause to believe the accused committed the offense charged against him or her." State ex rel. Holmes v. Salinas, 784 S.W.2d 421 (Tex. Crim. App. 1990).

57.     In either case, a hearing of some type was convened at which evidence was presented to the court *ex parte*, while Childress was present in the building but physically restrained from being present at the hearing.

58.     It is the specific allegation and contention of Childress that some person employed either by the NEW BRAUNFELS POLICE DEPARTMENT, or by the confining agency COMAL COUNTY JAIL, having no personal knowledge of the evidence, presented criminal allegations to the court and supporting evidence alleging criminal acts by Childress. It is further the contention of Childress that said presentation occurred outside a proper hearing to which Childress had a statutory right to be present at.

> Art. 16.01. EXAMINING TRIAL
> When the accused has been brought before a magistrate for an examining trial that

officer shall proceed to examine into the truth of the accusation made, allowing the accused, however, sufficient time to procure counsel. In a proper case, the magistrate may appoint counsel to represent an accused in such examining trial only, to be compensated as otherwise provided in this Code. The accused in any felony case shall have the right to an examining trial before indictment in the county having jurisdiction of the offense, whether he be in custody or on bail, at which time the magistrate at the hearing shall determine the amount or sufficiency of bail, if a bailable case. If the accused has been transferred for criminal prosecution after a hearing under Section 54.02, Family Code, the accused may be granted an examining trial at the discretion of the court.

## J. INCOMPLETE COURT RECORD

59. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

60. Subsequent to the hearing wherein probable cause was allegedly determined, the magistrate was directed by Art. 17.30 Tex.Crim.Pro., as follows:

**Art. 17.30. Shall certify proceedings**
The magistrate, before whom an examination has taken place upon a criminal accusation, shall certify to all the proceedings had before him, as well as where he discharges, holds to bail or commits, and transmit them, sealed up, to the court before which the Defendant may be tried, writing his name across the seals of the envelope. The voluntary statement of the Defendant, the testimony, bail bonds, and every other proceeding in the case, shall be thus delivered to the clerk of the proper court, without delay.

61. Childress states that there is nothing in the court record to indicate the magistrate complied with the requirement of Art. 17.30, supra. In point of fact, Childress further states that there is nothing in the court record at all that is required and there are documents missing that are required in order for the court to maintain jurisdiction. Therefore, it must be presumed that the magistrate did not forward all the records of the hearing, sealed up, to the clerk of the proper court. Said act is in direct violation of Sec. 37.10 Tex.Pen.Code:

**§ 37.10.  TAMPERING WITH GOVERNMENTAL RECORD**
A person commits an offense if he:
(a) knowingly makes a false entry in, or false alteration of, a governmental record;
(b) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record;
(c) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;

"A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is an excess of jurisdiction." Wuest v. Wuest, 127 P2d 934, 937.

"Where a court failed to observe safeguards, it amounts to denial of due process of law, court is deprived of juris." Merritt v. Hunter, C.A. Kansas 170 F2d 739.

### K. MAGISTRATE CONSPIRED WITH JAILER
### TOWARD TAMPERING WITH GOVERNMENT DOCUMENT

62.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

63.    It is the contention and specific allegation of Childress, that after the hearing wherein Childress was set to bail, the magistrate did not forward the records of the hearing to the clerk of the COMAL COUNTY COURT AT LAW #2, sealed up as required by law, but rather, returned them to the jailer.

64.    Further, it is the specific allegation of Childress that the magistrate acted in concert and collusion with the jailer(s) to deny Childress in the due course of the laws by secreting the charges against Childress from the clerk of the COMAL COUNTY COURT AT LAW #2, thereby, placing Childress in a state of legal limbo, wherein Childress found his liberty restricted by being bound to the court, his property improperly taken and unable to render actions in his behalf as there was and is no record of the above proceedings. It is as if Childress existed in a

state of limbo between arrest and trial.

## L. STATE ACTORS DISQUALIFIED

65. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

66. Defendant Schoch and NBPD Defendants, consequent to the illegal and ulawful acts performed thereby, and demonstrated herein, were and are criminal trespassers on the laws of the State of Texas and, thereby, cannot be construed as credible persons for the purpose of providing witness. By the illegal acts of Defendant Schoch and NBPD Defendants, the State was rendered without jurisdiction to pursue prosecution as a result of violations of the due course of the laws and due process secured by the federal constitution, by State licensed contractor and, or employees.

67. The jailers subjected Childress to deliberately contrived punishment subsequent to arrest and for the period of time between arrest and bringing Childress before a magistrate in violation of the due course of the laws of the State of Texas and due process secured by the federal constitution, and thereby, the confinement of Childress while he was being secreted from a magistrate absent a showing of some compelling cause beyond mere contrived policy, also rendered the State without jurisdiction to pursue prosecution.

68. The magistrate, in its turn, by denying Childress audience at the examining trial where probable cause was allegedly found and bail set, denied Childress in the due course of the laws of the State of Texas and due process secured by the federal constitution and thereby, disqualified itself, leaving both the magistrate and this court without jurisdiction to pursue prosecution in the

instant matter.

"Acts in excess of judicial authority constitutes misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process." Cannon v. Commission on Judicial Qualifications, (1975) 14 Cal. 3D 678, 694.

"Society's commitment to institutional justice requires that judges be solicitous of the rights of persons who come before the court." Geiler v. Commission on Judicial Qualifications, (1973) 10 Cal.3d 270, 286.

"Before sending a person to jail for contempt or imposing a fine, judges are required to provide due process of law, including strict adherence to the procedural requirements contained in the Code of Civil Procedure. Ignorance of these procedures is not a mitigating but an aggravating factor." Ryan v. Commission on Judicial Performance, (1988) 45 Cal. 3D 518, 533.

"No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." Ableman v. Booth, 21 Howard 506 (1859).

"Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction." Piper v. Pearson, 2 Gray 120, cited in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872).

"When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction." U.S. Fidelity & Guaranty Co., 217 Miss. 576, 64 So. 2D 697.

"When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost." Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326.

"Under federal Law, which is applicable to all states, the U.S. Supreme Court stated that 'if a court is without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification and all persons concerned in executing such judgments or sentences are considered, in law, as trespassers.'" Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828).

Tex. Crim. Pro.
Art. 3.04. OFFICIAL MISCONDUCT. In this code:
(1) "Official misconduct" means an offense that is an intentional or knowing violation of a law committed by a public servant while acting in an official capacity as a public servant.
(2) "Public servant" has the meaning assigned by Section 1.07, Penal Code.

Texas Penal Code
CHAPTER 1. GENERAL PROVISIONS
Sec. 1.07. DEFINITIONS. (a) In this code
(41) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:
(A) an officer, employee, or agent of government;
(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;

69.     As a result of Defendant Schoch's and NBPD Defendant's tortious and criminal acts, non-compliance with the Tex. Occupations Code and Tex.C.Crim.Proc., Official Misconduct, Failure to Exhaust Administrative Remedies, and Denial of Substantive and Procedural Due Process, in addition to the magistrate's non-compliance with the Tex.C.Crim.Proc., Official Misconduct, Denial of Procedural Due Process and aiding the Denial of Substantive Due Process, and a lack of any Competent Witnesses, this court lacked jurisdiction from the onset to issue and summons, warrants, etc. or to render any judgment or decision against Childress.

70.     Unlike personal or territorial jurisdiction, subject-matter jurisdiction cannot be waived and subpoenas, summons, warrants, orders and judgments, etc., from a court that did not have subject-matter jurisdiction are forever a nullity. Subject matter can never be presumed, never be waived, and cannot be constructed even by mutual consent of the parties. Subject matter jurisdiction is two parts: (1) the statutory or common law authority for the court to hear the case; and, (2) the appearance and testimony of a competent fact witness, in other words, sufficiency of

pleadings. Even if a court has or appears to have subject matter jurisdiction, subject matter

jurisdiction can be lost. Major reasons why subject matter jurisdiction is lost:

(1) "fraud upon the court." In re Village of Willowbrook, 37 Ill.App.3d 393 (1962)

"Fraud upon the court is reserved for only the most egregious misconduct, and requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Wilson v. Johns-Manville Sales Corp., 873 F.2d 868, 872 (5th Cir.), cert. denied, 493 U.S. 977 (1989). "The narrow concept of fraud upon the court... is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner." (Id.)

71. The magistrate's actions, demonstrated supra, constitute fraud, and same was perpetrated

so that the judicial machinery of the court could not, and did not, perform in the usual manner.

(2) "...a judge does not follow statutory procedure." Armstrong v. Obucino, 300 Ill

140, 143 (1921).

72. As demonstrated supra, the magistrate for the court did not follow statutory procedures

set out within the Tex.C.Crim.Proc.

(3) Unlawful activity of a judge or undisclosed conflict of interest. Code of Judicial Conduct.

73. Defendants collectively, as well as, ABIGAIL L. WHITAKER and CHARLES A.

STEPHENS, II are all representatives and, or agents of NEW BRAUNFELS, CITY OF; or

COMAL, COUNTY OF; or THE STATE OF TEXAS creating a serious Conflict of Interest.

Under the circumstances, CHARLES A. STEPHENS, II is acting as representative, agent of

NEW BRAUNFELS, CITY OF; COMAL, COUNTY OF; and, or THE STATE OF TEXAS and

"judge". It has not been disclosed by any of the aforementioned Individuals that each of them are

representatives and, or agents of Childress's adversary, and receiving compensation, therefrom, creating a conflict of interest.

> (4) "...violation of due process." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 58 S.Ct. 1019 (1938); <u>Pure Oil Co. v. City of Northlake</u>, 10 Ill.2d 241, 245, 140 N.E.2d 289 (1956); <u>Hallberg v. Goldblatt Bros</u>., 363 Ill 25 (1936).

> (5) "A judgment is void if the court that rendered it lacked jurisdiction of the parties, or if its actions resulted in a denial of due process." <u>Sramek v. Sramek</u>, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992), rev. denied 252 Kan. 1093 (1993) (citing 9 Kan. App.2d 735, Syl. ¶ 5. "A judgment that is void for lack of due process may be set aside at any time." 9 Kan. App.2d 735)

74.     Defendant Schoch caused Childress to be subjected to, and NBPD Defendants subjected Childress to, an unreasonable, illegal search and seizure, unlawful false arrest, aggravated assault, unlawful restraint, unlawful imprisonment, and denial of substantive and procedural due process. The magistrate for the state court subjected Childress to illegal court proceedings, denial of notice and confrontation, unlawful imprisonment, denial of liberty and property without due process. CHARLES A. STEPHENS, II, is threatening to further subject Childress to unreasonable, illegal search and seizure, unlawful false arrest and unlawful imprisonment, and denial of substantive and procedural due process by issuing a warrant for Childress on February 26, 2015, while lacking any jurisdiction to do so, rendering the warrant issued by CHARLES A. STEPHENS, II, void.

> (6) "...where no justiciable issue is presented to the court through proper pleadings." <u>Ligon v. Williams</u>, 264 Ill.App.3d 701, 637 N.E.2d 633 (1st Dist. 1994).

75.     The court record is void of any proper pleading, or any pleading at all, against Childress.

> (7) "...where a complaint states no cognizable cause of action against that party." <u>Charles v. Gore</u>, 248 Ill.App.3d 441, 618 N.E. 2d 554 (1st Dist 1993).

**AFFIDAVIT OF COUNTERCOMPLAINT**

76.     The court record is void of any complaint stating any cause of action against Childress. The "Police Report" made by Bell is Hearsay– See, which is attached hereto, and incorporated herein, in its entirety:

<u>TABLE OF AUTHORITIES</u>:
**POLICE REPORTS ARE HEARSAY**

and should not appear in the court record as Childress has not request that it be entered, therein. If the "Police Report" by Bell has been entered into the court record, it was entered into court record by some Individual outside the presence of Childress and without Childress's knowledge, thereby, denying Childress notice and opportunity to make objections. "A Judge...shall not directly or indirectly initiate, permit, nor consider ex parte or other private communications concerning the merits of a pending or impending judicial proceeding. A Judge shall require compliance with this subsection by court personnel subject to his or her direction and control... " Judicial Code of Conduct Cannon 3 Section A(5)

> (8) "...where service of process was not made pursuant to statute and Supreme Court Rules." <u>Janove v. Bacon</u>, 6 Ill.2d 245, 249, 218 N.E.2d 706, 708 (1955).

> (9) "The failure to properly serve parties in interest deprives the court of personal jurisdiction of the unserved parties." <u>Sramek v. Sramek</u>, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992), rev. denied 252 Kan. 1093 (1993) (citing Ford v. Willits, 9 Kan. App.2d 735, Syl. ¶ 4, 688 P.2d 1230 (1984), aff'd 237 Kan. 13, 697 P.2d 834 (1985))

77.     There has been no service of process made upon Childress by or through any of the Defendant or the court at any point. The court record is void of any service of process or proof thereof.

> (10) "...when proper notice is not given to all parties by the movant." <u>Wilson v.</u>

**Page 34 of 89**

Moore, 13 Ill.App.3d 632, 301 N.E.2d 39 (1st Dist. 1973).

78. Childress never received any notice by or through the Defendants and the court. As demonstrated above, the court never, at any point, had jurisdiction. Even in the even the court did appear to have jurisdiction, such was lost as a result of the acts of Defendant Schoch, NBPD Defendants, and the magistrate.

79. As stated and demonstrated, supra, the court is without jurisdiction and the "arrest warrant" issued by CHARLES A. STEPHENS, II is not voidable, it is simply void– See, which is attached hereto, and incorporated herein, in its entirety:

**TABLE OF AUTHORITIES:**
**VOID JUDGMENTS**

80. The "ORDER FOR ARREST-FAILURE TO APPEAR" and "CAPIAS-FAILURE TO APPEAR", "arrest warrant" issued by CHARLES A. STEPHENS, II, in absence of any jurisdiction, and are null and void, and the arrest of Childress thereon, will result in further false arrest, and his imprisonment as a result therefrom, unlawful.

> "The fact that the petitioner was released on a promise to appear before a magistrate for an arraignment, that fact is circumstance to be considered in determining whether in first instance there was a probable cause for the arrest."
> Monroe v. Papa, DC, Ill. 1963, 221 F Supp 685.

**M. PROSECUTOR NOT COMPETENT TO TESTIFY**

81. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

82. As stated and shown above, and within Childress's Affidavit for Countercomplaint, Defendants collectively as a result of their tortious and criminal acts, are disqualified as

witnesses against Childress. The Prosecutor,  ABIGAIL L. WHITAKER is also disqualified from providing witness against Childress, pursuant to the Federal and State Rules of Evidence, and pursuant to court rulings.

83.     The Prosecutor, ABIGAIL L. WHITAKER is barred as a witness against Childress by the Federal and this State's Rules of Evidence:

### Federal Rules of Evidence

Rule 601. Competency to Testify in General
Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.

Rule 602. Need for Personal Knowledge
A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.

Rule 802. The Rule Against Hearsay
Hearsay is not admissible unless any of the following provides otherwise:
   • a federal statute;
   • these rules; or
   • other rules prescribed by the Supreme Court.

### Texas Rules of Evidence

RULE 601. COMPETENCY AND INCOMPETENCY OF WITNESSES
(a) General Rule. Every person is competent to be a witness except as otherwise provided in these rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:
(1) Insane persons.
(2) Children.

RULE 602. LACK OF PERSONAL KNOWLEDGE
A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Rule 703, relating to opinion

testimony by expert witnesses.

ARTICLE VIII. HEARSAY
RULE 801. DEFINITIONS

RULE 802. HEARSAY RULE
Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.

84.     The prosecutor ABIGAIL L. WHITAKER has no personal knowledge of the events which took place on September 4, 2014, between Childress and Defendants collectively and is not a competent witness. Any offer of knowledge of those events from ABIGAIL L. WHITAKER is Hearsay and therefore, is not admissible as evidence against Childress.

85.     The following court ruling citations make it clear that an attorney cannot testify or provide facts before a court:

"An attorney for the plaintiff cannot admit evidence into the court. He is either an attorney or a witness. Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

"Manifestly, [such statements] cannot be properly considered by us in the disposition of [a] case." United States v. Lovasco, (06/09/77) 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2D 752.

"Under no possible view, however, of the findings we are considering can they be held to constitute a compliance with the statute, since they merely embody conflicting statements of counsel concerning the faces as they suppose them to be and their appreciation of the law which they deem applicable, there being, therefore, no attempt whatever to state the ultimate facts by a consideration of which we would be able to conclude whether or not the judgment was warranted." Gonzales v. Buist, (04/01/12) 224 U.S. 126, 56 L. Ed. 693, 32 S. Ct. 463.

"No instruction was asked, but, as we have said, the judge told the jury that they were to regard only the evidence admitted by him, not statements of counsel." Holt v. United States, (10/31/10) 218 U.S. 246, 54 L. Ed. 1021, 31 S. Ct. 2.

"The prosecutor is not a witness"; and he should not be permitted to add to the

record either by subtle or gross improprieties. Those who have experienced the full thrust of the power of government when leveled against them know that the only protection the citizen has is in the requirement for a fair trial." Donnelly v. Dechristoforo, 1974. SCT.41709, 56 ;416 U.S. 637 (1974).
Mr. Justice Douglas, dissenting.

"Care has been taken, however, in summoning witnesses to testify, to call no man whose character or whose word could be successfully impeached by methods known to the law. And it is remarkable, we submit, that in a case of this magnitude, with every means and resource at their command, the complainants, after years of effort and search in near and in the most remote paths, and in every collateral by-way, now rest the charges of conspiracy and gullibility against these witnesses, only upon the bare statements of counsel. The lives of all the witnesses are clean, their characters for truth and veracity un-assailed, and the evidence of any attempt to influence the memory or the impressions of any man called, cannot be successfully pointed out in this record." Telephone Cases. Dolbear v. American Bell Telephone Company, Molecular Telephone Company v. American Bell Telephone Company, American Bell Telephone Company v. Molecular Telephone Company, Clay Commerical Telephone Company v. American Bell Telephone Company, People's Telephone Company v. American Bell Telephone Company, Overland Telephone Company v. American Bell Telephone Company, (Part two of three) (03/19/88) 126 U.S. 1, 31 L. Ed. 863, 8 S. Ct. 778.

"Statements of counsel in brief or argument are not sufficient for motion to dismiss or for summary judgment." Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

"Where there are no depositions, admissions, or affidavits the court has not fact to rely on for a summary determination." (Id.)

"Professional statements of litigants attorneys are treated as affidavits, and the attorney making statements may be cross-examined regarding substance of statement and may be impeach for lack of personal knowledge, Hearsay." Frunzar v. Allied Property and Casualty Ins. Co., (Iowa 1996) 548 N.W. 2 d 880.

"The practices of an attorney filings an affidavit on behalf of his client asserting the status of the client is not approved, inasmuch as not only does the affidavit become hearsay, but it places the attorney in a position of witness thus compromising his role as advocate." Porter v. Porter, (N.D. 1979) 274 N.W. 2D 235.

"Statutes forbidding administering of oath by attorneys in cases in which they

may be engaged applies to affidavits as well." <u>Deyo v. Detroit Creamery Co.</u>, (Mich 1932) 241 N.W. 2d. 244.

86.    As a result of Defendant's, collectively, tortious and criminal acts, non-compliance, Official Misconduct, Failure to Exhaust Administrative Remedies, and Denial of Substantive and Procedural Due Process, and lack of any Competent Witnesses, this court lacks Subject Matter and Personal Jurisdiction in the instant case / cause to issue summons, warrants, etc., or to render any judgment or decision against Childress. Where there is no jurisdiction, there is no judicial function or judicial immunity (see, <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978); <u>Vickery v. Dunnivan</u>, 279 P.2d 853, (1955)).

## V. <u>FURTHER LACK OF SUBJECT-MATTER JURISDICTION</u>

**"It is the duty of the court to declare the meaning of what is written, and not what was intended to be written."** — J.*W. Seavey Hop Corp. v. Pollock*, 20 Wn. 2D 337, 348 - 49, 147 P. 2d. 310 (1944), cited with approval in *Berg v. Hudesman*, 115 Wn. 2d at 669.

### A. AMERICAN CITIZENS

87.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

88.    This Court, and all public offices, are defined under FRCP Rule 4 (j) as a FOREIGN STATE, and as defined under TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE, the Foreign Sovereign Immunities Act (FSIA) of 1976 is a United States law, codified at Title 28, § 1330, § 1332, § 1391(f), § 1441(d), and § 1602-1611.

89.    This Court is being jurisdictionally challenged and "full disclosure" of the "true" jurisdiction of this Court is now being Demanded.

90.    Any failure to disclose this Court's true jurisdiction is a violation of 15 Statutes at Large

# AFFIDAVIT OF COUNTERCOMPLAINT

249, for this Act was passed to remove The People of the united States of America from the federal citizenship under the 14th amendment (ratified by Texas on February 18, 1870, after rejection – October 27, 1866).

15 Statutes at Large, Chapter 249, enacted July 27, 1868, states the following:

**PREAMBLE** - Rights of American citizens in foreign states.

**WHEREAS**, the right of expatriation is a natural and inherent right of all people, indispensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness; and whereas in the recognition of this principle this government has freely received emigrants from all nations, and invested them with the rights of citizenship; and whereas it is claimed that such American citizens, with their descendants, are subjects of foreign states, owing allegiance to the governments thereof; and whereas it is necessary to the maintenance of public peace that this claim of foreign allegiance should be promptly and finally disavowed.

SECTION I - Right of expatriation declared.
**THEREFORE**, Be it enacted by the Senate of the and House of Representatives of the United States of America in Congress assembled, That any declaration, instruction, opinion, order, or decision of any officers of this government which denies, restricts, impairs, or questions the right of expatriation, is hereby declared inconsistent with the fundamental principles of this government.

SECTION II - Protection to naturalized citizens in foreign states.
And it is further enacted, That all naturalized citizens of the United States, while in foreign states, shall be entitled to, and shall receive from this government, the same protection of persons and property that is accorded to native born citizens in like situations and circumstances.

SECTION III - Release of citizens imprisoned by foreign governments to be demanded.
And it is further enacted, That whenever it shall be made known to the President that any citizen of the United States has been unjustly deprived of his liberty by or under the authority of any foreign government, it shall be the duty of the President forthwith to demand of that government the reasons for such imprisonment, and if it appears to be wrongful and in the violation of the rights of American citizenship, the President shall forthwith demand the release of such citizen, and if the release so demanded is unreasonably delayed or refused, it shall be the duty of the President to use such means, not amounting to acts of war, as he may think

necessary and proper to obtain or effectuate such release, and all the facts and proceedings relative thereto shall as soon as practicable be communicated by the President to Congress.

Approved, July 27, 1868

91.    As an American Citizen, Childress holds the inherent right to invoke the 11th Amendment: "The judicial power shall not be construed to extend to any suit in law or equity, commenced or prosecuted by a Foreign State." As an America Citizen, Childress, hereby claims the right of immunity inherent in the 11th amendment. The judicial power and jurisdiction shall not be construed to extend to any suit in law or equity, commenced or prosecuted by a Foreign State.

92.    This Court and the Prosecutor representing the STATE OF TEXAS are considered a FOREIGN STATE to Childress, as those offices hold a position under section three (3) of the 14th Amendment of the UNITED STATES Constitution, as well as, under the Reconstruction Act of 1867, as federal citizen(s) per Acts of Congress, 8 U.S.C. § 1483, "Restrictions on loss of nationality."

### B. OATH OF OFFICE MAKES PUBLIC OFFICIALS "FOREIGN"

93.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

94.    Those holding Federal or State public office, county or municipal office, under the Legislative, Executive or Judicial branch, including Court Officials, Judges, Prosecutors, Law Enforcement Department employees, Officers of the Court, etc., before entering into these public offices, are required by the U.S. Constitution and statutory law to comply with 5 U.S.C. § 3331

"Oath of office." State Officials are also required to meet this same obligation, according to State Constitutions and State statutory law.

95.    All oaths of office come under 22 C.F.R., Foreign Relations, Sections § 92.12 – 92.30, and all who hold public office come under 8 U.S.C. § 1481 "Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions."

96.    Under 22 U.S.C. § 611, Foreign Relations and Intercourse, a Public Official is considered a foreign agent. In order to hold public office, the candidate must file a true and complete registration statement with the State Attorney General as a foreign principle.

97.    The Oath of Office requires the public official in its foreign state capacity to uphold the constitutional form of government or face consequences:

> **Title 10 U.S.C. § 333. "Interference with State and Federal law"**
> The President, by using the militia or the armed forces, or both, or by any other means, shall take such measures as he considers necessary to suppress, in a State, any insurrection, domestic violence, unlawful combination, or conspiracy, if it—
> > (1) so hinders the execution of the laws of that State, and of the United States within the State, that any part or class of its people is deprived of a right, privilege, immunity, or protection named in the Constitution and secured by law, and the constituted authorities of that State are unable, fail, or refuse to protect that right, privilege, or immunity, or to give that protection; or
> > (2) opposes or obstructs the execution of the laws of the United States or impedes the course of justice under those laws.
> In any situation covered by clause (1), the State shall be considered to have denied the equal protection of the laws secured by the Constitution.

98.    Such willful action, while serving in official capacity, violates 18 U.S.C., § 1918:

> **Title 18 U.S.C. § 1918**:
> **"Disloyalty and asserting the right to strike against the government"**
> Whoever violates the provision of 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—

(1) advocates the overthrow of our constitutional form of government;
(2) is a member of an organization that he knows advocates the overthrow of our constitutional form of government;
shall be fined under this title or imprisoned not more than one year and a day, or both.

99.    Such willful action, while serving in official capacity also deprives claimants of "honest services":

**Title 18 U.S.C. § 1346**:
**Definition of " scheme or artifice to defraud"**
For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

100.    The following are the treaties which placed all public offices in a foreign state capacity and status under international law and under the United Nation jurisdiction:

49 Stat. 3097; Treaty Series 881: CONVENTION ON RIGHTS AND DUTIES OF STATES.

1945 IOIA – under the International Organizations Act of December 29, 1945 (59 Stat. 669; Title 22, Sections 288 to 2886 U.S.C.) the U.S. relinquished every office.

U.C.S. Title 8 – ALIENS AND NATIONALITY § 1101:
(14) The term "foreign state" includes outlying possessions of a foreign state, but self-governing dominions or territories under mandate or trusteeship shall be regarded as separate foreign states.

## C. JUDGES SERVES AS A DEBT COLLECTORS FOR THE UNITED STATES FEDERAL CORPORATION

101.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

102.    Judges hold public office under Title 28 U.S.C., Ch. 176, Federal Debt Collection Procedure:

Title 28, Chapter 176, Federal Debt Collection Procedure, Section § 3002.
As used in this chapter:

(2) "Court" means any court created by the Congress of the United States, excluding the United States Tax Court.

(3) "Debt" means—

(A) an amount that is owing to the United States on account of a direct loan, or loan insured or guaranteed, by the United States; or

(B) an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States;

(8) "Judgment" means a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt.

(15) "United States" means—

(A) a Federal corporation;

(B) an agency, department, commission, board, or other entity of the United States; or

(C) an instrumentality of the United States.

103. Title 22 U.S.C. § 286. "Acceptance of membership by United States in International Monetary Fund," states the following:

> The President is hereby authorized to accept membership for the United States in the International Monetary Fund (hereinafter referred to as the "Fund"), and in the International Bank for Reconstruction and Development (hereinafter referred to as the "Bank"), provided for by the Articles of Agreement of the Fund and the Articles of Agreement of the Bank as set forth in the Final Act of the United Nations Monetary and Financial Conference dated July 22, 1944, and deposited in the archives of the Department of State.

104. Title 22 U.S.C. § 286e-13, "Approval of fund pledge to sell gold to provide resources for Reserve Account of Enhanced Structural Adjustment Facility Trust," states the following:

> The Secretary of the Treasury is authorized to instruct the Fund's pledge to sell, if needed, up to 3,000,000 ounces of the Fund's gold, to restore the resources of the Reserve Account of the Enhanced Structural Adjustment Facility Trust to a level that would be sufficient to meet obligations of the Trust payable to lenders which

have made loans to the Loan Account of the Trust that have been used for the purpose of financing programs to Fund members previously in arrears to the Fund.

## D. NOTICE OF FOREIGN STATE STATUS OF THE COURT

105. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

106. This court, pursuant to the Federal Rules of Civil Procedure (FRCP) Rule 4 (j), is, in fact and at law, a FOREIGN STATE as defined in Title 28 U.S.C. § 1602, et. Seq., The F.S.I.A. of 1976 (Pub. L. 94-583), and, therefore, lacks jurisdiction in the above referenced case. Childress places before this Court the following legal definitions and terms:

**Foreign Court**: The courts of a foreign state or nation. In the United States, this term is frequently applied to the courts of one of the States when their judgment or records are introduced in the courts of another.

**Foreign jurisdiction**: Any jurisdiction foreign to that of the forum; e.g., a sister state or another country. Also, the exercise by a state or nation jurisdiction beyond its own territory. Long-arm service of process is a form of such foreign or extraterritorial jurisdiction.

**Foreign laws**: The laws of a foreign country, or of a sister state. In conflicts of law, the legal principles of jurisprudence which are part of the law of a sister state or nation. Foreign laws are additions to our own laws, and in that respect are called "jus receptum."

**Foreign corporation**: A corporation doing business in one State though chartered or incorporated in another state is a foreign corporation as to the first state, and, as such, is required to consent to certain conditions and restrictions in order to do business in such first state. Under federal tax laws, a foreign corporation is one which is not organized under the law of one of the States or Territories of the United States. I.R.C. § 7701 (a) (5). Service of process on foreign corporation is governed by the Fed. R. Civ. P. 4  See also Corporation.

**Foreign service of process**: Service of process for the acquisition of jurisdiction by a court in the United States upon a person in a foreign country is prescribed by

Fed R. Civ. P. 4 (i) and 28 U.S.C.A. § 1608. Service of process on foreign corporations is governed by Fed. R. Civ. P. 4(d) (3).

**Foreign states**: Nations which are outside the United States. Term may also refer to another state; i.e. a sister state.

**Foreign immunity**: With respect to jurisdictional immunity of foreign states, see 28 USC, Sec. §1602 et seq. Title 8 USC, Chapter 12, Subchapter I, Sec. §1101(14) The term "foreign state" includes outlying possessions of a foreign state, but self-governing dominions or territories under mandate or trusteeship shall be regarded as separate foreign states.

**Profiteering**: Taking advantage of unusual or exceptional circumstance to make excessive profit; e.g. selling of scarce or essential goods at inflated price during time of emergency or war.

**Person**: In general usage, a human being (i.e. natural person) though by statute the term may include a firm, labor organizations, partnerships, associations, corporations, legal representative, trusts, trustees in bankruptcy, or receivers. National Labor Relations Act, §2(1).

**Definition of the term "person"**: under Title 26, Subtitle F, Chapter 75, Subchapter D, Sec. Sec. §7343 — The term "person" as used in this chapter includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs. A corporation is a "person" within the meaning of equal protection and due process provisions of the United States Constitution.

107.    Childress, the "real party in interest" hereby demands full disclosure of the true and limited jurisdiction of this court. Any such failure violates 18 U.S.C. §1001, 1505, and 2331.

Fraud is deceit, deception, artifice, or trickery operating prejudicially on the rights of another, and so intended by so inducing him to part with property or surrender some legal right. *23 Am J2d Fraud § 2*. Anything calculated to deceive another to his prejudice and accompanying the purpose, whether it be an act, a word, silence, the suppression of the truth, or other device contrary to the plain rules of common honesty. *23 Am J2d Fraud § 2*. An affirmation of a fact rather than a promise or statement of intent to do something in the future. *Miller v. Sutliff*, 241 III 521, 89 NE 651.

108.    There are three different and distinct forms of the "**United States**" as revealed by the following:

> "The high Court confirmed that the term "United States" can and does mean three completely different things, depending on the context." *Hooven & Allison Co. vs. Evatt*, 324 U.S. 652 (1945) & *United States v. Cruikshank*, 92 U.S. 542 (1876) & *United States v. Bevans*, 16 U.S. 3 Wheat. 336, 336 (1818).

109.    The Court and its officers have failed to state which United States they represent, since they can represent only one, the Federal Debt Collection Procedure, as a corporation, the United States, Inc., and it's satellite corporations have no jurisdiction over Childress, an American Citizen. (See,  Penhallow v. Doane's Administrators, infra) Childress, a belligerent claimant, hereby asserts that he has the right of immunity inherent in the 11th amendment:

> "*The judicial power shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens of any Foreign State.*"

110.    This Court is a business, corporation for profit, a subsidiary of JUDICIARY COURTS OF THE STATEF OF TEXAS, (DUNS# 36-070-5040) which is a corporate subsidiary of the STATE OF TEXAS (DUNS# 00-253-7595), evidenced by Dun and Bradstreet Credit Reports. As a result of this Court's corporate status, it cannot concern itself with Childress, as he is not an artificial person, rather, is a constituent, member of The People; Childress is tangible, therefore, this Court cannot obtain parity therewith. This Court can only concern itself with artificial persons, the intangible and only with corporate persons and the contracts between those persons.

> Inasmuch as every government is an artificial person, an abstraction, and a creature of the mind only, a government can interface only with other artificial persons. The imaginary, having neither actuality nor substance, is foreclosed from creating and attaining parity with the tangible. The legal manifestation of this is that no government, as well as any law, agency, aspect, court, etc. can concern

itself with anything other than corporate, artificial persons and the contracts between them. " S.C.R. 1795, <u>Penhallow v. Doane's Administrators</u> (3 U.S. 54; 1 L. Ed. 57; 3 Dall. 54) Supreme Court of the United States 1795.

111.    MUNICIPAL, COUNTY, and STATE COURTS lack jurisdiction to hear any case under the FOREIGN STATE definitions. The jurisdiction of FOREIGN SOVEREIGN IMMUNITY lies with the UNITED STATES DISTRICT COURT under the FSIA Statutes pursuant to 28 USC § 1330, and not within a County or State Court.

112.    Whereas, Childress is a non-corporate entity and is not registered with any Secretary of State as a CORPORATION, the Prosecution has FAILED to state a claim to which relief can be granted under Rule 12 (b) (6); it is, therefore, this matter must be dismissed for lack of political, personal, and subject matter jurisdiction, improper Venue, and under the 11th Amendment limitations.

113.    This court, by definition is a FOREIGN STATE, corporation and is erroneously proceeding against Childress, a living man, tangible, a constituent, member of The People, who is not a "person," which term is a "term of art" meaning: *a creature of the law, an artificial being, and a CORPORATION or ens legis*:

> "Ens Legis. L. Lat. A creature of the law; an artificial being, as contrasted with a natural person. Applied to corporations, considered as deriving their existence entirely from the law." – Blacks Law Dictionary, 4[th] Edition, 1951.

114.    All complaints and suits against CORPORATIONS, or an *ens legis*, fall under the aforementioned FSIA and service of process must therefore be made by the clerk of the court, under 28 U.S.C. § 1608 (a) (4), 63 stat 111, as amended (22 U.S.C. § 2658) [42 F.R. § 6367, Feb. 2, 1977, as amended at 63 F.R. § 16687, Apr. 6, 1998], to the Director of the Office of Special

**AFFIDAVIT OF COUNTERCOMPLAINT**

Consular Services in the Bureau of Consular Affairs, Department of State, in Washington, D.C., exclusively, pursuant to 22 C.F.R. § 93.1 and § 93.2. A copy of the FSIA must be filed with the complaint along with "a certified copy of the diplomatic note of transmittal," and, "the certification shall state the date and place the documents were delivered." The foregoing must be served upon the Chief Executive Officer and upon the Registered Agent of the designated CORPORATION or FOREIGN STATE.

115.    MUNICIPAL, COUNTY, and STATE COURTS lack jurisdiction to hear any case since they fall under the definition of FOREIGN STATE, and under all related definitions, supra. Said jurisdiction lies with the "district court of the United States," established by Congress in the states under Article III of the Constitution, which are "constitutional courts" and do not include the territorial courts created under Article IV, Section 3, Clause 2, which are "legislative" courts. *Hornbuckle v. Toombs*, 85 U.S. 648, 21 L. Ed. 966 (1873), (See, 28 U.S.C. Rule 1101), exclusively, under the FSIA Statutes pursuant to 28 U.S.C. § 1330.

116.    It is an undisputed, conclusive presumption that Childress is the real party in interest and is not a CORPORATION, and, further, is not registered with any Secretary of State as a CORPORATION. Pursuant to Rule 12 (b) (6), the Prosecuting Attorney has failed to state a claim for which relief can be granted, a fatal defect, and, therefore, the instant case and all related matters must be DISMISSED WITH PREJUDICE for lack of personal, political, and subject matter jurisdiction, as well as for improper Venue, as well as pursuant to the 11th amendment Foreign State Immunity.

117.    Moreover, process in the above referenced case is not "regular on its face. "Regular on its

Face – "Process is said to be "regular on its face" when it proceeds from the court, officer, or body having authority of law to issue process of that nature, and which is legal in form, and contains nothing to notify, or fairly apprise any one that it is issued without authority."

## E. COURT LACKS JUDICIAL POWER IN LAW OR EQUITY

118.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

119.    Childress points out that a Federal, State, County, or municipal government, corporation can be sued in its corporate capacity when functioning as federal debt collectors under the Fair Debt Collection Practices Act (FDCPA) and under the Clearfield Doctrine (See, *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943) ). If the Federal, State, County, or Municipal government, corporation, can claim immunity under the 11th Amendment, then the Federal, State, County or municipal government, corporations cannot use Law or Equity jurisdiction against Childress, or The People, in Court since The People, of which Childress is a member of, are not subject to a "foreign state" under 28 U.S.C., Judicial Procedure, § 1602 - 1610. The States are made up of "State Citizens," and under the 11th Amendment, "State Citizens" cannot be sued by a "foreign state."

120.    Childress also points out that Article III section 2 and the 11th Amendment of the Constitution are in conflict. A court cannot convene under Article III equity jurisdiction and then have its public officers claim 11th amendment immunity. The court is operating in a foreign state capacity against The People once the court officials take their oath, and the court officials cannot have it both ways.

**Article III Section 2**
The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors, other public ministers and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party;—to controversies between two or more states;—**between a state and citizens of another state**;—between citizens of different states;—between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

121.    The ratification of the Eleventh Amendment on February 7, 1795 effectively altered Article III Section 2, and now "**All**" public offices are using the Eleventh Amendment as a defense against being sued, whereas, the Eleventh Amendment actually removed protection since judicial power no longer extended to any suit in Law or Equity, and subsequently afforded The People the same protection as any level of government. The People cannot be charged in Law or Equity claims by anyone in the government services corporation. The court only has one action as revealed by the Rules of Civil Procedure: "Rule 2—One form of Action: There is only one form of action – the civil action." Civil action can be brought only by The People and not by any level of government.

**Amendment XI**
The judicial power of the United States **shall not be construed to extend to any suit in law or equity**, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

122.    Childress is aware of the **Stripping Doctrine**. However, the Constitution was amended again in 1868 to protect various civil rights, and Section 5 of the 14th Amendment granted Congress the power to enforce, by appropriate legislation, the provisions of that amendment. The

courts have recognized that this new amendment, again a consensus of The People, abrogates the immunity provided by the 11th Amendment. When Congress enacted legislation under the auspices of Section 5 of the 14th Amendment, they specifically abrogated 11th Amendment immunity, and states, as well as, instrumentalities thereof, can, under such federal statutes be prosecuted in federal court.

123.     Childress will refer the Court's attention to the 1875 Civil Rights Act. The Supreme Court ruled that this Congressional enactment was unconstitutional. **Civil Rights Acts** (1866, 1870, 1875, 1957, 1960, 1964, 1968) U.S. legislation. The Civil Rights Act (1866) gave African-Americans citizenship and extended civil rights to all persons born in the USA (except Native Americans). The 1870 Act was passed to re-enact the previous measure, which was considered to be of dubious constitutionality. In 1883, the US Supreme Court declared unconstitutional the 1870 law. The 1875 Act was passed to outlaw discrimination in public places because of race or previous servitude. **The act was declared unconstitutional by the Supreme Court (1883–85)**, (U.S. Supreme Court Civil Rights Cases, 109 U.S. 3 (1883) Civil Rights Cases Submitted October Term, 1882 Decided October 16th, 1888 109 U.S. 3) **which stated that the 14th Amendment, the constitutional basis of the act, protected individual rights against infringement by the states, not by other individuals**. The 1957 Act established the Civil Rights Commission to investigate violations of the 15th Amendment. The 1960 Act enabled court-appointed federal officials to protect black voting rights. An act of violence to obstruct a court order became a federal offense. The 1964 Act established as law equal rights for all citizens in voting, education, public accommodations and in federally-assisted programs. The 1968 Act

guaranteed equal treatment in housing and real estate to all citizens.

124. No level of the Executive or Judicial government has ever introduced into any Court action a real party of interest under Rule 17. The Court has no jurisdiction under Fedearal Rules of Civil Procedure Rule 12 (b) (1), (2), (3) over Childress or The People.

125. **Decision and Rationale**: The 8-1 decision of the Court was delivered by Justice Joseph P. Bradley, with John Marshall Harlan of Kentucky alone in dissent. The Court decided that the Civil Rights Act of 1875 was unconstitutional. Neither the 13th, nor the 14th amendment empowers the Congress to legislate in matters of racial discrimination in the private sector. Bradley wrote, "The 13th Amendment has respect, not to distinctions of race…but to slavery..." The 14th Amendment, he continued, applied to State, not private, actions; furthermore, the abridgment of rights presented in this case are to be considered as "ordinary civil injuries" rather than the imposition of badges of slavery. Bradley commented that "individual invasion of individual rights is not the subject-matter of the 14th Amendment. It has a deeper and broader scope. It nullifies and makes void all state legislation, and state action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws." Therefore, the Court limited the impact of the Equal Protection Clause of the 14th Amendment.

126. In a court of limited jurisdiction, whenever a party denies that the court has subject-matter jurisdiction, it becomes the duty and the burden of the party claiming that the court has subject matter jurisdiction to provide evidence from the record of the case that the court holds

subject-matter jurisdiction. <u>Bindell v. City of Harvey</u>, 212 Ill. App.3d 1042, 571 N.E. 2d 1017 (1st Dist. 1991) ("the burden of proving jurisdiction rests upon the party asserting it.").

127. Until the party instituting the action submits uncontroversial evidence of subject-matter jurisdiction to the court that the court has subject-matter jurisdiction, the court is proceeding without subject-matter jurisdiction. See, <u>Loos v. American Energy Savers, Inc</u>., supra.

**F. ADMINISTRATIVE PROCEDURE
UNDER TITLE 5 U.S.C. SUBCHAPTER II**

128. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

129. Title 28, Judiciary and Judicial Procedures, Section 1652 requires the courts to follow Acts of Congress and all Statutes; Regulations and Statutes at Large are Acts of Congress and Title 5 of the USC, likewise are the Ruling factors to all Court procedures.

129. This Court is an Article I Administrative Court and lacks judicial power for review per the Eleventh Amendment. Defendants were required to exhaust administrative remedies before moving to a judicial review on Childress. Childress was denied administrative remedies which violates judicial review and the requirement of honest service, for the Court lacks judicial power to hear this case under the Eleventh Amendment. If the Court should claim it is in fact an Article 3 Court with judicial power under Article 3 section 2, Childress's constitutionally-protected rights and statutory rights have been violated. The Court has failed to comply with protecting the rights of Childress that a reasonable person would expect under the Constitution and under the Bill Rights and the following amendments: First, Fourth, Fifth, Seventh (a suit in common law), Eighth, Ninth, Tenth, Eleventh, and the Fourteenth.

**Page 54 of 89**

130. All "judicial power" of the "inferior courts" comes from the Judiciary Act of 1789, as did the Attorney General position. "Judicial power" comes from Article III, Section 2 of the Constitution. The Eleventh Amendment removed all "judicial power" in law, equity, treaties, contract law, and the right of the State to bring suit against The People. The positions of Attorney General and Prosecutor, of both the United States and the several states, come under the Judicial branch not the Executive branch of the government.

131. All attorneys come under the Judicial branch and are judicial officers under the Supreme Court, not under the Secretary of State as licensed professionals, which means they can only represent the Court and not The People or the State. The Eleventh Amendment removed all "judicial power" from the "inferior courts" and the prosecutor's office as well as from all court officers in law, equity, and so forth. The Eleventh Amendment also makes a foreign state separation from the position of the Public Office positions. The People have Eleventh Amendment immunity, because there is NO "JUDICIAL POWER" of the "inferior courts" and The People have FOREIGN SOVEREIGN IMMUNITY.

> Article III, Sec. 2, U.S. Constitution
> "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."
>
> Eleventh Amendment
> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign State."

132. The Hearing Officer in charge is either aware, or should be aware that the Eleventh Amendment removed all "Judicial Power" from this Court, turning it into an Administrative Court and rendering all hearings administrative, with no "judicial power" to rule in OR on law, equity, treaties, contract law OR issues between the State OR the UNITED STATES and its People. The Hearing Officer is either aware, or should be aware, that the authority delegated by Article III, Section 2 of the Constitution for the United States of America was amended and revoked by the Eleventh Amendment on February 5th, 1795, of which Childress is aware of.

133. The Hearing Officer is also either aware, or should be aware, that the Offices of Attorney General and Prosecutor were created under the same Judiciary Act as were the "inferior courts." When the Eleventh Amendment removed "Judicial Power" from the Courts, it also removed "judicial power" from the prosecution. Any prosecution performed in law, equity, contract law, treaties or claims by the State against The People now constitutes Putative Fraud and Dishonest Service due to the salary contract that the public official has with The People to perform its duties as a Hearing Officer and Prosecution Officer. The contracts of the Public Officers are private contracts under the Constitution, Article I, II, and III and under the Compensation clause for services to The People.

134. It is a fact that a pleading cannot be placed before a court without "judicial power" and 12 (b) (1) or 12 (b) (2) of the FRCP and the Civil Rules of Procedure, clearly defines why there is no "judicial power" before which to make such a pleading. The Petitioner now Demands dismissal due to lack of judicial power and jurisdiction

**AFFIDAVIT OF COUNTERCOMPLAINT**

135. This Court and the Hearing Officer may only convene this court as "administrative" under Congressional mandate S.7, 60 Stat 237, the Administrative Procedure Act of 1946, so that Childress can set forth such claim of injury under Civil Rights violation, R.I.C.O., threat of a firearm to compel Childress, threat of extortion, kidnapping, assault with intent to injure, violation of domestic terrorism, and contract-default violation increasing the public debt.

## G. JURISDICTIONS UPON WHICH COURTS CAN OPERATE

136. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

137. The Federal Rules of Civil Procedures show only one cause of action exists. See, Federal Rules of Civil Procedure, Rule 2. One form of action.

138. This Court can not force Childress to a plea of not guilty, guilty, or nolo contendere. In a civil action the rules do not allow it.

139. Federal Rules of Criminal Procedure, Rule 11. Pleas; requires Childress to place a plea before the court of not guilty, guilty, or nolo contendere. Once The People place such a plea, that plea now comes under the authority of Title 50, War And National Defense, section 23 under the Trading With The Enemy Act. The Prosecutor is acting on behalf of THE STATE OF TEXAS and now is required to provide proof and evidence that such charges "ARE NOT" under the State of Emergency Clause, and the State of Emergency Banking / Bankruptcy Act of 1933. Any failure of the Prosecutor to provide such evidence within 10 days of this original filing is grounds for dismissal with prejudice for non-compliance.

140. The prosecutor has failed to disclose that such a plea would come under the jurisdiction

of the State of Emergency Clause under Public Law 1, 48 stat 1, and Public law 73-10, 40 stat 411, and under Title 50 Trading With The Enemy Act of Oct 6, 1917, and the Bankruptcy Act under Public Law 10, Ch 48, 48 stat 112.

141.    There are the three jurisdictions upon which the court may operate:

First: Article III, section 2, clause 1. However, by Act of Congress and the States ratifying the 11th Amendment the Courts have no Judicial power to hear any case in Law, Equity, or a Controversy created by the State against any Citizen of the United States. This Court is clearly operating outside any Article III capacity of the Constitution for the united States of America.

Second: Administrative jurisdiction, which involves a Department, Agency or an Administrative office as defined in 5 U.S.C. § 101 executive branch, 28 U.S.C., § 451 or in which case Childress can only be a Plaintiff, in such action per the intent and Act of Congress as an administrative hearing is to hear complaints about such executive offices.

Third: The State of Emergency and the Bankruptcy Act clauses create jurisdiction under Senate Report 93-549, Trading With The Enemy Act, under Title 50 War and National Defense, Section 23, "Jurisdiction of United States courts and judges." Under the State of Emergency the UNITED STATES is the trustee along with all public offices / officers. (See above cite 63C Am.Jur.2d, Public Officers and Employees, §247).

142.    Any action under the State of Emergency is governed by General Order 100, the Lieber Code, and UCMJ Title 10, Section 333, and per Army Regulation 840-10 Section 8.1, 8.2, and 8.3. again under Title 50 War & National Defense.

143.    The prosecution has failed to state a claim to which relief could be granted as pursuant to Rule 12 (b) (6) and the Rules of Court mandated by the "Rules Enabling Act" created by Congress. (Ch. 651, Pub.L. 73-415, 48 Stat. 1064, enacted June 19, 1934 28 U.S.C., § 2072)

a) Pursuant to this Court's procedure, defined in the TEXAS CODE OF CRIMINAL PROCEDURE, there is required, but which is absent, a sworn affidavit of probable cause that is

to be attached to a judicial determination of probable cause which shall be forwarded to the office of the Clerk of Court. Only the un-sworn, inadmissible, aggravated perjury appears in the case file.

b) Defendants Bell, Robles, Mahoney, Turner, Parra, Hays, and Scott are NEW BRAUNFELS Police Officers acting on behalf of the STATE OF TEXAS in the COUNTY OF COMAL, and are Revenue Agents and cannot summons Childress or The People to court as they are members of the executive branch, therefore they are involved in the simulation of judicial process by the issuing of fraudulent charging instruments and unqualified arrests and jailings are "assuming an office without qualifying."

c) Cause # "COMPLAINT", as well as, 2014CR1548 are fraudulent charging instruments as they state, on behalf of the STATE OF TEXAS in the COUNTY OF COMAL,  Defendants Bell, Robles, Mahoney, Turner, Parra, Hays, and Scott are Revenue Agents that claim they had probable cause to believe that Childress violated law. It is a well settled matter at law, that officers deal only in a reasonable suspicion and that probable cause is a judicial determination. The charging instrument is prima facie evidence that NBPD Defendants, officers of the NEW BRAUNFELS POLICE DEPARTMENT, are committing a crime by the issuance of same, and are acting outside, and under color of, law by making an un-sworn judicial determination of probable cause.

d) SCOTUS defines bills of attainder as follows: (Definition) A legislative act that singles out an individual or group (American Citizens) for punishment without a trial. The Constitution of the United States, Article I, Section 9, paragraph 3 provides that: "No Bill of Attainder or ex

post facto Law will be passed." The Bill of Attainder Clause was intended not as a narrow, technical (and therefore soon to be outmoded) prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function or more simply - trial by legislature." U.S. v. Brown, 381 U.S. 437, 440 (1965)..."These clauses of the Constitution are not of the broad, general nature of the Due Process Clause, but refer to rather precise legal terms which had a meaning under English law at the time the Constitution was adopted. A bill of attainder was a legislative act that singled out one or more persons and imposed punishment on them, without benefit of trial. Such actions were regarded as odious by the framers of the Constitution because it was the traditional role of a court, judging an individual case, to impose punishment." William H. Rehnquist, The Supreme Court, page 166..."Bills of attainder, ex post facto laws, and laws impairing the obligations of contracts, are contrary to the first principles of the social compact, and to every principle of sound legislation. ...The sober people of America are weary of the fluctuating policy which has directed the public councils. They have seen with regret and indignation that sudden changes and legislative interferences, in cases affecting personal rights, become jobs in the hands of enterprising and influential speculators, and snares to the more-industrious and less-informed part of the community." James Madison, Federalist Number 44, 1788. Supreme Court cases construing the Bill of Attainder clause include:

> Ex Parte Garland, 4 Wallace 333 (1866).
> Cummings v. Missouri, 4 Wallace 277 (1866).
> U.S. v. Brown, 381 U.S. 437 (1965).
> Nixon v. Administrator of General Services, 433 U.S.425 (1977).
> Selective Service Administration v. Minnesota PIRG, 468 U.S. 841
> (1984).

e) The Prosecutor has failed to allege facts sufficient to show that any person has suffered any harm or are or has been threatened with any harm as a result of the matter alleged in the "complaint" or have a Corpus delicti that has been injured.

f) Childress holds standing under the 1st, 4th, 5th, 6th, 7th, 8th, 9th & 10th Articles of the Bill of Rights to bring this issue before the Court and to have it dismissed with prejudice as neither the prosecutor, nor Defendants Bell, Robles, Mahoney, Turner, Parra, Hays, and Scott have come into compliance with any Acts of Congress or Texas legislative Acts.

## H. ONUS PROBANDI

144. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

145. The law places the duty and burden of subject-matter jurisdiction upon the initiating party, in the instance case, Defendants. Should the court attempt to place the burden upon Childress the court has acted against the law and in violation of Due Process rights of Childress, and the judge under court decisions would immediately lose subject-matter jurisdiction. In a court of limited jurisdiction, the court must proceed exactly according to the law or statute under which it operates. Flake v. Pretzel, 381 Ill. 498, 46 N.E. 2D 375 (1943). ("the actions, being statutory proceedings... were void for want of power to make them.") ("The judgments were based on orders which were void because the court exceeded its jurisdiction in entering them. Where a court, after acquiring jurisdiction of a subject matter, as here, transcends the limits of the jurisdiction conferred, its judgment is void."); Armstrong v. Obucino, 300 Ill. 140, 143, 133 N.E. 58 (1921). ("The doctrine that where a court has once acquired jurisdiction it has a right to

decide every question which arises in the cause, and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it.") — _In Interest of M.V._, 288 Ill. App. 3d 300, 681 N.E. 2d 532 (1st Dist. 1997). ("Where a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction, and courts exercising jurisdiction over such matters must proceed within the strictures of the statute."); _In re Marriage of Milliken_, 199 Ill. App. 3d 813, 557 N.E. 2d 591 (1st Dist. 1990). ("The jurisdiction of a court in a dissolution proceeding is limited to that conferred by statute."); Vulcan Materials Co. v. Bee Const. Co., Inc., 101 Ill. App. 3d 30, 40, 427 N.E. 2d 797 (1st Dist. 1981). ("Though a court be one of general jurisdiction, when its power to act on a particular matter is controlled by statute, the court is governed by the rules of limited jurisdiction.").

146.    "There is no  discretion to ignore that lack of jurisdiction." — Joyce v. U.S., 474 F. 2d 215. "A universal principle as old as the law is that a proceedings of a court without jurisdiction are a nullity and its judgment therein without effect either on person or property." — Norwood v. Renfield, 34 C 329; _Ex parte Giambonini_, 49 P. 732. "Jurisdiction is fundamental and a judgment rendered by a court that does not have jurisdiction to hear is void _ab initio_." — In Re Application of Wyatt, 300 P. 132; _Re Cavitt_, 118 P2d 846. "Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term." — Dillon v. Dillon, 187 P 27. "A court has no jurisdiction to determine its

own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance." — Rescue Army v. Municipal Court of Los Angeles, 171 P. 2d. 8; 331, U.S. 549, 91 L. ed. 1666, 67 S. Ct. 1409. "A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is an excess of jurisdiction." — Wuest v. Wuest, 127 P. 2d. 934, 937. "Where a court failed to observe safeguards, it amounts to denial of due process of law, court is deprived of juris." — Merritt v. Hunter, C.A., Kansas 170 F. 2d 739. "the fact that the petitioner was released on a promise to appear before a magistrate for an arraignment, that fact is circumstance to be considered in determining whether in first instance there was a probable cause for the arrest." — Monroe v. Papa, D.C., Ill. 1963, 221 F Supp 685. "Jurisdiction, once challenged, is to be proven, not by the court, but by the party attempting to assert jurisdiction. The burden of proof of jurisdiction lies with the asserter." See, McNutt v. GMAC, 298 US 178. The origins of this doctrine of law may be found in Maxfield's, Lessee v. Levy, 4 U.S. 308. "A court has no jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and a court must have the authority to decide that question in the first instance." — Rescue Army v. Municipal Court of Los Angeles, 171 P. 2d. 8; 331 U.S. 549, 91 L. ed. 1666, 67 S. Ct. 1409. "Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but, rather, should dismiss the action." — Melo v. U.S.,

**AFFIDAVIT OF COUNTERCOMPLAINT**

505 F. 2d. 1026. "The law provides that once State and Federal jurisdiction has been challenged, it must be proven." — Main v. Thiboutot, 100 S. Ct. 2502 (1980). "Once jurisdiction is challenged, it must be proven." — Hagens v. Lavine, 415 U.S. 533. "Where there is absence of jurisdiction, all administrative and judicial proceedings are a nullity and confer no right, offer no protection, and afford no justification, and may be rejected upon direct collateral attack." — Thompson v. Tolmie, 2 Pet. 157, 7 L. Ed. 381; Griffith v. Frazier, 8 Cr. 9, 3L. Ed. 471. "No sanctions can be imposed absent proof of jurisdiction." — Standard v. Olsen, 74 S. Ct. 768; Title 5 U.S.C., Sec. 556 and 558 (b). "The proponent of the rule has the burden of proof." — Title 5 U.S.C., Sec. 556 (d). "Jurisdiction can be challenged at any time, even on final determination." — Basso v. Utah Power & Light Co., 495 2nd 906, at 910. "Mere good faith assertions of power and authority (jurisdiction) have been abolished." — Owens v. The City of Independence, 445 U.S. 622 (1980). "A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is an excess of jurisdiction." — Wuest v. Wuest, 127 P. 2d 934, 937. "In a court of limited jurisdiction, whenever a party denies that the court has subject-matter jurisdiction, it becomes the duty and the burden of the party claiming that the court has subject matter jurisdiction to provide evidence from the record of the case that the court holds subject-matter jurisdiction." — Bindell v City of Harvey, 212 Ill. App. 3d. 1042, 571 N.E. 2d 1017 (1st Dist. 1991) ("the burden of proving jurisdiction rests upon the party asserting it."). "Until

the plaintiff submits uncontroversial evidence of subject-matter jurisdiction to the court that the court has subject-matter jurisdiction, the court is proceeding without subject-matter jurisdiction." — *Loos v. American Energy Savers, Inc.*, 168 Ill. App. 3d. 558, 522 N.E. 2D 841(1988) ("Where jurisdiction is contested, the burden of establishing it rests upon the plaintiff.").

## VI. LACK OF POLITICAL AND CIVIL CONTRACTUAL JURISDICTION

147.  All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

148.  Childress, hereby challenges the Political and civil contractual Jurisdiction of the Charging parties, i.e., Defendants, such being the Executive Branch of the STATE OF TEXAS, **not** to this Court.

149.  It is the responsibility of the Executive Branch of the STATE OF TEXAS, to present its proof, from its existing files, that it has in some manner, in conformance to the restriction set forth and established in the Thirteenth Amendment to the Federal Constitution, that the STATE OF TEXAS has gained a voluntary agreement by Childress to be subservient to the Political or civil contractual Jurisdiction of the STATE OF TEXAS.

150.  As STATE OF TEXAS has no ability to establish that it has political or civil contractual jurisdiction over Childress, as is required of STATE OF TEXAS, under the prohibition of involuntary servitude mandate, established in the Thirteenth Amendment to the Federal Constitution, neither the prosecutor, nor this Court has standing to proceed; likewise, neither standing to inquire of Childress as to his political or civil contractual status, for this Court to do

so would indicate this court to be biased against Childress, in favor of Defendants. Such action would constitute a violation of the Separation Of Powers Doctrine, and disqualify the judge of this Court from any further participation in this matter.

151.    The following citations establish that when jurisdiction (of any manner), is challenged, it must be proved, on the record, by the moving party, in the instant case, Defendants, are who acting under color of the Executive Branch of the STATE OF TEXAS, not by the judge of this Court.

> A court may not render a judgment which transcends the limits of its authority, and a judgment is void if it is beyond the powers granted to the court by the law of its organization, even where the court has jurisdiction over the parties and the subject matter. Thus, if a court is authorized by statute to entertain jurisdiction in a particular case only, and undertakes to exercise the jurisdiction conferred in a case to which the statute has no application, the judgment rendered is void. 46 Am. Jur. 2d, Judgments § 25, pp. 388-89.

> The lack of statutory authority to make particular order or a judgment is akin to lack of subject matter jurisdiction and is subject to collateral attack. 46 Am. Jur. 2d, Judgments § 25, pp. 388-89.

> "A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect." Lubben v. Selective Service System, 453 F.2d 645, 649 (1st Cir. 1972)

> "A judgment rendered by a court without personal jurisdiction over the defendant is void. It is a nullity. [A judgment shown to be void for lack of personal service on the defendant is a nullity.]" Sramek v. Sramek, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992), rev. denied 252 Kan. 1093 (1993).

> "Where there are no depositions, admissions, or affidavits the court has no facts to rely on for a summary determination." Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

> "A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well established law that a void order can be

challenged in any court", <u>Old Wayne Mut. L. Assoc. v. Mcdonough</u>, 204 U. S. 8, 27 S. Ct. 236 (1907).

"The law is well-settled that a void order or judgement is void even before reversal", <u>Valley v. Northern Fire & Marine Ins. Co</u>., 254 u.s. 348, 41 S. Ct. 116 ( 1920 ).

"Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities ; they are not voidable, but simply void, and this even prior to reversal." <u>Williamson v. Berry</u>, 8 HOW. 945, 540 12 L. Ed. 1170, 1189 ( 1850 ).

"Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but rather should dismiss the action." <u>Melo v. U.S.</u>, 505 F 2d 1026.

"There is no discretion to ignore lack of jurisdiction." <u>Joyce v. U.S.</u>, 474 2D 215.

"The burden shifts to the court to prove jurisdiction." <u>Rosemond v. Lambert</u>, 469 F 2d 416.

"Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted." <u>Latana v. Hopper</u>, 102 F. 2d 188; Chicago v. New York 37 F Supp. 150.

"The law provides that once State and Federal Jurisdiction has been challenged, it must be proven." <u>Main v. Thiboutot</u>, 100 S. Ct. 2502 (1980).

"Jurisdiction can be challenged at any time." <u>Basso v. Utah Power & Light Co.</u>, 495 F 2d 906, 910.

"Defense of lack of jurisdiction over the subject matter may be raised at any time, even on appeal." <u>Hill Top Developers v. Holiday Pines Service Corp.</u>, 478 So. 2d. 368 (Fla 2nd DCA 1985).

"Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted. "<u>Lantana v. Hopper</u>, 102 F. 2d 188; Chicago v. New York, 37 F. Supp. 150.

"Once challenged, jurisdiction cannot be assumed, it must be proved to exist." <u>Stuck v. Medical Examiners</u>, 94 Ca 2d 751. 211 P2d 389.

"Jurisdiction, once challenged, cannot be assumed and must be decided." <u>Maine v. Thiboutot</u>, 100 S. Ct. 250.

"The law requires proof of jurisdiction to appear on the record of the administrative agency and all administrative proceedings." <u>Hagans v. Lavine</u>, 415 U. S. 533.

"A judgment obtained without jurisdiction over the defendant is void." <u>Overby v. Overby</u>, 457 S.W.2d 851 (Tenn. 1970). Volume 20: Corpus Juris Sec. Â§ 1785.

"Challenge to court's jurisdiction is raised by motion to dismiss," <u>Criterion Co. v. State,</u> 458 So. 2d. 22 (Fla 1st DCA 1984.

"Since jurisdiction is fundamental, and it is jurisdiction alone that gives a court power to hear, determine, and pronounce judgment on the issues before it, jurisdiction must be continuing in the court throughout the proceedings," <u>Re. Cavitt</u>, 254 P.599

"Since jurisdiction is fundamental to any valid judicial proceeding, the first question that must be determined by a trial court in any case is that of jurisdiction" <u>Dillon v. Dillon</u>, 187 P,27.

152.    It is clearly self evident that the Thirteenth Amendment to the Federal Constitution causes the admonitions in these 23 appellate court cases to apply reasonably, in this instant case, to the Defendants, the Executive Branch of the STATE OF TEXAS, and NOT to directly to this Court. However, as a subdivision of the STATE OF TEXAS, neither the prosecutor, nor this Court has standing to proceed against Childress, unless and until, the Executive Branch of the STATE OF TEXAS presents its proof, from its files existing at the time of and on the date Childress was wrongly charged, that such STATE then had and now has properly gained Political and, or civil contractual Jurisdiction over Childress. And that the STATE OF TEXAS has gained such jurisdiction in full compliance with, and not in violation of, the restrictions established in the Thirteenth Amendment to the Federal Constitution.

# AFFIDAVIT OF COUNTERCOMPLAINT

153. The STATE OF TEXAS (through either its Administrative/Judicial Branch or its Executive Branch), does not have standing to interrogate Childress in order to establish that it had Political or civil contractual jurisdiction over him at the time and date Childress was wrongly charged by the issuing officer(s), Defendants, of the STATE OF TEXAS, through NEW BRAUNFELS police department, and certainly do not have standing to attempt to establish such jurisdiction to be effective at this late date.

154. The STATE OF TEXAS must present its proof from its existing files, and if the it claims to have such proof, such must be presented to Childress in writing, and he must be accorded a reasonable opportunity to subpoena witnesses and gather evidence in opposition.

155. It is a foregone conclusion that the Executive Branch of the Government of STATE OF TEXAS will not be able to present any acceptable proof, and any proof that it might present would have been obtained through fraudulent inducement, not through any honorable and forthright means.

156. In consideration of the foregoing, this Court has no option, other than to dismiss all charges lodged against Childress by the Executive Branch of the Government of the STATE OF TEXAS.

157. Let this Court be informed, it has no standing to enter any plea, and any such plea, in any event would be void and of no effect, and would remain so unless and until the Executive Branch of the STATE OF TEXAS presents to Childress, its written proof that it has properly obtained any manner or form of jurisdiction over Childress, as is required under the Federal Thirteenth Amendment and the 23 appellate court case citations, supra.

158. The relationship of standing of Childress to the STATE OF TEXAS is a political issue based on STATE OF TEXAS compliance with the Federal Thirteenth Amendment, it is not a judicial issue. This Court does not have standing to determine the political status of Childress.

159. This is true because the political status of everyone can only be determined by the voluntary act of each individual, based on their own individual choice, as is clearly established in the prohibition of involuntary servitude, set forth and established in the Thirteenth Amendment to the Federal Constitution.

160. The burden of proof is on the Defendants, to present proof from existing files, that they gained political or civil jurisdiction over Childress without violating the prohibition of involuntary servitude recognized and incorporated into the Federal Constitution, in the Thirteenth Amendment thereto.

161. Childress, being Wrongly Accused, states that the charges lodged against him, must be dismissed due to the fact that STATE OF TEXAS has no legitimate claim of Political or Civil contractual Jurisdiction over me.

162. Due to the fact that it will not be possible for the Executive Branch of the STATE OF TEXAS to present proof, in conformance with the Federal Thirteenth Amendment, that the STATE OF TEXAS has properly gained either Political or Civil Contractual Jurisdiction over Childress, Childress will not present himself, as he has no duty or obligation to do so,

> "...there is a clear distinction [] between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the state. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend

to criminate him. He owes no such duty to the state, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights. Hale v. Henkel, 201 US 43 (1906).

to this Court unless and until the Executive Branch of the STATE OF TEXAS presents to Childress its proof that it has such dominion over Childress, which is not able to be refuted, thereby. Childress will not offer up jurisdiction to this court by making an appearance, therein.

163.    Let this Court and the STATE OF TEXAS be hereby advised, should the Executive Branch of the STATE OF TEXAS present such proof to Childress, in writing, that cannot be refuted, Childress will then conform to any order of this Court.

## VII. DECLARATION OF STATUS AND RIGHT OF AVOIDANCE

163.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

164.    Childress, is "the real party in interest" and holds the status of a "foreign state" as defined in 28 U.S.C. § 1603 (b) (1), as "a separate legal person, corporate or otherwise," (in the instant case, "otherwise"), (b) (2), "an organ (a vital part) of a foreign state" and (b) (3), "neither a citizen of a State of the United States as defined in section 1332(c)" (a corporation, an insurer, or the legal representative of a decedent, an infant or an incompetent), "nor created under the laws of any third country."

165.    Further, Childress, the "real party in interest" is not an artificial, corporate "person" as defined and created by PUBLIC STATUTES, and is not a juristic person which may be

"affected" by PUBLIC STATUTES; but, is invested with and bears the status, condition and character of "a sovereign without subjects." Childress, the "real party in interest" is always and at all times present in his "asylum home state," which is "the common case of the place of birth, domicilium originis," also referred to as Natural Domicile, which is "the same as domicile of origin or domicile by birth," (See Johnson v. Twenty-One Bales, 13 Fed. Cas. 863; Black's Law Dictionary, 4th ed.), which is the source and the seat of his sovereignty and immunity.

166.    Accordingly, Childress, the "real party in interest" holds Right of Avoidance and right to reject the offered commercial venture and to decline to fuse with or to animate an artificial person, or to stand as STRAWMAN [PERSON], which is defined in Barron's Law Dictionary, 4th edition, (1996), as "a term referred to in commercial and property contexts when a transfer is made to a third party, the strawman [person], simply for the purpose of retransferring to the transferor in order to accomplish some purpose not otherwise permitted," i.e., obtaining jurisdiction over Childress, the "real party in interest" or relying upon the rebutable presumption that Childress, the "real party in interest" is a corporation. The definition also contains the admonition to "See dummy," which, at that entry is therein defined as "a strawman; a sham." Childress, is neither a strawman, nor a sham, and is certainly not a dummy.

167.    This DECLARATION OF STATUS constitutes a conclusive presumption, of which the court is bound to take NOTICE, that Childress, the "real party in interest" is not a corporation; and, the court can exercise no jurisdiction whatsoever over the "real party in interest" or in the above referenced case, but is duty-bound according to the due process of the law, to which the above-mentioned "real party in interest" is a belligerent claimant, and by the Rule of Law to

**AFFIDAVIT OF COUNTERCOMPLAINT**

DISMISS, <span style="color:red">QUASH.</span>

## VIII. <u>TABLES OF AUTHORITIES: PERSON</u>

168. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

### "PERSON"

"This word 'person' and its scope and bearing in the law, involving, as it does, legal fictions and also apparently natural beings, it is difficult to understand; but it is absolutely necessary to grasp, at whatever cost, a true and proper understanding to the word in all the phases of its proper use... A person is here not a physical or individual person, but the status or condition with which he is invested... not an individual or physical person, but the status, condition or character borne by physical persons... The law of persons is the law of status or condition." – <u>American Law and Procedure</u>, Vol. 13, page 137, 1910.

169. The following are Maxims of Law, Doctrines for Statutory Interpretation of terms:

**Ejusdem Generis**: Of the same kind, class, or nature. In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. Black, Interp. of Laws, 141; Goldsmith v. U. S., C.C.A.N.Y., 42 F.2d 133, 137; Aleksich v. Industrial Accident Fund, 116 Mont. 69, 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention. The maxim "ejusdem generis," is only an illustration of the broader maxim, "noscitur a sod's." State v. Western Union Telegraph Co., 196 Ala. 570, 72 So. 99, 100. Black's Law, 4ᵗʰ Ed.

**Noscitur a Sociis**: It is known from its associates. 1 Vent. 225. The meaning of a word is or may be known from the accompanying words. 3 Term R. 87; Broom, Max. 588. Morecock v. Hood, 202 N.C. 321, 162 S.E. 730, 731; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385, 136 So. 800, 801. The doctrine means that general and specific words are associated with and take color from each other, restricting general words to sense analogous to less general. Dunham v. State, 140 Fla. 754, 192 So. 324, 325, 326. Black's Law, 4ᵗʰ

Ed.

**Expressio unius est exclusio alterius**: Expression of one thing is the exclusion of another. Co.Litt. 210a; Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325; Newblock v. Bowles, 170 Oki. 487, 40 P.2d 1097, 1100. Mention of one thing implies exclusion of another. Fazio v. Pittsburgh Rys. Co., 321 Pa. 7, 182 A. 696, 698; Saslaw v. Weiss, 133 Ohio St. 496, 14 N.E.2d 930, 932. When certain persons or things are specified, in a law, contract, or will, an intention to exclude all others from its operation may be inferred. Little v. Town of Conway, 171 S.C. 27, 170 S.E. 447, 448. Under this maxim, if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded, People v. One 1941 Ford 8 Stake Truck, Engine No. 99T370053, License No. P.8410, Cal., 159 P.2d 641, 642. Black's Law, 4th Ed.

170. The following case citations declares the undisputed distinction in fact and at law of the distinction between the term "persons," which is the plural form of the term "person," and the word "People" which is NOT the plural form of the term "person." The above-mentioned "real party in interest" is NOT a subordinate "person," "subject," or "agent," but is a "constituent," in whom sovereignty abides, a member of the "Posterity of We, The People," in whom sovereignty resides, and from whom the government has emanated:

"The sovereignty of a state does not reside in the **persons** who fill the different departments of its government, but in the **People**, from whom the government emanated; and they may change it at their discretion. Sovereignty, then in this country, abides with the constituency, and not with the agent; and this remark is true, both in reference to the federal and state government." (Persons are not People) — *Spooner v. McConnell*, 22 F. 939, 943;
"Our government is founded upon compact. Sovereignty was, and is, in the people" — *Glass v. Sloop Betsey*, supreme Court, 1794.

"People of a state are entitled to all rights which formerly belong to the King, by his prerogative." — supreme Court, *Lansing v. Smith*, 1829.
"The United States, as a whole, emanates from the people... The people, in their capacity as sovereigns, made and adopted the Constitution... "— supreme Court, 4 Wheat 402.

"The governments are but trustees acting under derived authority and have no power to delegate what is not delegated to them. But the people, as the original fountain might take away what they have delegated and entrust to whom they please... The sovereignty in every state resides in the people of the state and they may alter and change their form of government at their own pleasure." — *Luther v. Borden*, 48 U.S. 1, 12 L.Ed 581.

"While sovereign powers are delegated to... the government, sovereignty itself remains with the people" — *Yick Wo v. Hopkins*, 118 U.S. 356, page 370.
"There is no such thing as a power of inherent sovereignty in the government of the United States... In this country sovereignty resides in the people, and Congress can exercise no power which they have not, by their Constitution entrusted to it: All else is withheld." — *Julliard v. Greenman*, 110 U.S. 421.

"In common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." — *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 667 (1979).

"Since in common usage the term 'person' does not include the sovereign, statutes employing that term are ordinarily construed to exclude it." — *U.S. v. Cooper*, 312 U.S. 600, 604, 61 S. Ct 742 (1941).

"In common usage, the term 'person' does not include the sovereign and statutes employing it will ordinarily not be construed to do so." — *U.S. v. United Mine Workers of America*, 330 U.S. 258, 67 S. Ct 677 (1947).

"Since in common usage, the term 'person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it." — *US v. Fox*, 94 US 315.

"In common usage the word 'person' does not include the sovereign, and statutes employing the word are generally construed to exclude the sovereign." — *U.S. v. General Motors Corporation*, D.C. Ill, 2 F.R.D. 528, 530.

171. The following case citations declare the undisputed doctrine, in fact and at law, that the word (term of art) "person" is a "general word," and that the "people," of whom the above-mentioned "real party in interest" is one, "are NOT bound by general words in statutes;" therefore, statutes do not apply to, operate upon or affect the above-mentioned "real party in

interest:"

"**The word `person' in legal terminology is perceived as a _general word_** which normally includes in its scope a variety of entities other than human beings. — *Church of Scientology v. US Department of Justice*, 612 F. 2d 417, 425 (1979);

"**The people, or sovereign are not bound by _general words_ in statutes**, restrictive of prerogative right, title or interest, unless expressly named. Acts of limitation do not bind the King or The People. The People have been ceded all the rights of the King, the former sovereign... It is a maxim of the common law, that when an act is made for the common good and to prevent injury, the King shall be bound, though not named, but when a statute is general and prerogative right would be divested or taken from the King (or The People) he shall not be bound." — *The People v. Herkimer*, 4 Cowen (NY) 345, 348 (1825): "In the United States, sovereignty resides in people." — *Perry v. U.S.*, (294 US 330). "A Sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal Right as against the authority that makes the law on which the Right depends." — *Kawananakoa v. Polyblank*, 205 U.S. 349, 353, 27 S. Ct. 526, 527, 51 L. Ed. 834 (1907).

## IX. <u>COUNTERCOMPLAINT</u>

172. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

Fed. R. Civ. Proc.
RULE 2. ONE FORM OF ACTION

# AFFIDAVIT OF COUNTERCOMPLAINT

There is one form of action -- the civil action

Tex. C. Crim. Proc.
Art. 27.02. DEFENDANT'S PLEADINGS. The pleadings and motions of the defendant shall be:
(8) Any other motions or pleadings that are by law permitted to be filed.

Fed. R. Civ. Proc.
Rule 7. Pleadings Allowed; Form of Motions and Other Papers
(a) Pleadings. Only these pleadings are allowed:
>    (1) a complaint;
>    (2) an answer to a complaint;
>    (3) an answer to a counterclaim designated as a counterclaim;
>    (4) an answer to a crossclaim;

Fed. R. Civ. Proc.
Rule 13. Counterclaim and Crossclaim
(a) Compulsory Counterclaim.
>    (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>>        (A) arises out of the occurrence that is the subject matter of the opposing party's claim; and
>>        (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Tex. R. Civ. Proc.
RULE 97. COUNTERCLAIM AND CROSS-CLAIM
(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; provided, however, that a judgment based upon a settlement or compromise of a claim of one party to the transaction or occurrence prior to a disposition on the merits shall not operate as a bar to the continuation or assertion of the claims of any other party to the transaction or occurrence unless the latter has consented in writing that said judgment shall operate as a bar.

See also: Clark v. Baines, 84 P. 3d 245 - Wash: Supreme Court 2004

"...where any state proceeds against a private individual in a judicial forum it is well settled that the state, county, municipality, etc. waives any immunity to counters, cross claims and complaints, by direct or collateral means regarding the matters involved." --Luckenback v. The Thekla, 295 F 1020, 226 U.S. 328; Lyders v. Lund, 32 F2d 308; Dexter v. Kunglig J., 43 F2d 705, 282 US 896; U.S. v. N.C.B.N.Y., 83 F2d 236, 106 ALR 1235, affirmed; Russia v. BTC, 4 F Supp 417, 299 U.S. 563.

173. This doctrine includes, but is not limited to, challenges to personal, subject matter and territorial jurisdiction, as well as to claims that the forum is not judicial in nature but merely administrative or that the court is proceeding, improperly, against a private individual under the rebuttable presumption that the private individual is a corporate entity or an artificial person upon which the Public Statutes operate, apply or affect.

174. Furthermore, it is undisputed that the state is acting in its capacity as a commercial entity and is liable for damages according to the following definition of "SOVEREIGN IMMUNITY."

"The state may nevertheless be held liable where the injurious activity was 'proprietary' rather than 'governmental', i.e., where the injury was caused by the state acting in its capacity as a commercial entity rather than that of sovereign." --Barron's Law Dictionary, 4th edition (1996).

175. As stated supra, any failure or refusal to disclose the true jurisdiction is a violation of 15 Statutes at Large, Chapter 249 (section 1), enacted July 27, 1868.

Case Law confirms:

"And Mr. Justice Miller, delivering the opinion of the court [legislating from the bench, in this case], in analyzing the first clause [of the Fourteenth Amendment], observed that "the phrase 'subject to the jurisdiction thereof' was intended to exclude from its operation children of ministers, consuls, and citizens or subjects of foreign states, born within the United States." --U.S. v. Wong Kim Ark, 169 U.S. 649, 18 S.Ct. 456; 42 L.Ed. 890 (1898).

176. Absent lawful process, absent show cause hearing, and absent Fourth Amendment

# AFFIDAVIT OF COUNTERCOMPLAINT

affidavit and warrant, on September 4, 2014, NEW BRAUNFELS POLICE DEPARTMENT and COMAL COUNTY JAIL officials, employees, agents, and high managerial agents have attacked and are attacking the Childress by force of arms and false allegations whereby Childress has suffered and is suffering injury, including, but not limited to the following:

- Absent Fourth Amendment Warrant:
- Unreasonable Search and Seizures
- 5th Amendment Just Compensation
- 5th Amendment Compel Witness
- 13th Amendment Involuntary Servitude
- Kidnappings
- Trafficking in Persons
- Breach of Fiduciary Duty
- Retaliation and Extortion
- False Arrests
- False Imprisonments
- Brutalities, Injuries, and Torture
- Aggravated Assaults
- Felony Breach of Oaths
- Fraud in original case
- Libel
- Bad Faith/ Unclean Hands
- Denial of Due Process
- Denial of Access to the Court
- T.P.C. 2.01 Proof Beyond a Reasonable Doubt
- T.P.C. 6.01 Requirement of Voluntary Act or Omission
- T.P.C. 7.01 Parties to Offenses
- T.P.C. 7.02 Criminal Responsibility for Conduct of Another
- T.P.C. 7.03 Defenses Excluded
- T.P.C. 7.22 Criminal Responsibility of Corporation or Association
- T.P.C. 7.23 Criminal Responsibility of Person for Conduct in Behalf of Corporation Or Association
- T.P.C. 15.02 Criminal Conspiracy
- T.P.C. Chapter 20 Kidnapping and Unlawful Restraint
- T.P.C. 22.01 Assault
- T.P.C. 22.02 Aggravated  Assault
- T.P.C. 31.03 (a),(b),(b)(1),(c)(1), and (f) Theft

- T.P.C. 31.09 Aggregation of Amounts Involved in Theft
- T.P.C. 32.48 Simulating Legal Process
- T.P.C. 36.06 Obstruction or Retaliation
- T.P.C. 37.04 Materiality
- T.P.C. 37.09 Tampering With or Fabricating Physical Evidence
- T.P.C. 37.10 Tampering With Governmental Record
- T.P.C. 37.11 Impersonating Public Servants
- T.P.C. 39.01 Abuse of Office
- T.P.C. 39.02 Abuse of Official Capacity
- T.P.C. 71.02 Engaging in Organized Criminal Activity

177. Injuries were caused by Defendant Schoch, in concert and collusion with NEW BRAUNFELS POLICE DEPARTMENT and COMAL COUNTY JAIL officials, employees, agents, or high managerial agents including but not limited to:

Defendants Bell, Robles, Mahoney, Turner, Parra, Hays Garrison and Scott; and others as yet unknown

178. Defendant Schoch acted in concert and collusion with Defendants Bell, Robles, Mahoney, Turner, Parra, Hays Garrison, Scott and employees and, or agents, (jailers) as yet unknown, of COMAL COUNTY JAIL for the purposes of hiding criminal acts that allowed the torture and assault of Childress and to cause him to suffer various indignities, while separated from society.

179. Defendants Bell, Robles, Mahoney, Turner, Parra, Hays and Scott are "peace officers" and know or should know that their conduct is felony breach of oath, as well as being contrary to the International Covenant on Civil and Political Rights upon which the United States is a signatory party.

180. "Peace Officers" are responsible to know the law and cannot claim ignorance of the law.

181. Defendants collectively, and employees and, or agents, (jailers) as yet unknown, of

**AFFIDAVIT OF COUNTERCOMPLAINT**

COMAL COUNTY JAIL have acted in concert and collusion and in criminal conspiracy in relentless malicious and unmeritorious persecution of Childress.

182.    Defendants collectively, and employees and, or agents, (jailers) as yet unknown, of COMAL COUNTY JAIL, are liable for the above stated issues and may be sued pursuant to the Texas Tort Claims Act, Deceptive Trade Practices Act (Commercial Venture), 42 U.S.C. § 1983, 18 U.S.C. § 1962 RICO, but not necessarily limited thereto.

## X. PLEADING SHALL BE CONSTRUED TO DO JUSTICE

183.    All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

> "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. Conley v. Gibson, 355 U.S. 41 at 48 (1957)

> "The assertion of federal rights, when plainly and reasonably made, are not to be defeated under the name of local practice. Davis v. Wechler, 263 U.S. 22, 24; Stromberb v. California, 283 U.S. 359; NAACP v. Alabama, 375 U.S. 449

> Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 23

> "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938)

> The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a

suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities. Picking v. Pennsylvania Railway, 151 F.2d. 240, Third Circuit Court of Appeals

It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in Conley v. Gibson (see case listed above, Pro Se Rights Section). Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA)

"... allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers... ". Haines v Kerner, 404 U.S. 519 – 521, (1972)

"Court errs if court dismisses pro se litigant without instructions of how pleadings are deficient and how to repair pleadings." Plaskey v. CIA, 953 F.2nd 25

Nowhere can be found a competent attorney that is able to execute the proper remedy without embarrassing the Court, Corpus Juris Secundum 2d Vol. 7 section 25.

184. I am not an expert in the law, however I do know that the Bible teaches right from wrong.

Congress Declares Bible "The Word Of God"
Oct. 4, 1982, Public Law 97-280, 96 STAT. 1211, 97th Congress

If there is any human being damaged by any statements herein, if he will inform me by facts I will sincerely make every effort to amend my ways. I hereby and herein reserve the right to amend and make amendment to this document as necessary in order that the truth may be ascertained and proceedings justly determined. If the parties given notice by means of this document have information that would controvert and overcome this Affidavit, please advise me in written Affidavit form within thirty (30) from receipt hereof providing me with your counter affidavit, proving with particularity by stating all requisite actual evidentiary fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that this Affidavit

## AFFIDAVIT OF COUNTERCOMPLAINT

Statement is substantially and materially my status and factual declarations. Your silence stands as consent to, and tacit approval of, the factual declarations herein being established as fact as a matter of law.

185. Reserving all unalienable birthrights and Covenantal blessings promised, waiving none, ever. This document is prepared in compliance to the 9th Commandment, the law of Falsity.

## XI. NOTICE TO CURE

186. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

187. The above facts give Defendant Schoch, NBPD Defendants, the New Braunfels Police Department and Comal County good faith NOTICE AND OPPORTUNITY to cure.

188. Childress, hereby states a Claim, against Defendants Schoch, Bell, Robles, Mahoney, Turner, Parra, Hays, Scott, and employees and, or agents, (jailers) as yet unknown, of the New Braunfels Police Department and COMAL COUNTY, and their marital relations, jointly and severally, where it applies, for damages, pursuant to *Trezevant v. City of Tampa*, 741 F. 2d 336 (1984), adjusted for inflation:

$ 3,566,347.20 per day     $ 148,597.80 per hour     $ 2,476.63 per minute

## XII. NOTICE OF INTENT TO SUE

189. All statements and allegations made supra, are herein incorporated in their entirety by reference.

190. Defendants collectively, as well as, NEW BRAUNFELS POLICE DEPARTMENT and COMAL COUNTY are hereby, and herein given notice, that failure to pay the Claim within

thirty days of receipt of this notice as to damages inflicted will force suit for damages.

## XIII. *RECTUM ROGARE*

191. All statements and allegations made supra, and in Childress's Affidavit for Countercomplaint are herein incorporated in their entirety by reference.

192. The facts and the law contained herein are the Truth; and said Truths are held to be self-evident; and self-evident Truths are undisputed and incontrovertible, therefor, no oral argument is requested, for no words can alter or overcome these Truths; Truth is Sovereign: She comes from God and bears His message, from whatever quarter her great eyes may look down upon you; Psalms 117:2; John 8:32; II Corinthians. 13:8; THEREFORE; this court must perform its duty under the Rule of Law, do Justice, *Rectum Rogare*, and Dismiss, and, or QUASH and immediately thereby expunge, the instant cause / case without delay for, "Justice delayed is Justice denied." Rectum Rogare - "to do right; to petition the judge to do right." — Black's Law Dictionary, 4th edition.

193. AMENDATORY RECONSTRUCTION ACT OF MARCH 11, 1868. An Act, to amend the act passed March 23, 1867, entitled "An Act supplementary to 'An act to provide for the more efficient government of the rebel states,' passed March 2, 1867, and to facilitate their restoration.

194. SUPPLEMENTARY RECONSTRUCTION ACT OF FORTIETH CONGRESS. An Act, supplementary to an act, entitled: "An act to provide for the more efficient government of the rebel states," passed March 2, 1867, and to facilitate restoration." This act created the 14th amendment federal citizen under section 3 of the federal constitution.

195. All who hold public office fall under section 3 as UNITED STATES citizens. Those who

hold office have knowingly and willingly given up their citizenship to this country, The Continental united States, under 8 U.S.C. § 1481 to become a foreign state agent under 22 U.S.C.. The oath of office to the constitution requires office-holders to uphold and maintain our Constitutional form of government under The People's authority. This right was never surrendered by The People; failure to do so violates, including, but not limited to: 10 U.S.C. § 333 and 18 U.S.C. § 1918, chapter 115 § 2382, § 2383, § 1505, § 1001, § 241, § 242, 42 U.S.C. § 1981 and 31 U.S.C. §3729.

196.    The Federal Debt Collection Procedure places all courts under equity and commerce and under the International Monetary Fund (IMF). The IMF comes under the Uniform Commercial Code (U.C.C.) under banking and business interest and Trust laws. This makes the Court/Judges trustee over the trust and responsible whether or not the Childress understands the trust issue. The 1933 bankruptcy act placed all public officials in a fiduciary position to write off the public debt, since this Nation is not solvent. The TWEA suspended the U.S. Constitution in the court room, and therefore, the standard American flag in the courtroom was replaced with a military Admiralty flag for dealing with alien enemy residents. The People never rescinded their nationality to the real united States of America. Those who hold public office rescinded their nationality to become a foreign agent in order to hold public office. International law requires the judge to uphold The People's Constitutional form of government as defined in the "Federalist Papers".

197.    Federal Rules of Civil Procedure Rule 2 only allows civil action, and under Rule 17, a real party of interest has to be present in the courtroom in order for there to be any claims of

injury or damages against "the people." Any charges under the "UNITED STATES" or "THE STATE OF…" fall under the TWEA Section 23. The People are not subject to this jurisdiction as it is a Foreign State jurisdiction. The People hold 11th amendment immunity to claims in equity and commerce from a foreign state. The courts lack jurisdiction over the Childress by Congressional mandate. For the aforestated reasons, the Defendants, Prosecutor and this Court lack jurisdiction under FRCP Rule 4(j) & 12(b) (1), (2), (3), (4), (5), (6) over Childress.

**Adversarial System:**
*Mack vs. City of Detroit*, **Chief Justice Cavanagh, No. 118468, 2002.**
"The adversarial system ensures the best presentation of arguments and theories because each party is motivated to succeed. Moreover, the adversarial system attempts to ensure that an active judge refrain from allowing a preliminary understanding of the issues to improperly influence the final decision. This allows the judiciary to keep an open mind until the proofs and arguments have been adequately submitted. In spite of these underlying concerns, the majority today claims that the benefits of full briefing are simply a formality that can be discarded without care. The majority fails to comprehend how the skilled advocates in this case could have added anything insightful in the debate over the proper interpretation of a century's worth of precedent. Whatever its motivation, the majority undermines the foundations of our adversarial system."

198.    Childress, is covered under Title 18 § 4 Misprision of felony & Title 31 USC §3729 False Claims as Whistle-blowers.

TITLE 18, Part I, Chapter 1,  § 4 Misprision of felony.
Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

TITLE 31,  Subtitle III, Chapter 37, Subchapter III. § 3729. False claims.
(a) Liability for Certain Acts. Any person who —
(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

TITLE 31, Subtitle III, Chapter 37, Subchapter III. § 3730 Civil actions for false claims.
(b) Actions by Private Persons —
(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting

199. These are the laws as we know them – clear, precise and written by those with superior knowledge of the law "LAWYERS", not The People. The People cannot be held accountable if there is a failure to clarify or if it is "incomprehensible, baseless assertions and citations to disjointed and,or irrelevant legal authority, grammatically, logically and legally incomprehensible, frivolous and unintelligible" or a conflict in the laws. This then goes back to those "LAWYERS" who created this conflict in law to be held accountable. Any failure for the judge to adhere is a violation under 18 U.S.C. § 1001, 1346, 1505, 2331 and 10 U.S.C. § 333 and which would result in a violation of the PATRIOT ACT, SECTION 800, HOME LAND SECUIRTY, thereafter, other Departments would have to be notified of such domestic terrorism.

As a matter of law and as matter of the record.

# AFFIDAVIT OF COUNTERCOMPLAINT

## ALL RIGHTS RESERVED TO AMEND WITHOUT LEAVE OF COURT

## VERIFICATION

Executed without the United States:

I, Jason Truman Childress, do declare, certify, verify and state under penalty of perjury under the laws of the United States of America that I am a living man, of lawful age and competent to testify, and that I have personal knowledge of the foregoing facts which are true and correct, based upon my knowledge and belief, which knowledge and belief I believe to be true.

Pursuant to 28 U.S. Code § 1746 (a)

Executed on this 23rd day of March of 2015.

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas

# AFFIDAVIT OF COUNTERCOMPLAINT

## CERTIFICATE OF SERVICE

I, Jason Truman Childress, Sui Juris (not Pro Se), hereby certify, under penalty of perjury, under the laws of the United States of America, without the federal corporation, "United States", 28 U.S.C. § 3002 (15), that I am at least 18 years of age, am a Denizen to the United States of America, and that I personally served the following document(s):

1. **Affidavit for Countercoplaint**
2. **AFFIDAVIT OF COUNTERCOMPLAINT**
3. **TABLE OF AUTHORITES: POLICE REPORTS ARE HEARSAY**
4. **TABLE OF AUTHORITIES: VOID JUDGMENTS**

by placing one true and correct copy of said document(s) via Register Mail, Return Receipt to the following:

Kevin M. Schoch
3619 Hawthorne Trl.
Rockwall, TX 75032

*Notice to Principal is Notice to Agent;
Notice to Agent is Notice to Principal.*
Tom Wibert, Chief of Police,
Principal to, & Respondeat
Superior for, NBPD Defendants
1488 South Seguin Avenue
New Braunfels, TX 78130

Abigail Lane Whitaker
Comal County Courthouse Annex
150 N. Seguin Ave., Ste. 307
New Braunfels, TX 78130

Submitted this 23rd day of March, 2015.

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas

APPENDIX

TAB L

Fischer v. State, NO. PD-0043-07, COURT OF CRIMINAL APPEALS OF TEXAS, January 16, 2008, Delivered:

Both the federal and Texas hearsay rules have always excluded the crime-scene or investigation observations of law enforcement officers because their factual observations, opinions, and narrations are made while the officer is 'engaged in the often competitive enterprise of ferreting out crime'." (quoting, Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). "Rule 803(8) (B) expressly excludes '[r]ecords, reports, statements, or data compilations setting forth matters observed by police officers and other law enforcement personnel' in a criminal case.[29]

> 29. Fed.R.Evid. 803(8)(B); Tex.R. Evid. 803(8)(B). Of course, Rule 803(8)(B) does not necessarily apply to law-enforcement reports that are prepared in a non-adversarial setting, that are unrelated to any specific litigation, and that record objective, neutral observations. See Pondexter v. State, 942 S.W.2d 577, 585 (Tex.Crim.App.1996) ("We know that the reason for Federal Rule of Evidence 803(8)(B), after which the Texas rule was modeled, was the presumed unreliability of observations that are made by officers at the scene of a crime," but stating that when police officer was performing his ordinary, routine duties of recording the property that was taken in and out of the police property room, his observations and notations should be presumed reliable; matters observed or recorded by police officers are admissible under Rule 803(8)(B) if the observations are made and recorded in a ministerial manner);

The reason for this exclusion is the inherently adversarial nature of any on-the-scene or post hoc investigation of a criminal suspect.[30]

> 30. ...Cole v. State, 839 S.W.2d 798, 811-12 (Tex.Crim.App.1992) (op. on reh'g) (quoting the legislative history of Fed.R.Evid. 803(8) (B) which based the exclusion of police reports on the fact that they are created in an adversarial setting: " 'Police reports, especially in criminal cases, tend to be one-sided and self-serving. They are frequently prepared for the use of prosecutors, who use such reports in deciding whether to prosecute.' "); United States v. Quezada, 754 F.2d 1190, 1193-94 (5th Cir.1985) (stating that the hearsay rule excluding police offense reports "is based in part on

the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime," and noting that "a number of courts have drawn a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation").

Congress explained the rationale for the rule excluding factual observations by investigating police officers from the public records exception to the hearsay rule:

Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

In United States v. Quezada, 754 F.2d 1190, 1193-94 (5th Cir.1985) the Fifth Circuit distinguished between public records that are generated in a routine and ministerial manner and police reports that are generated in an adversarial setting. The Fifth Circuit has concluded that "Rule 803(8) is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation." (emphasis added). And the Fifth Circuit stated that the hearsay rule excluding police offense reports "is based in part on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime," and noting that "a number of courts have drawn a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation."

The "Police Report" generated in this case was done so in the spirit of preparing for

specific litigation. The purpose of this exception is to allow reliable documents into evidence; since police reports are inherently unreliable when created in this context, use of the Hearsay, "Police Reports" to establish a factual background is improper at best, and at worst a complete disregard for law (Fed. R. Evid.).

The "Police Report" is an untrustworthy document and should not be used make factual findings to form a background.

> "...factual findings, which are based on inadmissible hearsay, are not admissible under Rule 803(8)(C) because the underlying information is untrustworthy." Complaint of Paducah Towing Co., Inc. (United States v. Paducah Towing Co., Inc.), 692 F.2d 412, 420-21 (6th Cir. 1982). See also Miller v. Caterpillar Tractor Co., 697 F.2d 141, 144 (6th Cir. 1983) (court did not abuse discretion in refusing to admit as untrustworthy a document that relied upon hearsay statements of witnesses made to the investigator). Other courts have reached similar Conclusions when faced with analogous situations. See cases cited in Complaint of Paducah Towing Co., Inc., 692 F.2d at 421. For example, in Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991), the Second Circuit held:
>
> > [31] [A statement of a third party] is plainly not admissible merely because contained in a police report. "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not." United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983) (emphasis added)." (Id.)

The "Police Report" used by Ezra is defined, pursuant to Fed. R. Evid., Rule 801., as Hearsay.

United States v. Oates, 560 F. 2d 45 (2nd Cir.1977):

> "As the rules of evidence now stand, police and law enforcement reports are not admissible against defendants in criminal cases. This is made quite clear by the provisions of rule 803(8)(B) and (C).

120 Cong.Rec. H12254 (daily ed. Dec. 18, 1974). This unequivocal language shows that it was Representative Hungate's understanding, and he was as familiar with the legislation as anyone else in Congress,[26] that the language retained in FRE 71*71 803(8)(B) and (C) meant that those provisions had the effect of rendering absolutely inadmissible against defendants in criminal cases the "police reports" of item (B) and the "evaluative reports" of item (C).

... it [is] manifest that it was the clear intention of Congress to make evaluative and law enforcement reports absolutely inadmissible against defendants in criminal cases.

...we perceive to be clear congressional intent that reports not qualifying under FRE 803(8)(B) or (C) should, and would, be inadmissible against defendants in criminal cases..."

...a police report . . . is an exception to the new hearsay rules when introduced at the request of the defense." 521 F.2d at 969 n.24.

APPENDIX

TAB M

# TABLE OF AUTHORITIES:
## LAW OF VOIDS IN TEXAS

Judicial action taken after the trial court's plenary power has expired is void. See State ex. rel Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1995); see also Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990) (defining a void judgment as one rendered when a court has no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court).

A party affected by void judicial action need not appeal. State ex rel. Latty, 907 S.W.2d at 486.

If an appeal is taken, however, the appellate court may declare void any orders the trial court signed after it lost plenary power over the case.. "A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Seidel, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001).

Only void convictions are subject to collateral attack. Christian v. State, 865 S.W.2d 198, 201 (Tex. App.-Dallas 1993, pet. ref'd) (challenge to voidable error in conviction, raised on appeal from revocation order, was impermissible collateral attack).

A Void Judgment Is a Void Judgment Is a Void Judgment-Bill of Review and Procedural Due Process in Texas, 40 Baylor L. Rev. 367, 378-79 (1988). See Thomas, 906 S.W.2d at 262 (holding that trial court has not only power but duty to vacate a void judgment).

A judgment is void only when it is clear that the court rendering judgment had no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court. When appeal is taken from a void judgment, the appellate court must declare the judgment void. Because the appellate court may not address the merits, it must set aside the trial court's judgment and dismiss the appeal. A void judgment may be attacked at any time by a person whose rights are affected. See El-Kareh v. Texas Alcoholic Beverage Comm'n, 874 S.W.2d 192, 194 (Tex. App.--Houston [14th Dist.] 1994, no writ); see also Evans v. C. Woods, Inc., No. 12-99-00153-CV, 1999 WL 787399, at *1 (Tex. App.--Tyler Aug. 30, 1999, no pet. h.).

A void judgment is a "nullity" and can be attacked at any time. Deifik v. State, No. 2-00-443-CR (Tex.App. Dist.2 09/14/2001)

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Since the trial court's dismissal "with prejudice" was void, it may be attacked either by direct appeal or collateral attack Ex parte Williams, No. 73,845 (Tex.Crim.App. 04/11/2001).

# TABLE OF AUTHORITIES:
## LAW OF VOIDS IN TEXAS

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." Ex parte Spaulding, 687 S.W.2d at 745 (Teague, J., concurring).

Since the trial court's dismissal "with prejudice" was void, it may be attacked either by direct appeal or collateral attack. See Ex parte Shields, 550 S.W.2d at 675 a void judgment can be collaterally attacked. See Glunz v. Hernandez, 908 S.W.2d 253, 255 (Tex. App.-San Antonio 1995, writ denied); Tidwell v. Tidwell, 604 S.W.2d 540, 542 (Tex. Civ. App.- Texarkana 1980, no writ) (finding that a void judgment may be collaterally attacked by a suit to set aside the judgment after it has become final if such void judgment becomes material). We agree. A collateral attack is any proceeding to avoid the effect of a judgment which does not meet all the requirements of a valid direct attack. See Glunz, 908 S.W.2d at 255. There is neither a set procedure for a collateral attack nor a statute of limitations. See Glunz, 908 S.W.2d at 255; Davis v. Boone, 786 S.W.2d 85, 87 (Tex. App.-San Antonio 1990, no writ).

Collateral attacks may be only used to set aside a judgment which is void, or which involved fundamental error. See Glunz, 908 S.W.2d at 255. Fundamental error for this purpose means cases where the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas. See id. The cases distinguish between judgments which are void, and therefore may be set aside by a collateral attack, and those which are voidable and must be attacked by a valid direct attack. See id. A judgment is void if it is shown that the court lacked jurisdiction 1) over a party or the property; 2) over the subject matter; 3) to enter a particular judgment; or 4) to act as a court.

Jurisdiction could not be conferred by waiver or retroactively ELNA PFEFFER ET AL. v. ALVIN MEISSNER ET AL. (11/23/55) 286 S.W.2d 241.

Strictly speaking a void judgment is one which has no legal force or effect whatever. It is an absolute nullity and such invalidity may be asserted by any person whose rights are affected, at any time and at any place. It need not be attacked directly, but may be attacked collaterally whenever and wherever it is interposed. Usually it carries the evidence of its invalidity upon its face, while a voidable judgment is one apparently valid, but in truth wanting in some material respect; in other words, one that is erroneous. Such vice may be the want of jurisdiction over the person or other similar fundamental deficiency, but which vice does not affirmatively appear upon the face of the judgment."'BILLY DUNKLIN v. A. J. LAND ET UX. 297 S.W.2d 360 (12/21/56).

Where a void judgment has been rendered and the record in the cause, or judgment roll, reflects the vice, then the court has not only the power but the duty and even after the expiration of the term to set aside such judgment. Harrison v. Whiteley, Tex.Com.App., 6 S.W.2d 89. This court in

# TABLE OF AUTHORITIES:
## LAW OF VOIDS IN TEXAS

Neugent v. Neugent, Tex.Civ.App., 270 S.W.2d 223, followed and applied the rule announced in the Harrison-Whiteley case. The Supreme Court, speaking through Folley, Commissioner, in Bridgman v. Moore, 143 Tex. 250, 183 S.W.2d 705, at page 707, said: "The court has not only the power but the duty to vacate the inadvertent entry of a void judgment at any time, either during the term or after the term, with or without a motion therefore."

We will not extend this discussion further than to state that we here reaffirm the holding on the point involved as announced by Justice Hightower in the former appeal (301 S.W.2d 181). While this holding was premature in view of the action of the Supreme Court (304 S.W.2d 265) reversing our holding, it was not upon the points discussed in Justice Hightower's opinion, but was on the point that since the judgment appealed from was an interlocutory one and not final, the appeal should be dismissed. However, we think our holding then is now appropriate. A void judgment has been termed mere waste paper, an absolute nullity; and all acts performed under it are also nullities. Again, it has been said to be in law no judgment at all, having no force or effect, conferring no rights, and binding nobody. It is good nowhere and bad everywhere, and neither lapse of time nor judicial action can impart validity. Commander v. Bryan, 123 S.W.2d 1008, (Tex.Civ.App., Fort Worth, 1938, n.w.h.); 34 Tex.Jur., Sec. 262, page 177; Maury v. Turner, 244 S.W. 809, (Tex.Com.App., 1922).

Also, a void judgment has been defined as "one which has no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at anytime and at any place directly or collaterally." Black's Law Dictionary; Reynolds v. Volunteer State Life Ins. Co., 80 S.W.2d 1087, (Tex.Civ.App., Eastland, 1935, writ ref.); Gentry v. Texas Department of Public Safety, 379 S.W.2d 114, 119, (Tex.Civ.App., Houston, 1964, writ ref., n.r.e., 386 S.W.2d 758).

It has also been held that "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside. It may be impeached in any action direct or, collateral.' Holder v. Scott, 396 S.W.2d 906, (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).

APPENDIX

TAB N

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

NEW BRAUNFELS TX 78130-5146

| | | |
|---|---|---|
| Postage | $ $5.75 | 0179 |
| Certified Fee | $3.30 | 13 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $11.75 | 03/23/2015 |

Sent To Bobbie Koepp C.C.A.L. #2
Street, Apt. No.; or PO Box No. 150 N. Seguin Ave., Ste. 301
City, State, ZIP+4 New Braunfels, Texas 78130

PS Form 3800, August 2006          See Reverse for Instructions

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Clerk of the Court,
Bobbie Koepp
Comal County Court at Law #2
150 N. Seguin Ave., Ste. 301
New Braunfels, Texas 78130

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Bobbie Koepp          ☐ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☒ Certified Mail®        ☐ Priority Mail Express™
☐ Registered            ☐ Return Receipt for Merchandise
☐ Insured Mail          ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7013 3020 0001 2622 1509

PS Form 3811, July 2013          Domestic Return Receipt

APPENDIX

TAB O

# U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

ROCKWALL TX 75032-9210 OFFICIAL USE

| | | | |
|---|---|---|---|
| Postage | $ | $5.75 | 0179 |
| Certified Fee | | $3.30 | 13 |
| Return Receipt Fee (Endorsement Required) | | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $11.75 | 03/23/2015 |

Sent To
Kevin M. Schoch

Street, Apt. No.; or PO Box No. 3619 Hawthorn Trl.

City, State, ZIP+4 Rockwall, Texas 75032 75032

PS Form 3800, August 2006          See Reverse for Instructions

7013 3020 0001 2622 1462

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kevin M. Schoch
3619 Hawthorn Trl.
Rockwall, Texas 75302 75032

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☑ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Schoch                           3·25·15

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☑ No

3. Service Type
☒ Certified Mail®          ☐ Priority Mail Express™
☐ Registered              ☐ Return Receipt for Merchandise
☐ Insured Mail            ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7013 3020 0001 2622 1462

PS Form 3811, July 2013          Domestic Return Receipt

APPENDIX

TAB P

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

NEW BRAUNFELS TX 78130-3853

| | | | |
|---|---|---|---|
| Postage | $ | $5.75 | 0179 |
| Certified Fee | | $3.30 | 13 |
| Return Receipt Fee (Endorsement Required) | | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $11.75 | 03/23/2015 |

Sent To  Tom Wibert, C.O.P

Street, Apt. No.; or PO Box No.  1488 S. Seguin Ave.

City, State, ZIP+4  New Braunfels, Texas 78130

PS Form 3800, August 2006       See Reverse for Instructions

7013 3020 0001 2622 1479

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chief of Police,
Tom Wibert
New Braunfels Police Dept.
1488 S. Seguin Ave.
New Braunfels, Texas 78130

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  Ylina Berna   C. Date of Delivery 3-25-15

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail®   ☐ Priority Mail Express™
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7013 3020 0001 2622 1479

PS Form 3811, July 2013        Domestic Return Receipt

APPENDIX

TAB Q

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

NEW BRAUNFELS TX 78130-5146

| | | | |
|---|---|---|---|
| Postage | $ | $5.75 | 0179 |
| Certified Fee | | $3.30 | 13 |
| Return Receipt Fee (Endorsement Required) | | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $11.75 | 03/23/2015 |

Sent To: Abigail L. Whitaker, C.C.H. Annex
Street, Apt. No.; or PO Box No. 150 N. Seguin Ave., Ste. 307
City, State, ZIP+4 New Braunfels, Texas 79130

PS Form 3800, August 2006     See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Abigail Lane Whitaker
Comal County Courthouse Annex
150 N. Seguin Ave., Ste. 307
New Braunfels, Texas 78130

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Lisa Brooks
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Lisa Brooks

C. Date of Delivery
3/25/15

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail®
☐ Registered
☐ Insured Mail
☐ Priority Mail Express™
☐ Return Receipt for Merchandise
☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7013 3020 0001 2622 1493

PS Form 3811, July 2013     Domestic Return Receipt

APPENDIX

TAB R

# DEMAND FOR DISMISSAL

## COUNTY COURT
## AT LAW #2
## COMAL COUNTY TEXAS

| | |
|---|---|
| Jason Truman Childress,<br>Plaintiff, | **Cause No.** 2014CR1548 |
| v. | **Date:** May 13, 2015 |
| STATE OF TEXAS, et. al.,<br>Defendants, | **DEMAND FOR DISMISSAL** |

## ADMINISTRATIVE NOTICE

*63C Am. Jur. 2d., Public Officers and Employees, §247* "As expressed otherwise, the powers delegated to a public officer are held in trust for the people and are to be exercised in behalf of the government or of all citizens who may need the intervention of the officer. [1]Furthermore, the view has been expressed that all public officers, within whatever branch and whatever level of government, and whatever be their private vocations, are trustees of the people, and accordingly labor under every disability and prohibition imposed by law upon trustees relative to the making of personal financial gain from a discharge of their trusts. [2]That is, a public officer occupies a fiduciary relationship to the political entity on whose behalf he or she serves. [3]and owes a fiduciary duty to the public. [4]It has been said that the fiduciary responsibilities of a public officer cannot be less than those of a private individual. [5]Furthermore, it has been stated that any enterprise undertaken by the public official who tends to weaken public confidence and undermine the sense of security for individual rights is against public policy. Fraud in its elementary common law sense of deceit –and this is one of the meanings that fraud bears [483 U.S. 372] in the statute (See, *United States v. Dial*, 757 F.2d 163, 168 (7th Cir1985)), includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, including, in the case of a judge, the litigants who appear before him and if he deliberately conceals material information from them, he is guilty of fraud. *McNally v United States*, 483 U.S. 350 (1987).

# DEMAND FOR DISMISSAL

COMES NOW, Jason Childress, hereinafter, Childress, and Demand Dismissal of the charge against him and the above referenced Cause No. upon the following grounds:

1.      WHEREAS, On March 25, this court and all parties associated with the above referenced Cause No. were served with Childress' **Affidavit for Countercoplaint, AFFIDAVIT OF COUNTERCOMPLAINT, TABLE OF AUTHORITES: POLICE REPORTS ARE HEARSAY and TABLE OF AUTHORITIES: VOID JUDGMENTS**.

2.      WHEREAS, within Childress' **AFFIDAVIT OF COUNTERCOMPLAINT** this court's jurisdiction over the above referenced Cause No. was directly challenged.

3.      WHEREAS, indisputable proof has not been made or presented by any of the burdened parties which would prove this court does in fact and in law have jurisdiction over the above referenced Cause No.

4.      WHEREAS, this court is in fact and in law absent and form of jurisdiction over the above referenced Cause No..

5.      WHEREAS, the "arrest" which has led to the proceedings in this court stem from proceedings in the 204TH DISTRICT COURT OF DALLAS COUNTY.

6.      WHEREAS, on December 4, 2014, the 204TH DISTRICT COURT Dismissed the charge and cause against Childress as a result of Unconstitutional actions by the arresting officers.

7.      WHEREAS, as a result of the Unconstitutional actions by the arresting officers in DALLAS COUNTY, the 204TH DISTRICT COURT was without jurisdiction and was required and did Dismiss the charge and cause against Childress.

## DEMAND FOR DISMISSAL

8.     WHEREAS, as a result of a lack of jurisdiction, the alleged warrant that Childress was arreet on in Comal County, at 567 Avenue A., New Braunfels, Texas was in fact and in law, null and void, rendering the arrest, false.

9.     WHEREAS, as a result of the null and void warrant and false arrest of Childress by New Braunfels police officers at the aforementioned address, this court is also without jurisdiction:

**Jus ex injuria non oritur**: A right cannot arise from a wrong.

**Nemo punitur pro alieno declicto**: No one is to be punished for the crime or wrong of another.

10.     WHEREAS, "It shall be the primary duty of all prosecuting attorneys,... not to convict, but to see that justice is done. (Texas Code of Crim. Pro., Art. 2.01); "The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Justice Sutherland in Berger v. United States, 295 U.S. 78 (1935)

11.     WHEREAS, "When it clearly appears that the court lacks jurisdiction, the court has no authority to reach the merits. In such a situation the action should be dismissed for want of jurisdiction." Melo v. US, 505 F2d 1026.

## DEMAND FOR DISMISSAL

**THEREFORE**, Childress demands that this court dismiss the charge and Cause against him, for forcing him to invoke the power and jurisdiction of an Appeals Court so as to compel this court to do right would not only be unduly burdensome, but would also add to and further inflict, intentionally, emotional distress and strengthen distrust in the judicial officers involved in the above reference Cause No. and the judicial system itself.

Respectfully,

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas
jchildress1980@gmail.com

**DEMAND FOR DISMISSAL**

**ALL RIGHTS RESERVED TO AMEND WITHOUT LEAVE OF COURT**

**VERIFICATION**

Executed without the United States:

I, Jason Truman Childress, do declare, certify, verify and state under penalty of perjury under the laws of the United States of America that I am a living man, of lawful age and competent to testify, and that I have personal knowledge of the foregoing facts which are true and correct, based upon my knowledge and belief, which knowledge and belief I believe to be true.

Pursuant to 28 U.S. Code § 1746 (a)

Executed on this __13th__ day of ____May____ of 2015.

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas

**DEMAND FOR DISMISSAL**

**CERTIFICATE OF SERVICE**

I, Jason Childress, hereby certify that a true and correct copy of the foregoing has been delivered to the Clerk of the Court, and the following party:

Abigail Lane Whitaker
Comal County Courthouse Annex
150 N. Seguin Ave., Ste. 307
New Braunfels, TX 78130

via US Mail, and, or Certified Mail/Return Receipt on this 13th day of _____ May _____, 20 15 .

Jason Childress
9141 Gristmill Ct.
Fort Worth, Texas

**DEMAND FOR DISMISSAL**

**COUNTY COURT
AT LAW #2
COMAL COUNTY TEXAS**

Jason Truman Childress,
    Plaintiff,

v.

STATE OF TEXAS, et. al.,
    Defendants,

§
§
§
§
§
§
§
§
§

**ORDER**

# ORDER

The above and foregoing matter came to be considered on this ___ day of _____, 2015. After careful consideration, this Court is of the opinion that the such matter be, and is hereby Dismissed:

    ( ) GRANTED

    ( ) DENIED

                SIGNED:

                                   _____

                                   Judge Charles A. Stephens, or
                                   JUDGE PRESIDING